UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

04 12524 RGL

| | |
|---|---|
| GARY CAVINESS, Derivatively On Behalf of ASPEN TECHNOLOGY INC., | ) Case No.<br>)<br>) VERIFIED SHAREHOLDER |
| Plaintiff, | ) DERIVATIVE COMPLAINT FOR<br>) BREACH OF FIDUCIARY DUTY, MAGISTRATE JUDGE Alexander |
| vs. | ) ABUSE OF CONTROL, GROSS<br>) MISMANAGEMENT, WASTE OF |
| LAWRENCE B. EVANS, LISA W. ZAPPALA, DAVID L. MCQUILLIN, CHARLES F. KANE, STEPHEN M. JENNINGS, JOAN C. MCARDLE, MICHAEL PEHL, DOUGLAS A. KINGSLEY, GARY E. HAROIAN, MARK FUSCO, DONALD P. CASEY, STEPHEN L. BROWN, JOSEPH F. BOSTON, DOUGLAS R. BROWN and GRESHAM T. BREBACH, | ) CORPORATE ASSETS AND UNJUST<br>) ENRICHMENT<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants, | ) |
| - and - | )<br>) |
| ASPEN TECHNOLOGY INC., a DELAWARE corporation, | )<br>)<br>) |
| Nominal Defendant. | )<br>) |
| | ) DEMAND FOR JURY TRIAL |

RECEIPT #_____
AMOUNT $ 1 - 0
SUMMONS ISSUED Y(1) - 15
LOCAL RULE 4.1_____
WAIVER FORM_____
MCF ISSUED_____
BY DPTY. CLK_____
DATE_____

Plaintiff, by his attorneys, submits this Verified Shareholder Derivative Complaint (the "Complaint") against the defendants named herein.

## NATURE OF THE ACTION

1.    This is a shareholder derivative action brought by a shareholder of Aspen Technology Inc., ("AspenTech" or the "Company"), on behalf of the Company against certain of its officers and directors seeking to remedy defendants' violations of federal law, including breaches of fiduciary duties, abuse of control, gross mismanagement, waste of corporate assets and unjust enrichment that occurred between August 8, 2000 and the present (the "Relevant Period") and that have caused substantial losses to AspenTech and other damages, such as to its reputation and goodwill.

## JURISDICTION AND VENUE

2.    This Court has jurisdiction over all claims asserted herein pursuant to 28 U.S.C. ' 1332(a)(2), because complete diversity exists between the plaintiff and each defendant, and the amount in controversy exceeds $75,000.  This action is not a collusive one to confer jurisdiction on this Court it would not otherwise have.

3.    This Court has jurisdiction over each defendant named herein because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with Massachusetts so as to render the exercise of jurisdiction by the Massachusetts courts permissible under traditional notions of fair play and substantial justice.

4.    Venue is proper in this Court because one or more of the defendants either resides in or maintains executive offices in this District, a substantial portion of the transactions and wrongs complained of herein, including the defendants' primary participation in the wrongful acts detailed herein and aiding and abetting and conspiracy in violation of fiduciary duties owed to AspenTech occurred in this District, and defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## SUMMARY OF THE ACTION

5.    Defendant AspenTech describes itself as the "leading supplier of integrated software and services to the process industries, which consist of oil and gas, petroleum, chemicals,

pharmaceuticals and other industries that manufacture and produce products from a chemical process." The Company develops and markets software and services to companies in the process industries.

6. Throughout the Relevant Period, defendants issued numerous positive statements and filed quarterly reports with the SEC which described the Company's increasing financial performance. These statements were materially false and misleading because they failed to disclose and misrepresented the following adverse facts, among others: (i) that the Company had improperly and prematurely recognized revenue for certain software license and service agreement transactions entered into with certain alliance partners and other customers during fiscal years 2000-2002 and possibly other periods; (ii) that the Company lacked adequate internal controls and was therefore unable to ascertain its true financial condition; and (iii) that as a result of the foregoing, the values of the Company's revenues, earnings, assets and/or liabilities for fiscal years 2000-2002 and possibly other periods were materially overstated and may have to be restated.

