## REASONS THE STATEMENTS WERE IMPROPER

83.     Then, on October 27, 2004, the Individual Defendant's caused the Company to shock the market when it issued a press release announcing that its Audit Committee had undertaken a detailed review of the accounting for certain software license and service agreement transactions entered into with certain alliance partners and other customers during fiscal years 2000-2002. The Committee is reassessing the time periods in which revenue was recognized for these transactions and whether any of these transactions have prior or current material financial statement impact. The review could lead to a restatement. The press release continued, in pertinent part, as follows:

> Based on its preliminary review to date, the Audit Committee believes that one software license transaction in fiscal third quarter 2000 and two transactions in fiscal second quarter 2001 were included in AspenTech's results for such periods without reflecting the impacts of associated arrangements between AspenTech and those customers, which may require revised accounting treatment.
>
> The Committee has also identified a potential contingency associated with a fourth transaction recorded in the fourth fiscal quarter of 2001 which was not reflected in prior accounting, which may require revised accounting treatment.

84.     Upon this shocking news, on October 28, 2004, shares of the Company's stock fell to an intraday low of $5.50 per share, or approximately 20%, before closing at $6.68 per share, on unusually heavy trading volume.

85.     Then, on October 29, 2004, the Individual Defendant's caused the Company to announce that federal prosecutors launched a probe into the Company's accounting practices from 2000 through 2002. The Individual Defendant's caused the Company to state it had received a subpoena from the U.S. Attorney's Office for the Southern District of New York requesting documents relating to transactions that it entered into during those years, and other documents dating from January 1, 1999.

86.     Upon this shocking news, shares of the Company's stock fell an additional $0.67, or approximately 10%, to close at $6.01, on unusually heavy trading volume.

87.     On November 18, 2004, the Individual Defendants caused the Company to issue a press release entitled, "Aspen Technology Delays Filing of Form 10-Q and Requests Hearing with NASDAQ Stock Market." The press release stated in part:

> Aspen Technology, Inc. today announced that due to the delay in filing its Form 10-Q for the period ended September 30, 2004, it has received a letter from The Nasdaq Stock Market indicating that the Company's common stock is subject to delisting pursuant to Nasdaq Marketplace rule, 4310(c)(14). The company has delayed filing its 10-Q due to the ongoing review being conducted by its Audit Committee into the accounting for certain software license and service agreement transactions entered into with certain alliance partners and other customers during fiscal years 2000-2002. The company had previously announced this review in a press release dated October 27, 2004.
>
> AspenTech will request a hearing before a Nasdaq Listing Qualifications Panel, which will automatically stay the delisting of AZPN common stock pending the panel's review and determination. Until the Panel's final determination and the expiration of any exception granted by the Panel, AspenTech's common stock will continue to be traded on the Nasdaq National Market. However, as a result of the delayed 10-Q filing, the trading symbol for the Company's common stock will be changed from AZPN to AZPNE effective as of the opening of business on Thursday, November 18, 2004.
>
> While the Company is working diligently to complete the preparation and auditor review of its financial statements, there can be no assurance that the Panel will grant the Company's request for an exception that would allow the continued listing of the Company's common stock on the NASDAQ Stock Market. The Company will need to file its Form 10-Q for the quarter ended September 30, 2004 with the Securities and Exchange Commission and meet any other Panel requirements as a condition to obtaining the Panel's approval of continued listing on the NASDAQ Stock Market.
>
> The company also announced today that it intends to delay its Annual Shareholder Meeting, which was originally scheduled for December 7, 2004. A notice of the new meeting date along with the company's proxy statement and annual report will be sent to shareholders in advance of the newly scheduled meeting.

