UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

GARY CAVINESS, Derivatively on Behalf of      :
ASPEN TECHNOLOGY INC.,

        Plaintiff,      :      Civil Action
                                               No. 04-12524-RCL
    v.      :

LAWRENCE B. EVANS, LISA W. ZAPPALA, DAVID      :
L. MCQUILLIN, CHARLES F. KANE, STEPHEN M.      :
JENNINGS, JOAN C. MCCARDLE, MICHAEL PEHL,
DOUGLAS A. KINGSLEY, GARY E. HAROIAN,
MARK FUSCO, DONALD P. CASEY, STEPHEN L.      :
BROWN, JOSEPH F. BOSTON, DOUGLAS R.
BROWN and GRESHAM T. BREBACH,      :

        Defendants,      :
and      :

ASPEN TECHNOLOGY INC., a Delaware corporation,  :

        Nominal Defendant.      :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### ASPEN TECHNOLOGY, INC.'S, THE OUTSIDE-DIRECTORS' AND CHARLES F. KANE'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 23.1

Thomas J. Dougherty
Justin Daniels
Kerry Dakin
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
One Beacon Street
Boston, Massachusetts  02108
(617) 573-4800

Dated:  January 7, 2005

Counsel for Aspen Technology, Inc., the
Current Outside-Directors, the Former
Outside-Directors and Charles F. Kane

## TABLE OF CONTENTS

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Preliminary Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

I.    PLAINTIFF IS REQUIRED TO ALLEGE WITH PARTICULARIZED
      FACTUAL STATEMENTS WHY HIS DEMAND ON THE BOARD IS EXCUSED . . 4

II.   PLAINTIFF FAILS TO ALLEGE WITH
      PARTICULARITY FACTS CREATING A REASONABLE
      DOUBT AS TO THE DISINTERESTEDNESS OF THE BOARD . . . . . . . . . . . . . . . . 6

      A.    Plaintiff Fails To Allege With Particularity
            Facts Establishing A Substantial Likelihood
            Of Personal Liability For A Majority Of The Board . . . . . . . . . . . . . . . . . . . . 6

      B.    Plaintiff's Allegation That Director Evans Made One
            Trade Of AspenTech Stock Four Years Before The October
            2004 Announcement Fails To Establish That Evans Is Not Disinterested . . . . . . 9

      C.    Plaintiff's Allegations That The Directors Would
            Not Be Covered By Insurance In An Action By The Company
            Does Not Create a Reasonable Doubt As To Their Disinterestedness . . . . . . . . 11

III.  PLAINTIFF HAS FAILED TO ALLEGE WITH
      PARTICULARITY FACTS CREATING A REASONABLE DOUBT
      THAT THE BOARD CAN RESPOND TO A DEMAND WITH INDEPENDENCE . . 12

      A.    Plaintiff Fails To Establish That Directors
            Casey, Fusco, and Jennings Control The Other
            Directors As Members of the Board's Compensation Committee . . . . . . . . . . . 12

      B.    Plaintiff's Allegations That Directors Pehl and Kingsley Are
            Business Associates Does Not Establish That They Are Not Independent . . . . . 14

IV.   PLAINTIFF HAS FAILED TO VERIFY
      THE COMPLAINT AND TO ALLEGE THAT HE WAS
      A SHAREHOLDER AT THE TIME OF THE ALLEGED WRONGDOINGS . . . . . . . 15

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

TABLE OF AUTHORITIES

CASES                                                              PAGE(S)

Aronson v. Lewis, 473 A.2d 805 (Del. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 7

Brehm v. Eisner, 746 A.2d 244 (Del. 2000) . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 6, 13

Caruana v. Saligman, Civ. A. No. 11135,
       1990 WL 212304 (Del. Ch. Dec. 21, 1990) . . . . . . . . . . . . . . . . . . . . . . 11, 12

Decker v. Clausen, Civ. A. Nos. 10,684 and 10,685,
       1989 WL 133617 (Del. Ch. Nov. 6, 1989) . . . . . . . . . . . . . . . . . . 6, 7, 9, 12

Green v. Phillips, Civ. A. No. 14436,
       1996 WL 342093 (Del. Ch. June 19, 1996) . . . . . . . . . . . . . . . . . . . . . . 14, 15

Grobow v. Perot, 539 A.2d 180 (Del. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 13

Guttman v. Huang, 823 A.2d 492 (Del. Ch. 2003) . . . . . . . . . . . . . . . . . . 7, 10, 11

Kamen v. Kemper Fin. Servs., Inc., 500 U.S. 90 (1991) . . . . . . . . . . . . . . . . . . . . . 5

Kohls v. Duthie, 765 A.2d 1274 (Del. Ch. 2000) . . . . . . . . . . . . . . . . . . . . . . 14, 15

Langer v. Brown, 913 F. Supp. 260 (S.D.N.Y. 1996) . . . . . . . . . . . . . . . . . . 5, 13, 14

Levine v. Smith, 591 A.2d 194 (Del. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

McCall v. Scott, 239 F.3d 808 (6th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Rales v. Blasband, 634 A.2d 927 (Del. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Rattner v. Bidzos, No. Civ. A. 19700,
       2003 WL 22284323 (Del. Ch. Oct. 7, 2003) . . . . . . . . . . . . . . . . . . . . . . 8, 10

In re Sagent Tech., Inc. Derivative Litig.,
       278 F. Supp. 2d 1079 (N.D. Cal. 2003) . . . . . . . . . . . . . . . . . . . . . . . . 10, 14

CASES                                                                PAGE(S)

Seminaris v. Landa, 662 A.2d 1350 (Del. Ch. 1995) . . . . . . . . . . . . . . . . . . . . . . . . 7, 9

In re Silicon Graphics Inc. Sec. Litig.,
        183 F.3d 970 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

In re Sonus Networks, Inc., Derivative Litig.,
        No. 04-0753-BLS (Mass. Super. Ct. Sept. 27, 2004) . . . . . . . . . . . . 7, 9, 13

In re Stratus Computer, Inc. Sec. Litig., Civ. A. 89-2075-Z,
        1992 WL 73555 (D. Mass. Mar. 27, 1992) . . . . . . . . . . . . . . . . . . . . . . . . 15

White v. Panic, 783 A.2d 543 (Del. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4


RULES                                                                PAGE(S)

Fed. R. Civ. P. 23.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4, 15

iii

Pursuant to Fed. R. Civ. P. 23.1, Aspen Technology, Inc. ("AspenTech" or "Company"), Stephen M. Jennings, Joan C. McArdle, Michael Pehl, Douglas A. Kingsley, Gary E. Haroian, Mark Fusco, Donald P. Casey (the "Current Outside-Directors"), Stephen L. Brown, Joseph F. Boston, Douglas R. Brown, Gresham T. Brebach (the "Former Outside-Directors") and Charles F. Kane respectfully submit this memorandum of law in support of their motion to dismiss the Plaintiff's purported Verified Shareholder Derivative Complaint (the "Complaint") for failure to make a demand on the board of AspenTech and for failing to allege particularized facts showing why Plaintiff's failure to make a demand should be excused.