## THE PARTIES

7. Plaintiff Gary Caviness ("Caviness") is, and was at times relevant hereto, an owner and holder of AspenTech common stock. Caviness is a citizen of Florida.

8. Nominal defendant AspenTech is a corporation organized and existing under the laws of the state of Delaware with its headquarters located at Ten Canal Park Cambridge, Massachusetts. AspenTech supplies software products and services for the analysis, design and automation of process manufacturing facilities. The Company's software and services are used by companies in the chemical, petroleum, pharmaceuticals, pulp and paper, and metal industries.

9. Defendant Lawrence B. Evans ("Evans") was, Chairman and Chief Executive Officer ("CEO") of AspenTech from the beginning of the Relevant Period to October 2002. Evans currently serves as Chairman of the Board. Because of Evans's positions, he knew the adverse non-public information about the business of AspenTech, specifically, the Company's accounting for certain software license and service agreement transactions entered into with certain alliance partners and other customers during fiscal years 2000-2002, as well as the finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections

- 2 -

with other corporate officers and employees, attendance at management and Board of Directors' meetings and committees thereof and via reports and other information provided to him in connection therewith. During the Relevant Period, Evans participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and Securities and Exchange Commission ("SEC") filings. For FY:04, FY:03, FY:02, FY:01 and FY:00 AspenTech paid defendant Evans $325,000, $276,250, $314,844, $325,000 and $560,000 respectively, in salary, bonus and other compensation, and granted him 33,000, 41,016, 22,500, 22,000 and 45,000 options to purchase AspenTech stock, respectively. During the Relevant Period, Evans sold 5,000 shares of AspenTech stock for proceeds of $150,000.00. Evans is a citizen of Massachusetts.

10.   Defendant Lisa W. Zappala ("Zappala") was, Chief Financial Offer ("CFO") of AspenTech from the beginning of the Relevant Period to July 2003. Because of Zappala's position, she knew the adverse non-public information about the business of AspenTech, specifically, the Company's accounting for certain software license and service agreement transactions entered into with certain alliance partners and other customers during fiscal years 2000-2002, as well as the finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management meetings and via reports and other information provided to her in connection therewith.   During the Relevant Period, Zappala participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. For FY:03, FY:02, FY:01 and FY:00, AspenTech paid defendant Zappala $191,250, $217,969, $225,000 and $285,250  respectively, in salary, bonus and other compensation, and granted her 25,704, 20,000, 20,000 and 30,000 options to purchase AspenTech stock, respectively. During the Relevant Period, Zappala sold 8,000 shares of AspenTech stock for proceeds of $320,000.00. Zappala is a citizen of Massachusetts.

11.   Defendant David L. McQuillin (" McQuillin") is, President and CEO of AspenTech and has been since October 2002. McQuillin currently serves as a director. Because of McQuillin's position, he knew the adverse non-public information about the business of AspenTech, specifically,

- 3 -

the Company's accounting for certain software license and service agreement transactions entered into with certain alliance partners and other customers during fiscal years 2000-2002, as well as the finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management meetings and via reports and other information provided to him in connection therewith. During the Relevant Period, McQuillin participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. For FY:04, FY:03, and FY:02, AspenTech paid defendant McQuillin $350,000, $289,744 and $350,962, respectively, in salary, bonus and other compensation, and granted him 1,516,609, 450,891 and 22,500 options to purchase AspenTech stock, respectively. During the Relevant Period, McQuillin sold 210,000 shares of AspenTech stock for proceeds of $2,331,900.00. McQuillin is a citizen of Massachusetts.