88.     On November 19, 2004, the Individual Defendants caused the Company to issue a press release entitled, "Notice of Delisting or Transfer, Other Events, Financial Statements and Item 3.01. Notice of Delisting or Failure to Satisfy a Continued Listing Rule or Standard; Transfer of Listing." The press release stated in part:

> On November 16, 2004, we received a letter from the NASDAQ Stock Market indicating that we are not in compliance with the NASDAQ requirements for continued listing set forth in Marketplace Rule 4310(c)(14) as a result of our failure to file our Quarterly Report on Form 10-Q for the fiscal quarter ended September 30, 2004 with the Securities and Exchange Commission.
>
> NASDAQ rules permit us to request a hearing with a NASDAQ Listing Qualifications Panel to appeal NASDAQ's decision to delist our common stock. We intend to make such an appeal. Our common stock will remain listed on the NASDAQ National Market pending the outcome of such appeal. We are working diligently to complete the preparation of our financial statements for the fiscal quarter ended September 30, 2004 and to file our Quarterly Report on Form 10-Q as promptly as possible. However, we cannot provide any assurances that the NASDAQ Listing Qualifications Panel will grant our request for continued listing.

On November 18, 2004, we issued a press release, attached to this Current Report on Form 8-K as Exhibit 99.1, reporting that we received the letter from the NASDAQ Stock Market described in this Current Report on Form 8-K.

89.     On November 24, 2004 the Individual Defendants caused the Company to issue a press release entitled AAspen to Restate Four Years' Results.@ The press release stated in relevant part:

> Aspen Technology to Restate Four Years' Results After Discovery of Improperly Accounted for Licenses
>
> CAMBRIDGE, Mass. (AP) -- Software maker Aspen Technology Inc. on Wednesday said it will restate results for the fiscal years ended June 2000 through June 2004 after its audit committee discovered the company improperly accounted for certain software licenses. The committee identified five relevant transactions it said took place in 2000 and 2001, and range in revenue from $800,000 to $4.3 million. As a result of the accounting treatment used, revenue was overstated for fiscal 2000 and 2001, and understated for fiscal 2002, 2003 and 2004, Aspen said.
>
> Aspen also said chief executive David McQuillin resigned at the board's request, effective immediately. Charles F. Kane, currently chief financial officer, was named interim chief executive.
>
> Aspen said the committee continues to investigate transactions entered into in fiscal years 2000 through 2002, and has decided to evaluate certain agreements entered into in fiscal 2003 and 2004. Aspen said that at this time the committee isn't able to determine when its review will be completed.
>
> Aspen shares closed at $5.79 on the Nasdaq Tuesday.

90.     As a result of the Individual Defendants' actions, AspenTech's market capitalization has been damaged by over $11 billion. At the same time that the defendants were causing AspenTech to suffer such devastation of its market capitalization, the Insider Selling Defendants fared much better by selling over $11.8 million of their personally held stock.

## ILLEGAL INSIDER SELLING

91.     While in possession of the undisclosed material adverse information, the Insider Selling Defendants sold the following shares of AspenTech stock:

| Name | Date | Shares | Price | Proceeds |
|---|---|---|---|---|
| Lawrence B. Evans | 12/14/2000 | 5,000 | $ 30.00 | $ 150,000.00 |
|  |  | **5,000** |  | **$ 150,000.00** |