## Preliminary Statement

On October 27, 2004, AspenTech announced that its Audit Committee was undertaking a review of the accounting for certain transactions that occurred in fiscal years 2000-2002. (Compl. ¶ 83.) On December 1, 2004, <u>while the Audit Committee continued its review of these transactions,</u> Plaintiff filed this derivative action, contending that the accounting for the transactions under review was improper and that the director and officer defendants had filed false and misleading financial statements with knowledge of the improper accounting. Plaintiff did not make a pre-suit demand on the AspenTech board of directors.

At the time of the Complaint, the Audit Committee was comprised of three outside-directors, two of whom joined the board <u>after</u> the alleged wrongdoing (<u>id.</u>, ¶¶ 17, 18, 95(e)), and the AspenTech board of directors was comprised of eight members, seven of whom have never been employed by the company and five of whom joined the board <u>after</u> the alleged wrongdoing. (<u>Id.</u>, ¶¶ 9-23.)

Plaintiff contends that demand on the board is excused. (<u>Id.</u>, ¶¶ 92-96.) But, when an Audit Committee is actively investigating the alleged wrongdoing and the majority of

the board is comprised of outside directors who joined the board after the alleged wrongdoing, Plaintiff's burden for demonstrating that demand is excused is high. Plaintiff does not clear this hurdle and the Complaint must be dismissed.

### Statement of Facts

The Complaint alleges that Plaintiff is a citizen of Florida and an AspenTech shareholder, but does not allege <u>when</u> Plaintiff bought his AspenTech stock. (Compl. ¶ 7.) AspenTech is a Delaware corporation with its headquarters in Cambridge, Massachusetts. (<u>Id.</u>, ¶ 8.)

The Complaint alleges that the current directors of AspenTech are Lawrence B. Evans, Donald P. Casey, Mark Fusco, Gary E. Haroian, Stephen M. Jennings, Douglas A. Kingsley, Joan C. McArdle, David L. McQuillin and Michael Pehl. (<u>Id.</u>, ¶ 95.) In fact, as announced by AspenTech on November 24, 2004, at the request of the board, David McQuillin resigned as CEO and director effective immediately. (<u>Id.</u>, ¶ 89.) As a result, at the time of the Complaint, there were only eight current directors and <u>seven of the eight have never been employed by the company</u>. (<u>Id.</u>, ¶¶ 9-23.) Importantly, the Complaint alleges that Pehl and Kingsley did not become directors until August 2003 (<u>id.</u>, ¶¶ 15-16), Haroian and Fusco did not become directors until December 2003 (<u>id.</u>, ¶¶ 17-18) and Casey did not become a director until April 2004 (<u>id.</u>, ¶ 19).

On October 27, 2004, AspenTech announced that its Audit Committee had undertaken a detailed review of the accounting for certain software license and service agreement transactions entered into with certain alliance partners and other customers during fiscal years 2000-2002 and that the Audit Committee was reassessing the time periods in which revenue was

2

recognized for these transactions and whether any of these transactions would have a prior or current material financial statement impact. (Id., ¶ 83.)

On November 18, 2004, AspenTech announced that due to the ongoing review of certain transactions conducted by the Audit Committee, the Company had delayed filing its 10-Q and that due to this delay in filing, it had received a letter from The Nasdaq Stock Market indicating that the Company's common stock is subject to delisting. AspenTech further announced that the Company would request a hearing before a Nasdaq Listing Qualification Panel and that the request would automatically stay the delisting of AspenTech common stock. (Id., ¶ 87.)

On November 24, 2004, AspenTech announced that the Audit Committee believed that its review of certain transactions would lead to a restatement of its financial statements, that reported revenue for fiscal years 2000 and 2001 was overstated and that reported revenue for fiscal years 2002, 2003 and 2004 was understated. In addition, the Company announced that although it had made significant progress towards completion of its review, the investigation was ongoing. AspenTech further announced that, at the Board of Directors' request, David McQuillin had resigned as Chief Executive Officer and a director of the Company effective immediately. (Id., ¶ 89.)

On December 1, 2004, Plaintiff filed this derivative action. The Complaint alleges that AspenTech's press releases and public filings reporting its financial results for the fourth quarter and year end fiscal 2000 through the fourth quarter and year end fiscal 2004 were "materially false and misleading." (Id., ¶¶ 44-82.) The Complaint alleges that these statements failed to disclose that AspenTech "had improperly and prematurely recognized revenue for certain software license and service agreement transactions entered into with certain alliance

3

partners and other customers during fiscal years 2000-2002," that AspenTech "lacked adequate

internal controls and was therefore unable to ascertain its true financial condition," and that as a

result, "the values of the Company's revenues, earnings, assets and/or liabilities for fiscal years

2000-2002 and possibly other periods were materially overstated and may have to be restated."

(Id., ¶ 82.)

Plaintiff failed to verify the Complaint.  (See Compl. at unnumbered last page.)

## Argument

### I.    PLAINTIFF IS REQUIRED TO ALLEGE WITH PARTICULARIZED FACTUAL STATEMENTS WHY HIS DEMAND ON THE BOARD IS EXCUSED

A "cardinal precept" of Delaware corporate law is that "directors, rather than

shareholders, manage the business and affairs of the corporation." Aronson v. Lewis, 473 A.2d

805, 811 (Del. 1984), overruled in part on other grounds by Brehm v. Eisner, 746 A.2d 244, 253

(Del. 2000).  As a result, a shareholder is not permitted to bring a derivative suit to enforce the

rights of a corporation unless the shareholder demonstrates either that the board wrongfully

refused to bring suit or the reasons a demand on the board would be futile and is therefore

excused.  White v. Panic, 783 A.2d 543, 550 (Del. 2001) (dismissing derivative complaint with

prejudice where plaintiff failed to allege with particularity why demand was futile).  Where, as in

this case, the shareholder fails to make a demand on the board, Fed. R. Civ. P. 23.1 requires that

the complaint allege "with particularity" the reasons for plaintiff's failure to demand action.

To satisfy this requirement under Delaware law, the shareholder must allege

"sufficient particularized facts to support an inference that demand is excused because the board

is 'incapable of exercising its power and authority to pursue the derivative claims directly.'"