12.     Defendant Charles F. Kane ("Kane") has served as Senior Vice President and Chief Financial Officer of AspenTech since July 2003. Because of Kane's position, he knew the adverse non-public information about the business of AspenTech, specifically, the Company's accounting for certain software license and service agreement transactions entered into with certain alliance partners and other customers during fiscal years 2000-2002, as well as the finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management meetings and via reports and other information provided to him in connection therewith. During the Relevant Period, Kane participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. For FY:04, AspenTech paid defendant Kane $250,000 in salary, bonus and other compensation, and granted him 339,216 options to purchase AspenTech stock, respectively. Kane is a citizen of Massachusetts.

13.     Defendant Stephen M. Jennings ("Jennings") is, and at all times relevant hereto was, a director of AspenTech. Because of Jennings' position, he knew the adverse non-public information about the business of AspenTech, specifically, the Company's accounting for certain software license and service agreement transactions entered into with certain alliance partners and other customers

- 4 -

during fiscal years 2000-2002, as well as the finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board of Directors' meetings and committees thereof and via reports and other information provided to him in connection therewith. During the Relevant Period, Jennings participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. Jennings is a citizen of Massachusetts.

14.     Defendant Joan C. McArdle ("McArdle") is, and at all times relevant hereto was, a director of AspenTech. Because of McArdle's position, she knew the adverse non-public information about the business of AspenTech, specifically, the Company's accounting for certain software license and service agreement transactions entered into with certain alliance partners and other customers during fiscal years 2000-2002, as well as the finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board of Directors' meetings and committees thereof and via reports and other information provided to her in connection therewith. During the Relevant Period, McArdle participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. McArdle is a citizen of Massachusetts.

15.     Defendant Michael Pehl ("Pehl") is a director of AspenTech and has been since August 2003. Because of Pehl's position, he knew the adverse non-public information about the business of AspenTech, specifically, the Company's accounting for certain software license and service agreement transactions entered into with certain alliance partners and other customers during fiscal years 2000-2002, as well as the finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board of Directors' meetings and committees thereof and via reports and other information provided to him in connection therewith. During the Relevant Period, Pehl participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. Pehl is a citizen of Massachusetts.

16.    Defendant Douglas A. Kingsley ("Kingsley") is a director of AspenTech and has been since August 2003. Because of Kingsley's position, he knew the adverse non-public information about the business of AspenTech, specifically, the Company's accounting for certain software license and service agreement transactions entered into with certain alliance partners and other customers during fiscal years 2000-2002, as well as the finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board of Directors' meetings and committees thereof and via reports and other information provided to him in connection therewith. During the Relevant Period, Kingsley participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. Kingsley is a citizen of Massachusetts.

17.    Defendant Gary E. Haroian ("Haroian") is a director of AspenTech and has been since December 2003. Because of Haroian's position, he knew the adverse non-public information about the business of AspenTech, specifically, the Company's accounting for certain software license and service agreement transactions entered into with certain alliance partners and other customers during fiscal years 2000-2002, as well as the finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board of Directors' meetings and committees thereof and via reports and other information provided to him in connection therewith. During the Relevant Period, Haroian participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. Haroian is a citizen of Massachusetts.

18.    Defendant Mark Fusco ("Fusco") is a director of AspenTech and has been since December 2003. Because of Fusco's position, he knew the adverse non-public information about the business of AspenTech, specifically, the Company's accounting for certain software license and service agreement transactions entered into with certain alliance partners and other customers during fiscal years 2000-2002, as well as the finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board of Directors' meetings and committees thereof and via

- 6 -

reports and other information provided to him in connection therewith. During the Relevant Period, Fusco participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. Fusco is a citizen of Massachusetts.

19.    Defendant Donald P. Casey ("Casey") is a director of AspenTech and has been since April 2004. Because of Casey's position, he knew the adverse non-public information about the business of AspenTech, specifically, the Company's accounting for certain software license and service agreement transactions entered into with certain alliance partners and other customers during fiscal years 2000-2002, as well as the finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board of Directors' meetings and committees thereof and via reports and other information provided to him in connection therewith. During the Relevant Period, Casey participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. Casey is a citizen of Massachusetts.