| Name | Date | Shares | Price | Total |
|---|---|---|---|---|
| Lisa W. Zappala | 2/6/2001 | 8,000 | $ 40.00 | $ 320,000.00 |
| | | **8,000** | | **$ 320,000.00** |
| David L. McQuillin | 9/1/2004 | 3,125 | $ 6.00 | $ 18,750.00 |
| | 9/1/2004 | 19,184 | $ 6.00 | $ 115,104.00 |
| | 9/1/2004 | 59,491 | $ 6.00 | $ 356,946.00 |
| | 8/25/2004 | 6,250 | $ 6.00 | $ 37,500.00 |
| | 8/25/2004 | 1,950 | $ 6.00 | $ 11,700.00 |
| | 6/1/2004 | 16,776 | $ 6.00 | $ 100,656.00 |
| | 6/1/2004 | 32,600 | $ 6.00 | $ 195,600.00 |
| | 6/1/2004 | 15,624 | $ 6.00 | $ 93,744.00 |
| | 6/1/2004 | 25,000 | $ 6.00 | $ 150,000.00 |
| | 2/1/2001 | 5,000 | $ 39.75 | $ 198,750.00 |
| | 2/8/2001 | 10,000 | $ 40.00 | $ 400,000.00 |
| | 1/31/2001 | 5,000 | $ 40.00 | $ 200,000.00 |
| | 9/12/2000 | 5,000 | $ 44.00 | $ 220,000.00 |
| | 9/15/2000 | 5,000 | $ 46.63 | $ 233,150.00 |
| | | **210,000** | | **$ 2,331,900.00** |
| Joseph F. Boston | 9/12/2002 | 25,000 | $ 3.98 | $ 99,500.00 |
| | 11/2/2000 | 97,500 | $ 40.82 | $ 3,979,950.00 |
| | 11/1/2000 | 7,500 | $ 41.00 | $ 307,500.00 |
| | 10/30/2000 | 40,000 | $ 38.03 | $ 1,521,200.00 |
| | 10/27/2000 | 75,000 | $ 40.03 | $ 3,002,250.00 |
| | | **245,000** | | **$ 8,910,400.00** |
| Stephen L. Brown | 11/4/2003 | 17,275 | $ 8.81 | $ 152,192.75 |
| | 11/4/2003 | 1,500 | $ 8.82 | $ 13,230.00 |
| | | **18,775** | | **$ 165,422.75** |
| **TOTAL:** | | **486,775** | | **$ 11,877,722.75** |

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

92. Plaintiff brings this action derivatively in the right and for the benefit of AspenTech to redress injuries suffered, and to be suffered, by AspenTech as a direct result of the breaches of fiduciary duty, abuse of control, gross mismanagement, waste of corporate assets, and unjust enrichment, as well as the aiding and abetting thereof, by the Individual Defendants. AspenTech is named as a nominal defendant solely in a derivative capacity. This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

93. Plaintiff will adequately and fairly represent the interests of AspenTech in enforcing and prosecuting its rights.

94.     Plaintiff is and was an owner of the stock of AspenTech during times relevant to the Individual Defendants' wrongful course of conduct alleged herein, and remains a shareholder of the Company.

95.     The current Board of Directors of AspenTech consists of the following nine individuals: defendants Evans, Casey, Fusco, Haroian, Jennings, Kingsley, McArdle, McQuillin and Pehl. Plaintiff has not made any demand on the present Board of Directors of AspenTech to institute this action because such a demand would be a futile, wasteful and useless act, particularly for the following reasons:

(a)     As a result of his access to and review of internal corporate documents; conversations and connections with other corporate officers, employees and directors; and attendance at management and Board meetings, the defendant knew the adverse non-public information regarding the improper accounting. While in possession of this material adverse non-public information regarding the Company, the following current member of the AspenTech Board participated in the illegal insider selling:

(i)     During the Relevant Period, Evans sold 5,000 shares of AspenTech stock for proceeds of $150,000. Because this defendant received a personal financial benefit from the challenged insider trading transactions, this defendant is interested and any demand upon him is futile;

(b)     The Compensation Committee determines the CEO's compensation; reviews and approves, or makes recommendations to the board with respect to, the compensation of other executive officers. The Compensation Committee also oversees the evaluation of senior executives; administers the cash and equity incentive plans and reviews and makes recommendations to the board with respect to director compensation. The Compensation Committee is comprised of

defendants Casey, Fusco and Jennings. As the members of the Compensation Committee singularly control the other defendants' awards, the remaining members of the Board will not institute this action against defendants Casey, Fusco and Jennings. To do so would jeopardize each defendant's personal financial compensation. Thus, demand on defendants Evans, Hardian, Kingsley, McArdle, McQuillin and Pehl; is futile;