White, 783 A.2d at 551 (quoting Levine v. Smith, 591 A.2d 194, 200 (Del. 1991) (italics in

4

original)).[1]  In <u>Aronson v. Lewis</u>, the Delaware Supreme Court held that demand is excused only when, "under the particularized facts alleged, a reasonable doubt is created that: (1) the directors are disinterested and independent and (2) the challenged transaction was otherwise the product of a valid exercise of business judgment." 473 A.2d at 814.

Where, however, the plaintiff does not challenge a particular business decision of the board (such as a compensation package or sale of assets), the second prong of <u>Aronson</u> is inapplicable.  Rather, the court must answer one question: "whether or not the particularized factual allegations of a derivative stockholder complaint create a reasonable doubt that, as of the time the complaint is filed, the board of directors could have properly exercised its <u>independent and disinterested</u> business judgment in responding to a demand." <u>Rales v. Blasband</u>, 634 A.2d 927, 934 (Del. 1993) (emphasis added).  Under Delaware law there is a presumption that directors are independent and that their acts have been taken in good faith and in the best interests of the corporation. <u>Aronson</u>, 473 A.2d at 815.

To demonstrate that the directors are not disinterested, Plaintiff "must plead particularized facts demonstrating either a financial interest or entrenchment on part of the [majority of the current AspenTech] directors." <u>Grobow v. Perot</u>, 539 A.2d 180, 188 (Del. 1988), overruled in part on other grounds by <u>Brehm v. Eisner</u>, 746 A.2d 244, 253 (Del. 2000) (holding that plaintiff failed to allege particularized facts demonstrating that the majority of the board was not independent or disinterested).  To challenge director independence, plaintiff must "allege with particularity that the [AspenTech] directors were dominated or otherwise controlled by an individual or entity interested in the transaction." <u>Id.</u> at 189.  In essence, the question is,

---

[1]     AspenTech is a Delaware corporation, and therefore, Delaware law governs the substantive demand requirement. <u>Langer v. Brown</u>, 913 F. Supp. 260, 265 (S.D.N.Y. 1996) (citing <u>Kamen v. Kemper Fin. Servs., Inc.</u>, 500 U.S. 90 (1991)).

were a majority of the current AspenTech directors "incapable, due to personal interest or

domination and control, of objectively evaluating a demand, if made, that the Board assert the

corporation's claims that are raised by [the] [P]laintiff[ ] or otherwise remedy the alleged injury?"

Brehm, 746 A.2d at 257 (holding that plaintiff failed to allege particularized facts showing that a

majority of the board was interested or lacked independence).

Plaintiff has failed to allege any facts which would create a "reasonable doubt" as

to any of the board member's ability to respond to the demand with disinterest and independence.

As a result, this court must dismiss the Complaint with prejudice.

## II.    PLAINTIFF FAILS TO ALLEGE WITH PARTICULARITY FACTS CREATING A REASONABLE DOUBT AS TO THE DISINTERESTEDNESS OF THE BOARD

Plaintiff attempts to challenge the disinterestedness of the board by alleging (1)

that the board participated in and/or approved the alleged wrongdoing; (2) that director Evans

traded AspenTech stock almost four years before the October 2004 announcement; and (3) that

the directors and officers liability insurance would not cover the director defendants in a suit

against them by the company.  Each of these arguments has been soundly rejected under

Delaware law.

### A.    Plaintiff Fails To Allege With Particularity Facts Establishing A Substantial Likelihood Of Personal Liability For A Majority Of The Board

Plaintiff contends that demand is excused because each of the director defendants

"participated in the wrongs complained of herein." (Compl. ¶ 95(f); see also Compl. ¶¶ 95(e),

(h), (k), (m), (n).)

However, it is well established under Delaware law that an allegation that

directors participated in or approved of the alleged wrongs is insufficient to excuse demand.

6

<u>Decker v. Clausen</u>, Civ. A. Nos. 10,684 and 10,685, 1989 WL 133617, at *2 (Del. Ch. Nov. 6, 1989) (holding that demand was not excused where complaint alleged that the "directors participated in and/or approved the alleged wrongs."). Rather plaintiff must demonstrate for a majority of the directors that "a substantial likelihood of director liability . . . exists." <u>Aronson</u>, 473 A.2d at 815, 817 (holding that allegations that directors had approved the challenged transaction and would therefore be liable if plaintiff prevailed failed to demonstrate that demand was excused). As a result, the inquiry becomes whether Plaintiff has "pled facts that show that [a majority of the current AspenTech directors] face a sufficiently substantial threat of personal liability to compromise their ability to act impartially on a demand." <u>Guttman v. Huang</u>, 823 A.2d 492, 503 (Del. Ch. 2003).

The answer to this inquiry is well illustrated by Judge van Gestel's recent decision in <u>In re Sonus Networks, Inc., Derivative Litig.</u>, No. 04-0753 BLS (Mass. Super. Ct. Sept. 27, 2004) (referred to herein as "<u>Sonus</u>" and attached hereto at Tab A). As in this case, plaintiff in <u>Sonus</u> alleged that the company had issued false press releases and filed false reports regarding the company's financial statements, that the officer defendant had made false statements in the press releases and had signed the false reports and that the members of the board's Audit Committee approved the reports. <u>Id.</u> at 2. The court found that the complaint had failed to demonstrate that demand was excused because it contained only "generalized allegations reflecting poor supervision over financial statements," and "no particularized allegations as to any specific act by any particular board member individually or by the board as a whole." <u>Id.</u> at 6. <u>See also</u> <u>Seminaris v. Landa</u>, 662 A.2d 1350, 1354 (Del. Ch. 1995) (holding that allegations that directors signed misleading 10-K and misleading registration statement did not establish that directors "faced a substantial likelihood of liability").

7

Plaintiff in this case has provided no particularized allegations demonstrating that a substantial likelihood of director liability exists. The sole basis for Plaintiff's allegation that the directors knew of the alleged accounting irregularities is each director's position as an AspenTech board member. Plaintiff fails to distinguish between the individual defendants' basis of knowledge. Rather, for <u>each</u> defendant, the Complaint repeats the same conclusory allegations regarding each defendants' access to non-public information based on his or her position with AspenTech:

> Because of [his or her] position, [he or she] knew the adverse non-public information about the business of AspenTech, specifically, the Company's accounting for certain software license and service agreement transactions entered into with certain alliance partners and other customers during fiscal years 2000-2002, as well as the finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board of Directors' meetings and committees thereof and via reports and other information provided to [him or her] in connection therewith.