20.    Defendant Stephen L. Brown ("S. Brown") was a director of AspenTech at all times relevant hereto, until April 2004. Because of S. Brown's position, he knew the adverse non-public information about the business of AspenTech, specifically, the Company's accounting for certain software license and service agreement transactions entered into with certain alliance partners and other customers during fiscal years 2000-2002, as well as the finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board of Directors' meetings and committees thereof and via reports and other information provided to him in connection therewith. During the Relevant Period, S. Brown participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. During the Relevant Period, S. Brown sold 18,775 shares of AspenTech stock for proceeds of $165,422.75. S. Brown is a citizen of Massachusetts.

21.    Defendant Joseph F. Boston ("Boston") was a director of AspenTech at all times relevant hereto, until October 2002. Because of Boston's position, he knew the adverse non-public information about the business of AspenTech, specifically, the Company's accounting for certain

software license and service agreement transactions entered into with certain alliance partners and other customers during fiscal years 2000-2002, as well as the finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board of Directors' meetings and committees thereof and via reports and other information provided to him in connection therewith. During the Relevant Period, Boston participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. During the Relevant Period, Boston sold 245,000 shares of AspenTech stock for proceeds of $8,910,400.00. Boston is a citizen of Massachusetts.

22.     Defendant Douglas R. Brown (" D. Brown") was a director of AspenTech at all times relevant hereto, until April 2004. Because of D. Brown's position, he knew the adverse non-public information about the business of AspenTech, specifically, the Company's accounting for certain software license and service agreement transactions entered into with certain alliance partners and other customers during fiscal years 2000-2002, as well as the finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board of Directors' meetings and committees thereof and via reports and other information provided to him in connection therewith. During the Relevant Period, D. Brown participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. D. Brown is a citizen of Massachusetts.

23.     Defendant Gresham T. Brebach ("Brebach") was a director of AspenTech at all times relevant hereto, until April 2003. Because of Brebach's position, he knew the adverse non-public information about the business of AspenTech, specifically, the Company's accounting for certain software license and service agreement transactions entered into with certain alliance partners and other customers during fiscal years 2000-2002, as well as the finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board of Directors' meetings and committees thereof and via reports and other information provided to him in connection therewith.

- 8 -

During the Relevant Period, Brebach participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. Brebach is a citizen of Massachusetts.

24.     The defendants identified in &&9, 11, 13-23 are referred to herein as the "Director Defendants." The defendants identified in &&9-12 are referred to herein as the "Officer Defendants." The defendants identified in &&9-11, 20-21 are referred to herein as the "Insider Selling Defendants." Collectively, the Director Defendants, the Officer Defendants and the Insider Selling Defendants are referred to herein as the "Individual Defendants."

## DUTIES OF THE INDIVIDUAL DEFENDANTS

25.     By reason of their positions as officers, directors and/or fiduciaries of AspenTech and because of their ability to control the business and corporate affairs of AspenTech, the Individual Defendants owed AspenTech and its shareholders fiduciary obligations of trust, loyalty, good faith and due care, and were and are required to use their utmost ability to control and manage AspenTech in a fair, just, honest and equitable manner. The Individual Defendants were and are required to act in furtherance of the best interests of AspenTech and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit.

26.     Each director and officer of the Company owes to AspenTech and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing. In addition, as officers and/or directors of a publicly held company, the Individual Defendants had a duty to promptly disseminate accurate and truthful information with regard to the Company's operations, performance, projections and forecasts so that the market price of the Company's stock would be based on truthful and accurate information.

27.     The Individual Defendants, because of their positions of control and authority as directors and/or officers of AspenTech, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by the Company. Because of their advisory, executive, managerial and directorial positions with AspenTech, each of the Individual Defendants had access to adverse non-public

information about the financial condition, operations, and improper representations of AspenTech.

28.   At all times relevant hereto, each of the Individual Defendants was the agent of each of the other Individual Defendants and of AspenTech, and was at all times acting within the course and scope of such agency.