(c) The principal professional occupation of defendant McQuillin is his employment with AspenTech, pursuant to which he received and continues to receive substantial monetary compensations and other benefits. Specifically, for FY:04, FY:03, and FY:02, AspenTech paid defendant McQuillin $350,000, $289,744 and $350,962, respectively, in salary, bonus and other compensation, and granted him 1,516,609, 450,891 and 22,500 options to purchase AspenTech stock, respectively. Accordingly, defendant McQuillin lacks independence from defendants Casey, Fusco and Jennings, defendants who are not disinterested and/or independent and who exert influence over defendant McQuillin's compensation by virtue of their position as members of the Compensation Committee. This lack of independence renders defendant McQuillin incapable of impartially considering a demand to commence and vigorously prosecute this action;

(d) The principal professional occupation of defendant Kane is his employment with AspenTech, pursuant to which he received and continues to receive substantial monetary compensations and other benefits. Specifically, for FY:04, AspenTech paid defendant Kane $250,000 in salary, bonus and other compensation, and granted him 339,216 options to purchase AspenTech stock, respectively. Accordingly, defendant Kane lacks independence from defendants Casey, Fusco and Jennings, defendants who are not disinterested and/or independent and who exert influence over defendant Kane's compensation by virtue of their position as members of the Compensation Committee. This lack of independence renders defendant Kane incapable of

impartially considering a demand to commence and vigorously prosecute this action;

(e) According to AspenTech's Proxy Statement filed with the SEC on or about October 28, 2004, defendants Fusco, Haroian and McArdle were, during the Relevant Period, members of the Audit Committee. The Audit Committee is responsible for appointing and approving the compensation of, and assessing the independence of independent auditors. The audit committee also oversees the work of independent auditors, reviews and discusses with management and the independent auditors, the annual and quarterly financial statements and related disclosures; monitoring internal control over financial reporting, disclosure controls and procedures and code of business conduct and ethics and finally, overseeing internal audit functions. Nonetheless, the Audit Committee recommended that the Board include the improper audited consolidated financial statements in AspenTech's Annual Report on Form 10-K for the years ending June 30, 2000, June 30, 2001, June 30 2002, June 30, 2003 and June 30, 2004, as filed with the SEC. By such actions, defendants Fusco, Haroian and McArdle breached their duties by causing or allowing the improper financials described above. As a result of these defendants' breach of their duties, any demand upon them is futile;

(f) The entire AspenTech Board of Directors and senior management participated in the wrongs complained of herein. AspenTech's directors are not disinterested or independent due to the following: defendants Casey, Evans, Fusco, Haroian, Jennings, Kingsley, McArdle, McQuillin and Pehl served on the AspenTech Board during the Relevant Period. Pursuant to their specific duties as Board members, each was charged with the management of the Company and to conduct its business affairs. Each of the above-referenced defendants breached the fiduciary duties that they owed to AspenTech and its shareholders in that they failed to prevent and correct the improper financials. Thus, the AspenTech Board cannot exercise independent objective judgment in deciding

whether to bring this action or whether to vigorously prosecute this action because its members are interested personally in the outcome as it is their actions that have subjected AspenTech to millions of dollars in liability for possible violations of applicable securities laws;

(g) The Individual Defendants, because of their inter-related business, professional and personal relationships, have developed debilitating conflicts of interest that prevent the Board members of the Company from taking the necessary and proper action on behalf of the Company as requested herein. In addition to the conflicts that exist as a result of their participation in the improper accounting, as detailed herein *supra*, the majority of the Board, including the defendants listed below, are subject to the following prejudicial entanglements:

(i) ***Pehl and Kingsley Are Long-Time Business Associates***:

Defendant Pehl is a director of Advent International Corporation ("Advent"), and has been since 2001. Defendant Kingsley is a managing director of Advent, and has been since 1997. Because of their long-standing and entangling business and professional relationships, neither defendant Pehl nor defendant Kingsley will take the action requested by plaintiff herein against one another or the remainder of the Individual Defendants.