(Compl. ¶¶ 9-23.) And then, for <u>each</u> defendant, the Complaint concludes that he or she "participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and Securities and Exchange Commission ("SEC") filings." (<u>Id.</u>)

Generalized allegations of knowledge based only on a directors' position on the board are insufficient to excuse demand. <u>Rattner v. Bidzos</u>, No. Civ. A. 19700, 2003 WL 22284323, at *10 n.53, 11 (Del. Ch. Oct. 7, 2003) (holding that generalized allegations regarding defendants "positions within the company" was not sufficient to demonstrate knowledge of the alleged accounting irregularities). Distinguishing between the source of each directors' alleged knowledge of accounting irregularities is particularly important in this case because it appears

that five of the eight current board members were not board members at the time of the alleged wrongdoing. The Complaint alleges that AspenTech improperly recognized revenue for transactions "during fiscal years 2000-2002." (Compl. ¶ 6.) Yet, five of the eight current directors did not become board members until August 2003 or later. The Complaint provides no particularized allegations of fact as to how these five (or the other three) directors had knowledge of the alleged accounting improprieties.

As in <u>Sonus</u>, in this case there are "no particularized allegations as to any specific act by any particular board member individually or by the board as a whole." <u>Sonus</u>, at 6. As a result, Plaintiff's allegations regarding defendants' participation in the alleged wrongdoing do not excuse demand.[2] <u>In re Silicon Graphics Inc. Sec. Litig.</u>, 183 F.3d 970, 990 (9th Cir. 1999) (holding that plaintiff's "general allegation that the Board participated in the fraudulent scheme" was "insufficient" to excuse demand).

**B.      Plaintiff's Allegation That Director Evans Made One Trade Of AspenTech Stock Four Years Before The October 2004 Announcement Fails To Establish That Evans Is Not Disinterested**

Plaintiff alleges that director Evans is "interested" because in December 2000 -- almost four years before the October 2004 Announcement -- he sold stock "for proceeds of $150,000." (Compl. ¶ 95(a).)[3] But, Delaware has rejected the argument that a director is

---

[2]      Plaintiff's allegation that demand is excused because "all of the directors of AspenTech would be forced to sue themselves" (Compl. ¶ 95(l)) has been consistently rejected by the Delaware courts. <u>Decker v. Clausen</u>, Civ. A. Nos. 10,684 and 10,685, 1989 WL 133617, at *2 (Del. Ch. Nov. 6, 1989). In addition, Plaintiff's allegations that a suit by the current directors would "likely expose the Individual Defendants and AspenTech to further violations of the securities laws" (Compl. ¶ 95(o)) and would "expose their own misconduct" (<u>id.</u>, ¶ 95(q)) are only variations on the "discredited refrain - you can't expect directors to sue themselves." <u>Seminaris</u>, 662 A.2d at 1355 (internal quotations omitted).

[3]      Plaintiff's allegations that certain officers and persons who do not sit on the current board of directors sold shares of AspenTech stock (<u>see</u> Compl. ¶ 91) are irrelevant to the question of whether

(continued...)

interested "whenever a derivative plaintiff cursorily alleges that he made sales of company stock in the market at a time when he possessed material, non-public information." Guttman, 823 A.2d at 502. Rather, plaintiff must allege facts with particularity that demonstrate that the director faces "a sufficiently substantial threat of personal liability to compromise their ability to act impartially on a demand." Id. at 503.

For example, in Guttman, plaintiff brought a derivative action alleging that directors had failed to prevent accounting irregularities that caused the company to restate its financials and had illegally traded company stock with knowledge of the accounting irregularities. Id. at 493. However, "[e]ntirely absent from the complaint [were] well-pled, particularized allegations of fact detailing the precise roles that these directors played at the company, the information that would have come to their attention in those roles, and any indication as to why they would have perceived the accounting irregularities." Id. at 503. As a result, the court concluded that plaintiff could not demonstrate that demand was excused based on allegations of insider trading. Id. at 505. See also In re Sagent Tech., Inc. Derivative Litig., 278 F. Supp. 2d. 1079, 1089 (N.D. Cal. 2003) (holding that plaintiff failed to raise a reasonable doubt that director faced substantial likelihood of liability for insider trading where "complaint contains no allegations that [director] was in possession of any particular material adverse information when he sold his [company] stock"); Rattner, 2003 WL 22284323, at *11, 12 (holding that demand could not be excused based on allegations of insider trading where the complaint "alleges general knowledge in a conclusory fashion on behalf of the Director Defendants, explained solely by virtue of their service in their various capacities.").

---

[3](...continued)
demand is excused "for an obvious reason: they are not on the board." Guttman, 823 A.2d at 503 n.22.

As discussed above in Section II.A., Plaintiff in this case has failed to allege with particularity any facts which would demonstrate that Mr. Evans (or any other director) had "any idea about the questionable accounting practices." Guttman, 823 A.2d at 504. In addition, the Complaint does not "contain particularized facts providing an inference of insider trading." Id. at 503. For example, although the Complaint alleges that Mr. Evans traded in December 2000, it fails to allege what information prompted that trade (which occurred almost four years before the company announced its investigation of the transactions). In addition, although the Complaint alleges that Mr. Evans traded $150,000 of stock, it fails to allege whether this was a substantial portion of Mr. Evans' holdings or whether Mr. Evans continues to hold AspenTech stock. As a result, there is nothing suspicious about either the timing or the amount of the trade. See McCall v. Scott, 239 F.3d 808, 825 (6th Cir. 2001) (holding that although there were certain "red flags" of the company's accounting irregularities -- which there were not in this case -- plaintiff failed to connect the timing of the trades to those warnings, and therefore demand could not be excused).

## C.    Plaintiff's Allegations That The Directors Would Not Be Covered By Insurance In An Action By The Company Does Not Create a Reasonable Doubt As To Their Disinterestedness

Finally, Plaintiff contends that all of the director defendants are interested because "the directors' and officers' liability insurance policies covering the defendants in this case contain provisions that eliminate coverage for any action brought directly by AspenTech against these defendants." (Compl., ¶ 95(r).) This contention has been soundly rejected under Delaware law. For example, in Caruana v. Saligman, Civ. A. No. 11135, 1990 WL 212304, at *3 (Del. Ch. Dec. 21, 1990), plaintiff in a derivative action sought to show that demand was excused on all of the directors because the company's liability insurance would not cover "an action brought by the company against its own directors." The court concluded that plaintiff's allegations did not

11

excuse demand on the directors. <u>Id.</u> Similarly, in <u>Decker v. Clausen</u>, Civ. A. Nos. 10,684 and

10,685, 1989 WL 133617, at *2 (Del. Ch. Nov. 6, 1989), plaintiff alleged derivative causes of

action and contended that demand was excused because the company's "liability insurance would

not cover an action brought by the company against its own directors." The court rejected

plaintiff's contention as merely "variations on the 'directors suing themselves' and 'participating in

the wrongs' refrain. They provide no particularized facts creating a reasonable doubt that the

directors are disinterested or independent." <u>Id.</u>

      Just as in <u>Caruana</u> and <u>Decker</u>, this Court should reject plaintiff's unfounded

argument that a lack of liability insurance excuses demand on all of the directors.