29.   To discharge their duties, the officers and directors of AspenTech were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the financial affairs of the Company.  By virtue of such duties, the officers and directors of AspenTech were required to, among other things:

(a)   refrain from acting upon material inside corporate information to benefit themselves;

(b)   ensure that the Company complied with its legal obligations and requirements, including acting only within the scope of its legal authority and disseminating truthful and accurate statements to the SEC and the investing public;

(c)   conduct the affairs of the Company in an efficient, business-like manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

(d)   properly and accurately guide investors and analysts as to the true financial condition of the Company at any given time, including making accurate statements about the Company's financial results and prospects, and ensuring that the Company maintained an adequate system of financial controls such that the Company's financial reporting would be true and accurate at all times;

(e)   remain informed as to how AspenTech conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, to make reasonable inquiry in connection therewith, and to take steps to correct such conditions or practices and make such disclosures as necessary to comply with federal and state securities laws; and

(f)   ensure that the Company was operated in a diligent, honest and prudent manner in compliance with all applicable federal, state and local laws, rules and regulations.

30.   Each Individual Defendant, by virtue of his or her position as a director and/or officer,

owed to the Company and to its shareholders the fiduciary duties of loyalty, good faith and the exercise of due care and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets. The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and officers of AspenTech, the absence of good faith on their part, and a reckless disregard for their duties to the Company and its shareholders that the Individual Defendants were aware or should have been aware posed a risk of serious injury to the Company. The conduct of the Individual Defendants who were also officers and/or directors of the Company during the Relevant Period has been ratified by the remaining Individual Defendants who collectively comprised all of AspenTech's Board during the Relevant Period.

31.     The Individual Defendants breached their duties of loyalty and good faith by allowing defendants to cause or by themselves causing the Company to misrepresent its financial results and prospects, as detailed herein *infra*, and by failing to prevent the Individual Defendants from taking such illegal actions. In addition, as a result of defendants' illegal actions and course of conduct during the Relevant Period, the Company is now the subject of several class action law suits that allege violations of federal securities laws. As a result, AspenTech has expended and will continue to expend significant sums of money. Such expenditures include, but are not limited to:

(a)     Costs incurred to carry out internal investigations, including legal fees paid to outside counsel; and

(b)     Costs incurred in investigating and defending AspenTech and certain officers in the class actions, plus potentially millions of dollars in settlements or to satisfy an adverse judgment.

32.     Moreover, these actions have irreparably damaged AspenTech's corporate image and goodwill. For at least the foreseeable future, AspenTech will suffer from what is known as the "liar's discount," a term applied to the stocks of companies who have been implicated in illegal behavior and have misled the investing public, such that AspenTech's ability to raise equity capital or debt on favorable terms in the future is now impaired.

**CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION**

- 11 -

33.    In committing the wrongful acts alleged herein, the Individual Defendants have pursued, or joined in the pursuit of, a common course of conduct, and have acted in concert with and conspired with one another in furtherance of their common plan or design.  In addition to the wrongful conduct herein alleged as giving rise to primary liability, the Individual Defendants further aided and abetted and/or assisted each other in breach of their respective duties.

34.    During all times relevant hereto, the Individual Defendants collectively and individually initiated a course of conduct that was designed to and did: (i) conceal the fact that the Company prematurely recognized revenue for software licenses and service agreement transactions, in order to allow defendants to artificially inflate the price of the Company's shares; (ii) maintain the Individual Defendants' executive and directorial positions at AspenTech and the profits, power and prestige that the Individual Defendants enjoyed as a result of these positions; and  (iii) deceive the investing public, including shareholders of AspenTech, regarding the Individual Defendants' management of AspenTech's operations, the Company's financial health and stability, and future business prospects, specifically related to the Company's financials that had been misrepresented by defendants throughout the Relevant Period.  In furtherance of this plan, conspiracy and course of conduct, the Individual Defendants collectively and individually took the actions set forth herein.