(h) Each of the key officers and directors knew of and/or directly benefitted from the wrongdoing complained of herein;

(i) Non-employee directors receive an annual fee of $25,000 for their services as directors. In addition, we pay the chairs of our audit committee, our compensation committee and our nominating and corporate governance committee annual retainers of $15,000, $7,500 and $7,500, respectively. All annual retainers are payable in four equal quarterly installments. We also pay each director $2,000 for attendance at each board or committee meeting of at least one hour duration. As part of the December 2003 review of director compensation policies, our nominating and corporate governance committee reviewed our director option grant program. Upon initial election to the board, we grant each non-employee director an option to purchase 24,000 shares of our common

stock at fair market value, provided such non-employee director was not, within the twelve months preceding his or her election as a director, our officer or employee or an officer or employee of our subsidiaries. This option vests quarterly over a three-year period beginning on the last day of the calendar quarter following the grant date. Beginning with the first annual meeting following a non-employee director's election to the board and at the end of each quarter thereafter, we grant each non-employee director an option to purchase 3,000 shares of common stock. Each option is fully exercisable at the time of grant and has exercise price equal to the fair market value of the common stock at the time of grant. Options granted to non-employee directors have a term of 10 years. Given that the value of the options for non-employee Board members Casey, Evans, Fusco, Haroian, Jennings, Kingsley, McArdle and Pehl potentially run into the millions of dollars, one cannot conclude realistically that defendants Casey, Evans, Fusco, Haroian, Jennings, Kingsley, McArdle and Pehl are able to objectively and impartially consider a demand to bring litigation against those to whom they are beholden to for their current position and future position on AspenTech board.

(j) The stock options granted to the above non-employee defendant directors Casey, Evans, Fusco, Haroian, Jennings, Kingsley, McArdle and Pehl, which are both vested and unvested, are so valuable that they create a considerable financial incentive for these directors to retain their positions as directors. As a result, plaintiff contends that it is more reasonable to assume an individual who has already received, and who expects to receive still more options of such significant value could not objectively decide whether to commence legal proceedings against his or her fellow directors.

(k) The defendant directors of AspenTech, as more fully detailed herein, participated in, approved and/or permitted the wrongs alleged herein to have occurred and participated in efforts to conceal or disguise those wrongs from AspenTech's stockholders or

recklessly and/or negligently disregarded the wrongs complained of herein, and are therefore not disinterested parties;

(l) In order to bring this suit, all of the directors of AspenTech would be forced to sue themselves and persons with whom they have extensive business and personal entanglements, which they will not do, thereby excusing demand;

(m) The acts complained of constitute violations of the fiduciary duties owed by AspenTech's officers and directors and these acts are incapable of ratification;

(n) Each of the defendant directors of AspenTech authorized and/or permitted the false statements disseminated directly to the public or made directly to securities analysts and which were made available and distributed to shareholders, authorized and/or permitted the issuance of various of the false and misleading statements and are principal beneficiaries of the wrongdoing alleged herein, and thus could not fairly and fully prosecute such a suit even if such suit was instituted by them;

(o) Any suit by the current directors of AspenTech to remedy these wrongs would likely expose the Individual Defendants and AspenTech to further violations of the securities laws that would result in civil actions being filed against one or more of the Individual Defendants, thus, they are hopelessly conflicted in making any supposedly independent determination whether to sue themselves;

(p) AspenTech has been and will continue to be exposed to significant losses due to the wrongdoing complained of herein, yet the Individual Defendants and current Board have not filed any lawsuits against themselves or others who were responsible for that wrongful conduct to attempt to recover for AspenTech any part of the damages AspenTech suffered and will suffer thereby;