## III.  PLAINTIFF FAILS TO ALLEGE WITH PARTICULARITY FACTS CREATING A REASONABLE DOUBT <u>THAT THE BOARD CAN RESPOND TO A DEMAND WITH INDEPENDENCE</u>

      Plaintiff contends that the directors lack independence because (1) they are

controlled by the members of the compensation committee and (2) directors Pehl and Kingsley

are business associates. Each of these contentions is without merit.

### A.  Plaintiff Fails To Establish That Directors Casey, Fusco, and Jennings Control The Other <u>Directors As Members of the Board's Compensation Committee</u>

      Plaintiff contends that directors Casey, Fusco and Jennings control the other

directors as a result of their position on the Compensation Committee, and therefore, demand on

directors Evans, Haroian, Kingsley, McArdle and Pehl is excused. (Compl. ¶ 95(b).) This

contention is without merit for two reasons.

      <u>First</u>, Plaintiff has failed to demonstrate that Messrs. Casey, Fusco or Jennings are

"interested" directors. Messrs. Casey, Fusco and Jennings' control of the remaining directors is

immaterial to the question of whether the remaining directors are independent unless Plaintiff

can demonstrate that Messrs. Casey, Fusco and Jennings are interested. <u>See</u> <u>Grobow</u>, 539 A.2d

at 189 (emphasis added). For example, in <u>Brehm v. Eisner</u>, 746 A.2d 244, 257 (Del. 2000),

plaintiffs in a derivative lawsuit alleged that a majority of the directors were beholden to the

CEO. However, the plaintiffs failed to demonstrate that the CEO was interested in the chal-

lenged transaction. <u>Id.</u> at 258. As a result, the court found that the complaint failed to demon-

strate that a majority of the board lacked independence. <u>Id.</u>

Similarly, in this case, Plaintiff fails to include any particularized allegations that

directors Casey, Fusco or Jennings (or any other director) are "interested." <u>See</u> Section II. As a

result, demand is not excused on the remaining directors. <u>See</u> <u>Sonus</u>, at 8 (holding that an

allegation that defendant directors held a position on the board's compensation committee, and

therefore purportedly controlled the remaining directors was <u>not</u> sufficient to excuse demand on

the remaining directors without particularized allegations demonstrating that the members of the

compensation committee were "interested").

<u>Second</u>, Plaintiff has failed to demonstrate that Messrs. Casey, Fusco and

Jennings "control" the remaining directors. It is well established that the mere "receipt of

directors' fees does not constitute a disqualifying interest for the purposes of the demand

requirement." <u>Langner v. Brown</u>, 913 F. Supp. 260, 266 (S.D.N.Y. 1996) (applying Delaware

law) (holding that plaintiff failed to demonstrate that demand was excused based on defendants'

receipt of directors' fees). And, there are no allegations in the complaint demonstrating that the

receipt of this compensation has made the directors "beholden" to Messrs. Casey, Fusco and

Jennings. <u>See</u> <u>id.</u> For example, there is no allegation that any of the director defendants rely on

their director compensation for their livelihood or even for a substantial portion of their income.

As a result, plaintiff has failed to demonstrate that Messrs. Casey, Fusco and Jennings control the

13

remaining director defendants. See id.; see also In re Sagent Tech., Inc., 278 F. Supp. 2d. at 1089

(holding that plaintiffs failed to raise a reasonable doubt as to directors' independence based on

compensation directors received as employee and consultant of company).[4]

### B. Plaintiff's Allegations That Directors Pehl and Kingsley Are Business Associates Does Not Establish That They Are Not Independent

Plaintiff alleges that demand on directors Pehl and Kingsley is excused because

Pehl is a director of Advent International Corporation ("Advent") and Kingsley is a managing

director of Advent. (Compl. ¶ 95(g)(i).)  However, general allegations of business and personal

ties have never been sufficient to excuse demand. Green v. Phillips, Civ. A. No. 14436, 1996

WL 342093 (Del. Ch. June 19, 1996) (rejecting plaintiff's argument that director lacked

independence due to "longstanding personal and business ties" to the beneficiary of the chal-

lenged transaction).

For example, in Kohls v. Duthie, 765 A.2d 1274, 1284 (Del. Ch. 2000), plaintiff

challenged the independence of a Special Committee reviewing a strategic transaction by arguing

that one director on the Special Committee was beholden to the company's CEO because the

CEO had once provided the director a summer job and the company had invested $5 million in a

fund where the director was the COO.  The court rejected plaintiff's contention and held that

there was nothing about the director's relationship with the CEO "to suggest that he could not

exercise independent judgment." Id.

---

[4]    In a similar vein, Plaintiff also alleges, that all outside-directors are interested as a result of their compensation for service on the board, and therefore demand is excused on directors Casey, Evans, Fusco, Haroian, Jennings, Kingsley, McArdle and Pehl. (Compl. ¶ 95(i)-(j).) Again, this contention is contrary to Delaware law and would be an exception that would swallow the rule. See Langner, 913 F. Supp. at 266.

In this case, Plaintiff has alleged only the bear fact that directors Pehl and Kohl hold positions at the same company, but has alleged no particularized facts from which to infer that there is anything about Pehl's and Kingsley's positions at Advent that would impede their independence.  In particular, Plaintiff has not allege any particularized facts demonstrating that one of these directors is beholden to the other.  As a result, the fact that directors Pehl and Kingsley hold positions at Advent does not make them interested and does not excuse demand. See id.; see also Green, 1996 WL 342093 at *5.

## IV.    PLAINTIFF HAS FAILED TO VERIFY THE COMPLAINT AND TO ALLEGE THAT HE WAS A SHAREHOLDER AT THE TIME OF THE ALLEGED WRONGDOINGS

Fed. R. Civ. P. 23.1 requires that the complaint in a derivative action "shall be verified."  The Complaint in this action is not verified by the shareholder who filed the lawsuit. Rather, it is purportedly verified by the shareholder's attorney, "because plaintiff is absent from the County of San Diego where [plaintiff's attorney] maintain[s] [his] office." (Compl. at last unnumbered page.)  Because Plaintiff himself has failed to verify the complaint, this derivative action must be dismissed. Fed. R. Civ. P. 23.1; see also In re Stratus Computer, Inc. Sec. Litig., Civ. A. 89-2075-Z, 1992 WL 73555, *10 (D. Mass. Mar. 27, 1992) (dismissing derivative case where plaintiff did not verify the complaint).