35.    The Individual Defendants engaged in a conspiracy, common enterprise and/or common course of conduct commencing by at least August 2000 and continuing thereafter.  During this time the Individual Defendants caused the Company to conceal the true fact that AspenTech had prematurely recognized revenue for software licenses and service agreement transactions.  In addition, defendants also made other specific, false statements about AspenTech's financial performance and future business prospects, as alleged herein.

36.    The purpose and effect of the Individual Defendants' conspiracy, common enterprise, and/or common course of conduct was, among other things, to disguise the Individual Defendants' violations of law, breaches of fiduciary duty, abuse of control, gross mismanagement, waste of corporate assets and unjust enrichment; to conceal adverse information concerning the Company's operations, financial condition and future business prospects; and to artificially inflate the price of AspenTech common stock so they could: (i) dispose of over $11.8 million of their personally held

stock; (ii) protect and enhance their executive and directorial positions and the substantial compensation and prestige they obtained as a result thereof; and (iii) use the artificially inflated Company stock as partial consideration to acquire Icarus Corporation ("Icarus") and Hyprotech Ltd ("Hyprotech") and enabled the Company to sign a definitive agreement for $100 million in private equity financing on favorable terms.

37.    The Individual Defendants accomplished their conspiracy, common enterprise and/or common course of conduct by causing the Company to purposefully, recklessly or negligently recognize revenue for software licenses and service agreement transactions.  Because the actions described herein occurred under the authority of the Board of Directors, each of the Individual Defendants was a direct, necessary and substantial participant in the conspiracy, common enterprise and/or common course of conduct complained of herein.

38.    Each of the Individual Defendants aided and abetted and rendered substantial assistance in the wrongs complained of herein.  In taking such actions to substantially assist the commission of the wrongdoing complained of herein, each Individual Defendant acted with knowledge of the primary wrongdoing, substantially assisted the accomplishment of that wrongdoing, and was aware of his or her overall contribution to and furtherance of the wrongdoing.

## BACKGROUND

39.    On October 27, 2004, the Individual Defendant's caused the Company to shock the market when it issued a press release announcing that its Audit Committee had undertaken a detailed review of the accounting for certain software license and service agreement transactions entered into with certain alliance partners and other customers during fiscal years 2000-2002. The Committee is reassessing the time periods in which revenue was recognized for these transactions and whether any of these transactions have prior or current material financial statement impact. The review could lead to a restatement. The press release continued, in pertinent part, as follows:

> Based on its preliminary review to date, the Audit Committee believes that one software license transaction in fiscal third quarter 2000 and two transactions in fiscal second quarter 2001 were included in AspenTech's results for such periods without reflecting the impacts of associated arrangements between AspenTech and those customers, which may require revised accounting treatment.

The Committee has also identified a potential contingency associated with a fourth transaction recorded in the fourth fiscal quarter of 2001 which was not reflected in prior accounting, which may require revised accounting treatment.

40.     Upon this shocking news, on October 28, 2004, shares of the Company's stock fell to an intraday low of $5.50 per share, or approximately 20%, before closing at $6.68 per share, on unusually heavy trading volume.

41.     Then, on October 29, 2004, the Individual Defendant's caused the Company to announce that federal prosecutors launched a probe into the Company's accounting practices from 2000 through 2002.  The Company said it received a subpoena from the U.S. Attorney's Office for the Southern District of New York requesting documents relating to transactions that it entered into during those years, and other documents dating from January 1, 1999.

42.     Upon this shocking news, shares of the Company's stock fell an additional $0.67, or approximately 10%, to close at $6.01, on unusually heavy trading volume.

43.     Prior to disclosing these adverse facts to the investing public, AspenTech: (i) acquired ICARUS using its overvalued shares as partial consideration; (ii) completed a private placement of its common stock for gross proceeds of approximately $30 million; (iii) completed a private placement of its common stock for gross proceeds of approximately $50 million and used those proceeds to acquire Hyprotech; and (iv) enabled the Company to sign a definitive agreement for $100 million in private equity financing on favorable terms.