(q) If the current directors were to bring this derivative action against themselves, they would thereby expose their own misconduct, which underlies allegations against them contained in class action complaints for violations of securities law, which admissions would impair their defense of the class actions and greatly increase the probability of their personal liability in the class actions, in an amount likely to be in excess of any insurance coverage available to the Individual Defendants. In essence, they would be forced to take positions contrary to the defenses they will likely assert in the securities class actions. This they will not do. Thus, demand is futile; and

(r) If AspenTech's current and past officers and directors are protected against personal liability for their acts of mismanagement, abuse of control and breach of fiduciary duty alleged in this Complaint by directors' and officers' liability insurance, they caused the Company to purchase that insurance for their protection with corporate funds, *i.e.*, monies belonging to the stockholders of AspenTech. However, due to certain changes in the language of directors' and officers' liability insurance policies in the past few years, the directors' and officers' liability insurance policies covering the defendants in this case contain provisions that eliminate coverage for any action brought directly by AspenTech against these defendants, known as, *inter alia*, the "insured versus insured exclusion." As a result, if these directors were to sue themselves or certain of the officers of AspenTech, there would be no directors' and officers' insurance protection and thus, this is a further reason why they will not bring such a suit. On the other hand, if the suit is brought derivatively, as this action is brought, such insurance coverage exists and will provide a basis for the Company to effectuate recovery. If there is no directors' and officers' liability insurance at all then the current directors will not cause AspenTech to sue them, since they will face a large uninsured liability.

96. Moreover, despite the Individual Defendants having knowledge of the claims and

causes of action raised by plaintiff, the current Board of Directors has failed and refused to seek to recover for AspenTech for any of the wrongdoing alleged by plaintiff herein.

97. Plaintiff has not made any demand on shareholders of AspenTech to institute this action since such demand would be a futile and useless act for the following reasons:

(a) AspenTech is a publicly held company with approximately 42 million shares outstanding, and thousands of shareholders;

(b) Making demand on such a number of shareholders would be impossible for plaintiff who has no way of finding out the names, addresses or phone numbers of shareholders; and

(c) Making demand on all shareholders would force plaintiff to incur huge expenses, assuming all shareholders could be individually identified.

## COUNT I

### Against the Insider Selling Defendants for Breach of Fiduciary Duties for Insider Selling and Misappropriation of Information

98. Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

99. At the time of the stock sales set forth herein, the Insider Selling Defendants knew the information described above, and sold AspenTech common stock on the basis of such information.

100. The information described above was proprietary non-public information concerning the Company's financial condition and future business prospects. It was a proprietary asset belonging to the Company, which the Insider Selling Defendants used for their own benefit when they sold AspenTech common stock.

101. At the time of their stock sales, the Insider Selling Defendants knew that the Company's revenues were materially overstated. The Insider Selling Defendants' sales of AspenTech common stock while in possession and control of this material adverse non-public information was a

- 52 -

breach of their fiduciary duties of loyalty and good faith.

102. Since the use of the Company's proprietary information for their own gain constitutes a breach of the Insider Selling Defendants' fiduciary duties, the Company is entitled to the imposition of a constructive trust on any profits the Insider Selling Defendants obtained thereby.

## COUNT II

### Against All Defendants for Breach of Fiduciary Duty

103. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

104. The Individual Defendants owed and owe AspenTech fiduciary obligations. By reason of their fiduciary relationships, the Officer Defendants and Director Defendants owed and owe AspenTech the highest obligation of good faith, fair dealing, loyalty and due care.

105. The Individual Defendants, and each of them, violated and breached their fiduciary duties of care, loyalty, reasonable inquiry, oversight, good faith and supervision.

106. Each of the Individual Defendants had actual or constructive knowledge that they had caused the Company to improperly misrepresent the financial results of the Company and failed to correct the Company's publicly reported financial results and guidance. These actions could not have been a good faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

107. As a direct and proximate result of the Individual Defendants' failure to perform their fiduciary obligations, AspenTech has sustained significant damages. As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

108. Plaintiff on behalf of AspenTech has no adequate remedy at law.

## COUNT III

### Against All Defendants for Abuse of Control

109. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

110. The Individual Defendants' misconduct alleged herein constituted an abuse of their ability to control and influence AspenTech, for which they are legally responsible.