Fed. R. Civ. P. 23.1 also requires that the Plaintiff allege that he "was a share-holder or member at the time of the transaction of which the plaintiff complains."  In this case, however, Plaintiff only alleges that he "is, and was at times relevant hereto, an owner and holder of AspenTech common stock." (Compl., ¶ 7.)  Plaintiff does not allege when he actually purchased AspenTech stock.  As a result, Plaintiff has failed to comply with Fed. R. Civ. P. 23.1 and this derivative action must be dismissed.

15

## Conclusion

For the foregoing reasons, this derivative complaint should be dismissed with prejudice in its entirety.

Dated: January 7, 2005
      Boston, Massachusetts

Respectfully submitted,

Thomas J. Dougherty (BBO #132300)
Justin Daniels (BBO #656118)
Kerry Dakin (BBO #640826)
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
One Beacon Street
Boston, Massachusetts  02108
(617) 573-4800

Counsel for Aspen Technology, Inc.,
the Current Outside-Directors, the Former
Outside-Directors and Charles F. Kane

## Certificate Of Service

I, Kerry Dakin, hereby certify that on January 7, 2005, I caused a true copy of the foregoing Aspen Technology, Inc.'s, the Outside-Directors' and Charles F. Kane's Memorandum of Law In Support Of Their Motion To Dismiss to be served upon counsel of record for each party as indicated on the service list attached hereto.

Dated: January 7, 2004

Kerry Dakin

## SERVICE LIST

**BY HAND**
Mary T. Sullivan
Segal Roitman & Coleman
11 Beacon Street, Suite 500
Boston, MA  02108
(617) 742-0208

**BY FEDEX**
Brian J. Robbins
Jeffrey P. Fink
Robbins Umeda & Fink, LLP
1010 Second Avenue, Suite 2360
San Diego, CA  92101
(619) 525-3990

**Counsel for Plaintiff**

**19**

N.B.  FOR CLERK'S USE ONLY        9/27/04
JUDGMENT ENTERED ON DOCKET
PURSUANT TO MASS.R.CIV.P.58(a) AND NOTICE SENT
TO PARTIES PURSUANT TO MASS.R.CIV.P.77(d)
AS FOLLOWS:

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

COMMONWEALTH  OF  MASSACHUSETTS

SUFFOLK, ss.

                                        SUPERIOR COURT DEPARTMENT
                                        OF THE TRIAL COURT
                                        CIVIL ACTION

                                        No.  04-0753 BLS
                                        (van Gestel, J )

IN RE SONUS NETWORKS, INC.,          PLAINTIFF(S)
DERIVATIVE LITIGATION

                    v.

                                     DEFEDNANT(S)

            JUDGMENT ON MOTION TO DISMISS
           (PURSUANT TO MASS.R.CIV.P.12(b) (6) )

    THIS ACTION CAME ON TO BE HEARD ON THE MOTION OF DEFENDANT(S)_____

_____ TO DISMISS THE ACTION, AND THE

COURT,_____van Gestel,_____J., PRESIDING, HAVING ALLOWED THE    notice
                                                                         sent
SAID MOTION, IT IS HEREBY ORDERED AND ADJUDGED THAT THE ACTION BE DISMISSED,  To
AND EACH PARTY TO BEAR HIS OR ITS OWN COSTS.                              all parties
~~AND THAT DEFENDANT RECOVER COSTS.~~

    DATED AT BOSTON, MASSACHUSETTS, THIS 27th DAY OF SEPTEMBER        2004


FORM OF JUDGMENT APPROVED:

                                    MICHAEL JOSEPH DONOVAN,
                                    CLERK/MAGISTRATE

                          By: _____
                                          ASSISTANT CLERK

_____
JUSTICE OF THE SUPERIOR COURT DEPARTMENT


Form Civ.P.46 (2nd Rev.)  6-85    500

# NOTIFY

**18**

## COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.

SUPERIOR COURT
LEAD CIVIL ACTION
NO. 04-0753 BLS
(Judge van Gestel)

**Notice sent
toall parties
9/27/2004**

IN RE SONUS NETWORKS, INC.
DERIVATIVE LITIGATION[1]

**(sc)**

### MEMORANDUM AND ORDER
### ON MOTIONS TO DISMISS

This matter is before the Court on the defendants' motions pursuant to Mass. R. Civ. P.

Rule 12(b)(6) and Rule 23.1 to dismiss this consolidated action.  The grounds for the motions

are, among others, that the now-consolidated complaints do not comply with Rule 23.1 because

the plaintiffs failed to make a pre-suit demand upon the board of directors and because the

plaintiffs have failed to allege with particularity sufficient grounds to excuse their failure to make

such demand.  Additionally, the defendants move for dismissal on grounds that the complaints

fail to state a claim, and because any claims for damages are premature.

### BACKGROUND

Sonus Networks, Inc. ("Sonus") is a Delaware corporation, said to be headquartered in

Westford, Massachusetts.  Sonus is a provider of voice over IP infrastructure solutions that

enable voice services to be delivered over packet-based networks.

The plaintiffs purport to be Sonus shareholders and have brought their derivative suits

against most members of Sonus's board of directors and certain of its executive officers.  The

essence of the complaints are:  that six members of Sonus's board of directors and certain of its

---

[1] See Pre-Trial Order No. 1 consolidating <u>Tillman</u> v. <u>Ahmed, et al.</u>, Suffolk No. 04-0754
BLS with <u>Palma</u> v. <u>Ahmed, et al.</u>, Suffolk No. 04-0753 BLS and re-defining the caption of the
consolidated action as "In re Sonus Networks, Inc. Derivative Litigation."

executive officers, despite their responsibility for maintaining and establishing internal controls and ensuring that Sonus's financial statements were based on accurate financial information, permitted Sonus to issue false press releases regarding its financial statements; that the defendant Hassan Ahmed ("Ahmed"), Sonus's President and CEO, made false statements in three interviews regarding Sonus's financial condition, and he signed Sonus's allegedly incorrect financial statements; and that three of the directors, who served as members of the Sonus Audit Committee, approved the incorrect financial statements and, therefore, are direct participants in the wrongdoing. The complaints further charge that the defendant directors failed to prevent and permitted Sonus to file improper financial statements with the Securities and Exchange Commission and elsewhere. Allegedly, once the true condition of Sonus's financial situation came to light in January 2004, and thereafter, the Sonus stock price is said to have plummeted, erasing over $1 billion of the Company's market capitalization.