## IMPROPER STATEMENTS

44.     On August 8, 2000, the Individual Defendant's caused AspenTech to issue a press release announcing its financial results for the fourth quarter and year end of fiscal 2000, the period ending June 30, 2000.  For the fiscal year, excluding one-time charges, AspenTech reported total revenues of $268.1 million and net income of $6.5 million or $0.21 per diluted share.  Defendant Evans commented on the Company's performance, stating, in pertinent part, as follows:

> We are pleased to have exceeded our goals for both growth and profitability in the fourth quarter and fiscal year.  The rapid growth in our license revenues continued to be driven by strong demand for our integrated Enterprise Optimization(TM) and supply chain solutions, as process manufacturers increasingly invest in technology to improve their manufacturing productivity and optimize their supply chains.  We are unique in the industry as the only company with a proven

integrated solution, and our domain expertise and process knowledge enable us to deploy mission-critical solutions that other vendors cannot provide.

In the fourth quarter, we saw good strength across multiple process industry sectors, geographies, and product offerings. In addition to a number of significant fourth quarter Enterprise Optimization transactions, we won a highly competitive, enterprise-wide supply chain deal with BP Chemicals, as well as several other large supply chain deals, extending our position as the market leader for process industry supply chain implementations. We are pleased with the performance of our supply chain solutions this past year, where license revenue more than doubled, and we are excited about our prospects for the year ahead.

As we move into fiscal 2001, we believe we are strategically positioned to provide critical technologies that will allow process manufacturers to seamlessly link to digital e-marketplaces and participate in direct materials procurement over the Internet. In this way, we are confident we can offer a customer annual savings that will often exceed tens of millions of dollars by streamlining their business processes and optimizing their operations.

45.    AspenTech's financial results for the fourth quarter and year end of 2000, the period ending June 30, 2000, were repeated in the Company's Report on Form 10-K405 filed with the SEC on or about September 28, 2000, which was signed by defendants Evans and Zappala, among others. Concerning the Company's revenue recognition policies, the 10-K405 stated, in pertinent part, as follows:

License revenue, including license renewals, consists principally of revenue earned under fixed-term and perpetual software license agreements and is generally recognized upon shipment of the software if collection of the resulting receivable is probable, the fee is fixed or determinable, and vendor-specific objective evidence exists for all undelivered elements to allow allocation of the total fee to all delivered and undelivered elements of the arrangement. Revenues under such arrangements, which may include several different software products and services sold together, are allocated to each element based on the residual method in accordance with SOP 98-9, "Software Revenue Recognition, with Respect to Certain Transactions." Under the residual method, the fair value of the undelivered elements is deferred and subsequently recognized when earned. The Company has established sufficient vendor specific objective evidence for professional services, training and maintenance and support services. Accordingly, software license revenue is recognized under the residual method in arrangements in which software is licensed with professional services, training and maintenance and support services. The Company uses installment contracts as a standard business practice and has a history of successfully collecting under the original payment terms without making concessions on payments, products or services.

Service revenues from fixed-price contracts are recognized using the percentage-of-completion method, measured by the percentage of costs (primarily labor) incurred to date as compared to the estimated total costs (primarily labor) for each contract. When a loss is anticipated on a contract, the full amount thereof is provided currently. Service revenues from time and expense contracts and consulting and training revenue are recognized as the related services are performed. Services that have been performed but for which billings have not been made are recorded as

unbilled services, and billings that have been recorded before the services have been performed are recorded as unearned revenue in the accompanying consolidated balance sheets.

46.     On September 5, 2000, the Individual Defendant's caused the Company to announce that it closed a transaction to acquire ICARUS, the market leader in providing software that is used by the process manufacturing industries to estimate plant capital costs and evaluate project economics for $24.5 million in a combination of cash and stock.