111. As a direct and proximate result of the Individual Defendants' abuse of control, AspenTech has sustained significant damages.

112. As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

113. Plaintiff on behalf of AspenTech has no adequate remedy at law.

## COUNT IV

### Against All Defendants for Gross Mismanagement

114. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

115. By their actions alleged herein, the Individual Defendants, either directly or through aiding and abetting, abandoned and abdicated their responsibilities and fiduciary duties with regard to prudently managing the assets and business of AspenTech in a manner consistent with the operations of a publicly held corporation.

116. As a direct and proximate result of the Individual Defendants' gross mismanagement and breaches of duty alleged herein, AspenTech has sustained significant damages in excess of hundreds of millions of dollars.

117. As a result of the misconduct and breaches of duty alleged herein, the Individual

Defendants are liable to the Company.

118.  Plaintiff on behalf of AspenTech has no adequate remedy at law.

## COUNT V

### Against All Defendants for Waste of Corporate Assets

119.  Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

120.  As a result of the improper accounting, and by failing to properly consider the interests of the Company and its public shareholders by failing to conduct proper supervision, defendants have caused AspenTech to waste valuable corporate assets by paying incentive based bonuses to certain of its executive officers and incur potentially millions of dollars of legal liability and/or legal costs to defend defendants' unlawful actions.

121.  As a result of the waste of corporate assets, the Individual Defendants are liable to the Company.

122.  Plaintiff on behalf of AspenTech has no adequate remedy at law.

## COUNT VI

### Against All Defendants for Unjust Enrichment

123.  Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

124.  By their wrongful acts and omissions, defendants were unjustly enriched at the expense of and to the detriment of AspenTech.

125.  Plaintiff, as a shareholder and representative of AspenTech, seeks restitution from these defendants, and each of them, and seeks an order of this Court disgorging all profits, benefits and other compensation obtained by these defendants, and each of them, from their wrongful conduct

and fiduciary breaches.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff demands judgment as follows:

A.  Against all of the Individual Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of the Individual Defendants' breaches of fiduciary duties, abuse of control, gross mismanagement, waste of corporate assets and unjust enrichment;

B.  Extraordinary equitable and/or injunctive relief as permitted by law, equity and state statutory provisions sued hereunder, including attaching, impounding, imposing a constructive trust on or otherwise restricting the proceeds of defendants' trading activities or their other assets so as to assure that plaintiff on behalf of AspenTech has an effective remedy;

C.  Awarding to AspenTech restitution from the defendants, and each of them, and ordering disgorgement of all profits, benefits and other compensation obtained by the defendants;

D.  Awarding to plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

E.  Granting such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: December 1, 2004

Mary T. Sullivan, BBO #487130
SEGAL ROITMAN & COLEMAN
11 Beacon Street, Suite 500
Boston, MA 02108
Telephone: 617/742-0208
Facsimile: 617/742-2187

BRIAN J. ROBBINS
JEFFREY P. FINK
ROBBINS UMEDA & FINK, LLP
1010 Second Ave., Suite 2360
San Diego, CA 92101
Telephone: 619/525-3990
Facsimile: 619/525-3991

Attorneys for Plaintiff

## VERIFICATION

I, Jeffrey P. Fink, hereby declare as follows:

1. I am a member of the law firm of Robbins Umeda & Fink, LLP, counsel for plaintiff in the above-entitled action. I have read the foregoing complaint and know the contents thereof. I am informed and believe the matters therein are true and on that ground allege that the matters stated therein are true.

2. I make this Verification because plaintiff is absent from the County of San Diego where I maintain my office.

Executed this 24th day of November, 2004, at San Diego, California.

_____
Jeffrey P. Fink