On February 20, 2004, the plaintiffs filed these derivative actions. The suits were not preceded by any demand, written or oral, that the board take any particular action with respect to the plaintiffs' allegations. Instead, the plaintiffs assert that any demand upon the members of the board would have been a "futile, wasteful and useless act."

Five of the seven present directors of Sonus are outside directors,[2] meaning they are not otherwise employees of Sonus. One of the outside directors, H. Brian Thompson ("Thompson"), has not been named as a defendant.[3]

---

[2] Ahmed and defendant Rubin Gruber are conceded by Sonus to be "inside directors/officers."

[3] The plaintiffs ask this Court not to consider the public filing by Sonus of Form 3 with the Securities and Exchange Commission ("S.E.C.") reflecting that Sonus's board of directors

The complaints themselves are lengthy and detailed, with allegations contained in 95 numbered paragraphs, many with subparagraphs and lengthy quotations from written materials, spread over 41 pages. The authors seem to have overlooked the dictates of Mass. R. Civ. P. Rule 8(a)(1) calling for a short and plain statement of the claim.

## DISCUSSION

Given Sonus's status as a Delaware corporation, much of the argument for and against the motions to dismiss cites to Delaware law. The law of a corporation's state of incorporation provides the circumstances under which a pre-suit demand would be futile. Kamen v. Kemper Fin. Servs., Inc., 500 U.S. 90, 95-96 (1991); Harhen v. Brown, 431 Mass. 838, 844 (2000); Bartlett v. New York, N.H., & H. R.R. Co., 221 Mass. 530, 538 (1915). Thus, this Court will begin by reciting some general principles of Delaware law that apply here.

The focus, principally, is on the issue of the absence and alleged futility of making a pre-suit demand on the Sonus board of directors.

> A cardinal precept of the General Corporation Law of the State of Delaware is that directors, rather than shareholders, manage the business and affairs of the corporation. . . . The existence and exercise of this power carries with it certain fundamental fiduciary obligations to the corporation and its shareholders. . . . Moreover, a stockholder is not powerless to challenge director action which results in harm to the corporation. The machinery of corporate democracy and the derivative suit are potent tools to redress the conduct of a torpid or unfaithful management. The derivative action developed in equity to enable shareholders to sue in the corporation's name where those in control of the

---

[cont.] has seven members. The Court declines to cast a blind eye to this established fact. The plaintiffs' request is unusual, to say the least, given that this is a situation presenting the determination of whether pre-suit demand on the directors should be excused. Should the Court not be told how many directors there are? And, if so, why do the plaintiffs themselves, in the very first sentence of the Statement of Facts portion of their opposition, state: "The Complaint names an overwhelming majority – six out of seven – of the members of the Board of Directors as defendants. . . ?" Is the Court not entitled to know that there are seven?

3

company refused to assert a claim belonging to it. The nature of the action is two-fold. First, it is the equivalent of a suit by the shareholders to compel the corporation to sue. Second, it is a suit by the corporation, asserted by the shareholders on its behalf, against those liable to it.

By its very nature the derivative action impinges on the managerial freedom of directors. Hence, the demand requirement of Chancery Rule 23.1 exists at the threshold, first to insure that a stockholder exhausts his intracorporate remedies, and then to provide a safeguard against strike suits. Thus, by promoting this form of alternate dispute resolution, rather than immediate recourse to litigation, the demand requirement is a recognition of the fundamental precept that directors manage the business and affairs of corporations.

Aronson v. Lewis, 473 A.2d 805, 811-812 (Del. Supr. 1984). See also Brehm v. Eisner, 746 A.2d 244, 253 (Del. Supr. 2000).

Whatever the underlying allegations, if a derivative plaintiff fails to carry the burden of demonstrating that demand should be excused, the complaint must be dismissed. Kaufman v. Belmont, 479 A.2d 282, 286 (Del. Ch. 1984).

If a plaintiff does not actually make demand prior to filing suit, he or she "must set forth . . . particularized factual statements that are essential to the claim." Brehm, supra, 746 A.2d at 254. The pleading requirements of Rule 23.1 are "an exception to the general notice pleading standard" and "more onerous than that required to withstand a Rule 12(b)(6) motion to dismiss." Levine v. Smith, 591 A.2d 194, 207, 210 (Del. Supr. 1991).

The plaintiff is required to plead with particularity that "reasonable doubt" exists either that: (1) a majority of the board is disinterested and independent; or (2) that the challenged transaction was a valid exercise of business judgment. Aronson, supra, 473 A.2d at 814; Rales v. Blasband, 634 A.2d 927, 933 (Del. Supr. 1993). Thus, in determining demand futility, the Court "must make two inquiries, one into the independence and disinterestedness of the directors and

the other into the substantive nature of the challenged transaction and the board's approval

thereof." Id.

> To satisfy [the] requirement [of alleging with particularity the reasons for the plaintiff's failure to demand action from the board], the "stockholder plaintiff[] must overcome the powerful presumptions of the business judgment rule" by alleging sufficient particularized facts to support an inference that demand is excused because the board is "incapable of exercising its power and authority to pursue the derivative claims directly." In Aronson v. Lewis, we held that a demand on the board is excused only if the complaint contains particularized factual allegations raising a reasonable doubt that either: (1) "the directors are disinterested and independent" or "(2) the challenged transaction was otherwise the product of a valid exercise of business judgment."

White v. Panic, 783 A.2d 543, 551 (Del. Supr. 2001).

> However, the mere threat of personal liability for approving a questioned transaction, standing alone, is insufficient to challenge either the independence or disinterestedness of directors, although in rare cases a transaction may be so egregious on its face that board approval cannot meet the test of business judgment, and a substantial likelihood of director liability therefore exists.

Aronson, supra, 473 A.2d at 815.

"The question of independence flows from an analysis of the factual allegations

pertaining to the influences upon the directors' performance of their duties generally, and more

specifically in respect to the challenged transaction." Pogostin v. Rice, 480 A.2d 619, 624 (Del.

Supr. 1984).

The Court looks then at the question of whether a reasonable doubt is created that the

challenged transactions were other than the product of valid exercises of business judgment.

The challenged transactions relate to: (1) Sonus's maintaining and establishing internal

controls to ensure that Sonus's financial statements were based on accurate financial information;

Sonus's issuance of press releases regarding its financial statements; the defendant Ahmed's

statements, in three interviews, regarding Sonus's financial condition, and his signing of Sonus's allegedly incorrect financial statements; the fact that three of the directors, who served as members of the Sonus Audit Committee, approved the financial statements; and the fact that the defendant directors failed to prevent and permitted Sonus to file improper financial statements with the S.E.C. and elsewhere.