47.     On October 24, 2000, the Individual Defendant's caused AspenTech to issue a press release announcing its financial results for the first quarter of fiscal 2001, the period ending September 30, 2000. For the quarter, the Individual Defendant's caused the Company to report total revenues of $69.5 million and, excluding the one-time in-process research and development charge, the Company reported a net loss of $0.2 million or $0.01 per share. Defendant Evans commented on the Company's performance, stating, in pertinent part, as follows:

> Our supply chain solutions were a primary driver of our growth in the first quarter, as we won a number of important deals in our target markets. In addition, we saw a strong contribution from our Aspen Engineering Suite. We are also continuing to gain momentum in the process industries as the only e-business software vendor with an end-to-end solution that integrates all facets of a corporation and its extended enterprise, from the digital marketplace to the plant floor.
>
> In the first quarter, we announced several important initiatives to help our customers address the critical areas of their e-business strategies: improve their internal processes with our infrastructure solutions such as Plantelligence and eSupply Chain suite, connect seamlessly to e-marketplaces using our netmarket solution and tie in external business partners through our B2B Foundation solution.

48.     AspenTech's financial results for the first quarter of fiscal 2001, the period ending September 30, 2000, were repeated in the Company's Report on Form 10-Q filed with the SEC on or about November 14, 2000, which was signed by defendant Zappala. Concerning the Company's recognition policies, the Individual Defendant's caused the 10-Q to state, in pertinent part, as follows:

> License revenue, including license renewals, consists principally of revenue earned under fixed-term and perpetual software license agreements and is generally recognized upon shipment of the software if collection of the resulting receivable is probable, the fee is fixed or determinable, and vendor-specific objective evidence exists for all undelivered elements to allow allocation of the total fee to all delivered and undelivered elements of the arrangement. Revenues under such arrangements, which may include several different software products and services sold together, are allocated to each element based on the residual method in accordance with SOP 98-9, "Software Revenue Recognition, with Respect to Certain Transactions." Under the

residual method, the fair value of the undelivered elements is deferred and subsequently recognized when earned. The Company has established sufficient vendor specific objective evidence for professional services, training and maintenance and support services. Accordingly, software license revenue is recognized under the residual method in arrangements in which software is licensed with professional services, training and maintenance and support services. The Company uses installment contracts as a standard business practice and has a history of successfully collecting under the original payment terms without making concessions on payments, products or services.

Service revenues from fixed-price contracts are recognized using the percentage-of-completion method, measured by the percentage of costs (primarily labor) incurred to date as compared to the estimated total costs (primarily labor) for each contract. When a loss is anticipated on a contract, the full amount thereof is provided currently. Service revenues from time and expense contracts and consulting and training revenue are recognized as the related services are performed. Services that have been performed but for which billings have not been made are recorded as unbilled services, and billings that have been recorded before the services have been performed are recorded as unearned revenue in the accompanying consolidated balance sheets.

49.     On January 24, 2001, the Individual Defendant's caused AspenTech to issue a press release announcing its financial results for the second quarter of fiscal 2001, the period ending December 31, 2000. For the quarter, the Individual Defendant's caused the Company to report total revenues of $81.7 million and, excluding amortization of goodwill, in-process research and development and write-off of investments, net income of $3.1 million, or $0.10 per diluted share. Defendant Evans commented on the Company's performance, stating, in pertinent part, as follows:

> We were pleased to see continued strong license revenue growth this quarter across a broad base of business. Our supply chain and engineering applications were the largest contributors in the quarter, with the petroleum sector again being the strongest segment of our end-user customer markets. Services revenue and profitability showed dramatic year-over-year improvement as a result of investments we have made to expand our supply chain implementation capacity and productivity.

> We are steadily gaining market share among process manufacturers worldwide as customers continue to standardize on our best-in-class technologies and recognize our differentiated position in the industry. As we move into the second half of the fiscal year, we are excited about our growth prospects and the opportunity to enhance our position as the leading e- business solutions provider for the process industries.

50.     AspenTech's financial results for the second quarter of fiscal 2001, the period ending December 31, 2000, were repeated in the Company's Report on Form 10-Q filed with the SEC on or about February 14, 2001, which was signed by defendant Zappala. Concerning the Company's revenue recognition policies, the Individual Defendant's caused the 10-Q to state, in pertinent part, as