> "[There] is a very large – though not insurmountable – burden on stockholders who believe they should pursue the remedy of a derivative suit instead of selling their stock or seeking to reform or oust these directors from office.
>
> Delaware has pleading rules and an extensive judicial gloss on those rules that must be met in order for a stockholder to pursue a derivative remedy. Sound policy supports these rules, as we have noted. This Complaint, which is a blunderbuss of a mostly conclusory pleading, does not meet that burden, and it was properly dismissed.

Brehm, supra, 746 A.2d at 267.

What is challenged in the complaint are not specific actions by the board, but rather generalized allegations reflecting poor supervision over financial statements, particularly with regard to the controls over how they were prepared and the publication thereof to the S.E.C. and the investing public. There are no particularized allegations as to any specific act by any particular board member individually or by the board as a whole. See Rales, supra, 634 A.2d. at 933.

Thus, here, a reading of the complaints, however lengthy, cannot be said to provide to the Court – and it is the Court, not the plaintiffs, that must harbor this doubt – a "reasonable doubt" that any activities by the directors, individually or as a group, were other than the product of valid

exercises of business judgment.[4]

The Court next turns to the issue of the disinterestedness and independence of the board members. A presumption of propriety must be the starting point in the absence of clear allegations to the contrary. Aronson, supra, 473 A.2d. at 812, 815. See also Grimes v. Donald, 673 A.2d 1207, 1216 (Del. 1996).

As noted above, the Sonus board has seven members, five outside directors and Ahmed and Gruber. One of the outside directors, Thompson, has not been named as a defendant.[5] Consequently, he must be deemed disinterested without further discussion. The Court will, therefore, consider the status of the pleadings relating to the remaining four outside directors: Edward T. Anderson ("Anderson"), Paul J. Ferri ("Ferri"), Albert A. Notini ("Notini") and Paul J. Severino ("Severino").

It is alleged that Anderson sold certain Sonus stock, allegedly at a significant profit and on insider information. The details, however, are scant. "[T]he mere fact that stocks were traded by . . . [a] director does not establish a breach of the duty of loyalty." McCall v. Scott, 239 F.3d 808, 825 (6th Cir. 2001); Shaw v. Digital Equipment Corp., 82 F.3d 1194, 1224 (1st Cir. 1996).

Further, according to Form 4 filed with the S.E.C. on July 22, 2003, Anderson's stock

---

[4] If the test was whether "there is a reasonable inference that the business judgment rule is not applicable," [emphasis added], as applied below in Aronson by the Vice Chancellor, this Court might well reach a different conclusion. But the Vice Chancellor was specifically overruled on that issue by the Delaware Supreme Court. See Aronson, supra, 473 A.2d at 814.

[5] The complaints were each filed on February 20, 2004, and the defendants' motions to dismiss revealing Thompson's existence as a director were served on March 22, 2004. The plaintiffs' have yet, however, to take any steps to add Thompson as a party. Apparently, they prefer to have this Court decide the present motions and thereafter seek leave to amend their complaints. That is not the order of preference for this Court. The complaints will live or die as written when the arguments were presented to the Court.

sale occurred on July 18, 2003, and was stock "held in trust for the benefit of his family and minor children," not shares personally held by him. This sale was over six months before the January 2004 announcement of Sonus's financial reporting problems. And the complaints contain no particularized allegations of facts that would demonstrate any impropriety with Anderson's stock sale. Consequently, this Court cannot, on this charge, conclude that Anderson lacks the independence necessary, or is too interested, to be considered other than a disinterested and independent director of Sonus.

As to all of the directors, there is an absence of specific or particularized allegations regarding how they would have been put on notice of any accounting problems or improprieties. Thus, again, this is no basis for excusing a demand. See, e.g., Guttman v. Huang, 823 A.2d 492, 498 (Del. Ch. 2003).

There are allegations that Ferri and Severino, by virtue of their positions on Sonus's Compensation Committee, exert control over fellow board members. Again, however, there are no particularized allegations of any interest on the part of these allegedly controlling directors that would render them less than disinterested and independent. See Brehm, supra, 746 A.2d at 258. See also White v. Panic, 793 A.2d 356, 366 (Del. Ch. 2000); Langner v. Brown, 913 F. Supp. 260, 266 (S.D.N.Y. 1996).

Again there are some allegations about different business relationships shared among or between some of the directors. Directors are not, however, interested or lacking in independence merely because they share outside professional associations or relationships. Kohls v. Duthie, 765 A.2d 1274, 1284 (Del. Ch. 2000); Green v. Phillpis, C.A. No. 14436, 1996 WL 342093, at *5 (Del. Ch. June 19, 1996). "There is nothing sinister or corrupt in the single fact of association

8

or affiliation in financial matters. There must be some further fact before there is anything wrong about it." <u>Bartlett, supra,</u> 221 Mass. at 537. No reasonable doubts are raised by the relationships alleged here.

Lastly, the conclusory allegations about generalized misconduct establishing personal liability and those about insurance coverage are insufficient to excuse the demand requirement. See <u>Seminaris</u> v. <u>Landa,</u> 662 A.2d 1350, 1354 (Del. Ch. 1995); <u>Rales, supra,</u> 634 A.2d at 936; <u>Kaufman, supra,</u> 479 A.2d at 287; <u>Aronson, supra,</u> 473 A.2d at 817-818. "Demand is not excused simply because plaintiff has chosen to sue all directors. . . . To hold otherwise would permit plaintiffs to subvert the particularity requirements of Rule 23.1 simply be designating all directors as targets." <u>Grimes, supra,</u> 673 A.2d at 1216 n.8.

Demand has not been shown to be excused in these cases.

The Court does not assess in any way the other contentions by the defendants in support of their motions to dismiss.

As a result of the foregoing analysis of Delaware law and a review of the complaints, this Court concludes that the complaints must be dismissed. Further, the Court accepts the Delaware Supreme Court's reasoning that such dismissal ought to be without leave to further amend. See <u>White, supra,</u> 783 A.2d at 555.

9

## ORDER

For the foregoing reasons, the Defendants' Motions to Dismiss the Complaint, as amended, (Paper #11 in case No. 04-0753 BLS and Paper #13 in case No. 04-0754 BLS) are <u>ALLOWED</u>, without leave to amend.  Final judgment shall enter accordingly, dismissing the cases, with each party to bear his or its own costs.

Allan van Gestel
Justice of the Superior Court

DATED:    September 27, 2004

10

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CLERK'S NOTICE

This document can not be scanned due to its size, or the way in which it was bound.

The original is available for viewing in the Clerk's Office.