UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| GARY CAVINESS, Derivatively On Behalf of ASPEN TECHNOLOGY INC., | ) | Civil Action No. 04 12524 JLT |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| LAWRENCE B. EVANS, LISA W. ZAPPALA, DAVID L. MCQUILLIN, CHARLES F. KANE, STEPHEN M. JENNINGS, JOAN C. MCARDLE, MICHAEL PEHL, DOUGLAS A. KINGSLEY, GARY E. HAROIAN, MARK FUSCO, DONALD P. CASEY, STEPHEN L. BROWN, JOSEPH F. BOSTON, DOUGLAS R. BROWN and GRESHAM T. BREBACH, | ) ) ) ) ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| - and - | ) | |
| | ) | |
| ASPEN TECHNOLOGY INC., a Delaware corporation, | ) | |
| | ) | |
| | ) | |
| | ) | |
| Nominal Defendant. | ) | Filed: May 6, 2005 |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HIS RESPONSE AND OBJECTION TO DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 23.1 AND 12(B)(6)**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................................... ii

I.    INTRODUCTION ............................................................................................... 1

II.   FACTUAL ALLEGATIONS ............................................................................. .2

III.  LEGAL STANDARDS……………………………………………………………5

      A.    Legal Standards Applicable to a Motion to Dismiss Analysis………………………5

      B.    Legal Standards Applicable for Evaluating Demand Futility………………………6

            1.    The Reasonable Doubt Standard……………………………………..……8

IV.   ARGUMENT…………………………………………………………………………9

      A.    Plaintiff Has Alleged Facts Sufficient to Demonstrate Demand Futility………..…...9

            1.    Plaintiff's Particular Allegations Have Raised a Reason to Doubt the Disinterest of One-Half of the Board…………………………………10

                  (a)    There Is a Reasonable Doubt that Audit Committee Defendants Fusco, Haroian and McArdle Lack Disinterest Because They Face a Substantial Likelihood of Liability…………………………10

            2.    Plaintiff Raises a Reasonable Doubt as to Defendant Evans' Independence………………………………………………………...16

            3.    Plaintiff Has Alleged with Particularity that There Is Reason to Doubt the Independence of Defendants Evans, Pehl and Kingsley…………..…17

V.    CONCLUSION……………………………………………………………………..20

## TABLE OF AUTHORITIES

**Cases**

*Aronson v. Lewis*,
  473 A.2d 805 (Del.1984), *overruled in part on other grounds sub nom.,*
  *Brehm v. Eisner*, 746 A.2d 244 (Del. 2000) ................................................................. passim

*Bartlett v. N.Y., N. H. & H. R .R. Co.*,
  109 N.E. 452 (Mass. 1915) ...................................................................................... 7

*Beam ex rel. Martha Stewart Omnimedia, Inc. v. Stewart*,
  845 A.2d 1040 (Del. 2004) ...................................................................................... passim

*Beneville v. York*,
  769 A.2d 80 (Del. Ch. 2000) ............................................................................... 10, 11

*Biondi v. Scrushy*,
  820 A.2d 1148 (Del. Ch. 2003) ................................................................................ 22

*Canal Capital Corp. by Klein v. French*,
  No. 11,764, 1992 WL 159008  (Del. Ch. July, 2, 1992) .......................................... 18

*Cede v. Technicolor, Inc.*,
  634 A.2d 345 (Del. 1993) .................................................................................... 12, 18

*Charles v. City of Boston*,
  No. 04-10986-NG, 2005 WL 705227 (D. Mass. March 29, 2005) ............................ 6

*Conley v. Gibson*,
  355 U.S. 41 (1957) ...................................................................................................... 5

*Cooperman v. Individual, Inc.*,
  171 F.3d 43, 46 (1st Cir. 1999) .......................................................................... 5, 15

*Decker v. Clausen*,
  No. 10,684, 1989 WL 133617 (Del. Ch. Nov 6, 1989) ...................................... 11, 12

*Espinosa v. Sisters of Providence Health Sys.*,
  227 F.R.D. 24 (D. Mass. 2005) ................................................................................ 23

*Fink v. Komansky*,
  No. 03CV0388, 2004 WL 2813166 (S.D.N.Y. Dec. 8, 2004) ................................... 15

*Grimes v. Donald*,
  673 A.2d 1207 (Del. 1996), *overruled in part on other grounds sub nom.,*
  *Brehm*, 746 A.2d 244 ......................................................................................... 9, 10

*Grobow v. Perot*,

539 A.2d 180 (Del. 1988), *overruled in part on other grounds sub nom., Brehm*, 746 A.2d 244 ................................................................................................. 8, 10

*Guttman v. Huang*, 823 A.2d 492 (Del. Ch. 2003) ................................................................. 18

*Harris v. Carter*, 582 A.2d 222 (Del. Ch. 1990) ................................................................. 9, 11

*In re Abbott Labs. Derivative S'holders Litig.*, 325 F.3d 795 (7th Cir. 2003) ................................................................. 8, 17

*In re Caremark Int'l Derivative Litig.*, 698 A.2d 959 (Del. Ch. 1996) ................................................................. 17

*In re Cendant Corp. Derivative Action Litig.*, 189 F.R.D. 117 (D.N.J. 1999) ................................................................. 9

*In re Cooper Co., Inc.*, No. 12584, 2000 WL 1664167 (Del. Ch. Oct. 31, 2000) ................................ 19

*In re eBay, Inc. S'holders Litig.*, No. 19988-NC, 2004 WL 253521 (Del. Ch. Jan. 23, 2004) ................. 21

*In re Lernout & Hauspie Sec. Litig.*, 286 B.R. 33 (D. Mass. 2002) ................................................................. 13

*In re Oracle Corp. Deriv. Litig.*, 824 A.2d 917 (Del Ch. 2003) ................................................................. 20

*In re Oxford Health Plans, Inc., Sec. Litig.*, 192 F.R.D. 111 (S.D.N.Y. 2000) ................................................................. 16, 17

*In re Ply Gem Indus., Inc. S'holders Litig.*, No. 15779-NC, 2001 WL 1192206 (Del. Ch. Oct. 3, 2001) ................. 22

*In re Polymedica Corp.*, No. 01-3446, 2002 WL 1809095 (Mass. July 16, 2002) ......................... 7

*In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970 (9th Cir. 1999) ................................................................. 13

*In re SonusNetworks, Inc., Derivative Litig.*, N. 04-0753 BLS (Mass. Super. Ct. Sept. 27, 2004) ............................. 15

*In re Walt Disney Co. Derivative Litig.*, 825 A.2d 275 (Del. Ch. 2003) ................................................................. 18

*In re Xcel Energy, Inc.*,
   222 F.R.D. 603 (D. Minn. 2004) ........................................................................... 15

*Int'l Equity Capital Growth Fund, L.P. v. Clegg*,
   No. 14995, 1997 WL 208955 (Del. Ch. Apr. 22, 1997) .................................... 20, 22

*Jacobs v. Yang*,
   No. 206-N, 2004 WL 1728521 (Del. Ch. Aug 2, 2004) ........................................ 21

*Jenkins v. McKeithen*,
   395 U.S. 411 (1969) .................................................................................................. 5

*Kamen v. Kemper Fin. Servs., Inc.*,
   500 U.S. 90 (1991) .................................................................................................... 6

*Katz v. Chevron Corp.*,
   22 Cal. App. 4th 1352 (1994) ............................................................................... 18

*Levine v. Smith,*
   591 A.2d 194 (Del. 1991) ......................................................................................... 9

*McCall v. Scott*,
   239 F.3d 808 (6th Cir. 2001) ................................................................................ 11

*Medina-Claudio v. Rodriguez-Mateo,*
   292 F.3d 31 (1st Cir. 2002) ..................................................................................... 5

*Mitzner v. Hastings*,
   No. C 04-3310 FMS, 2005 WL 88966 (N.D. Cal. Jan. 14, 2005) ......................... 18

*Mizel v. Connelly*,
   No. 16638, 1999 WL 550369 (Del. Ch. July 22, 1999) ........................................ 19

*Orman v. Cullman*,
   794 A.2d 5 (Del. Ch. 2002) ................................................................................... 12

*Parfi Holding AB v. Mirror Image Internet, Inc.*,
   794 A.2d 1211 (Del. Ch. 2001), *rev'd*, 817 A.2d 149 (Del. 2002). ..................... 21

*Rales v. Blasband,*
   634 A.2d 927  (Del. 1993) .............................................................................. passim

*Rattner v. Bidzos*,
   No. 19700, 2003 WL 22284323 (Del. Ch. Oct. 7, 2003) ...................................... 15

*Rodi v. S. New England Sch.of Law*,
   389 F.3d 5 (Mass. 2004) ........................................................................................... 6

*Seminaris v. Landa*,
    662 A.2d 1350 (Del. Ch. 1995)................................................................. 8, 9, 13, 14

*Spector v. Sidhu*,
    No. 3:03-CV-0841-H, 2004 WL 350682 (N.D. Tex. Jan. 26, 2004)........................................ 21

*Swierkiewicz v. Sorema N. A.*,
    534 U.S. 506 (2002).......................................................................... 6

*Telxon Corp. v. Meyerson*,
    802 A.2d 257 (Del. 2002) .................................................................... 20

*Watterson v. Page*,
    987 F.2d 1 (1st Cir. 1993)................................................................... 5, 15

**Statutes**

Fed. Rule Civ. P.
    8(a) ...................................................................................... 6
    8(a)(2)................................................................................... 6
    12(b)(6).............................................................................. 1, 5, 6
    15(a) .................................................................................... 23
    23.1 .................................................................................... i, 6

**Other Authorities**

A. Gilchrest Sparks, III, et. al.,
    *Trends in the Delaware Law: Director Liability and Indemnification*, 1405 PLI/Corp. 331
    (Jan. 14, 2004) ........................................................................... 7

Louis F. Herzeca & Ruke Ku,
    *Directors Take a Active Role, Courts and Regulators Heightening Scrutiny of Board
    Independence, Oversight,* 230 N.Y.L.J. 9 (Sept. 29, 2003) ....................................... 7

Renee M. Jones,
    *Rethinking Corporate Federalism in the Era of Corporate Reform*, 29 J. Corp. L. 625 (Spring
    2004) .................................................................................... 7

Plaintiff Gary Caviness ("plaintiff"), a shareholder of Aspen Technology, Inc. ("Aspen Tech" or the "Company") at times relevant hereto, responds and objects to Aspen Tech's Current Outside-Directors and Former Outside-Directors' (collectively, the "defendants") Motion to Dismiss the Amended Complaint Pursuant to Fed. R. Civ. P. 23.1 and 12(b)(6) ("Motion").

## I.    INTRODUCTION[1]

Defendants argue that this action must be dismissed because plaintiff has not particularly alleged the futility of demand upon AspenTech's Board of Directors (the "Board") pursuant to Fed. R. Civ. P. 23.1. Defendants are wrong.  Plaintiff has alleged with sufficient particularity facts raising a reasonable doubt that the Board of AspenTech is capable of objectively and impartially determining whether to sue one another and the remaining Individual Defendants[2] because the Board members lack disinterest and/or independence and face a substantial likelihood of liability, especially in light of the fact that: (1) the Company restated its financial results for FY:00-FY:04; and (2), publicly acknowledged that AspenTech had material weaknesses in its internal controls. Accordingly, demand is futile and the defendants' Motion must be denied.

## II.    FACTUAL ALLEGATIONS

On March 15, 2005, the defendants caused AspenTech, a developer and marketer of integrated software and services to companies in the process industries, ¶5[3], to announce the completion of an investigation by the Company's Audit Committee and resulting restatement of its financial results for FY:00-FY:04 arising, in part, out of improper recognition of software license

---

[1] Although plaintiff's Verified Amended Shareholder Derivative Complaint ("Complaint") was verified by his counsel, plaintiff submits his original verification which was inadvertently absent from his Complaint.

[2] "Individual Defendants" are Lawrence B. Evans ("Evans"), Lisa W. Zappala ("Zappala"), David L. McQuillin ("McQuillin"), Charles F. Kane ("Kane"), Stephen M. Jennings ("Jennings"), Joan C. McArdle ("McArdle"), Michael Pehl ("Pehl"), Douglas A. Kingsley ("Kingsley"), Gary E. Haroian ("Haroian"), Mark Fusco ("Fusco"), Donald P. Casey ("Casey"), Stephen L. Brown ("Brown"), Joseph F. Boston ("Boston"), Douglas R. Brown ("Brown") and Gresham T. Brebach ("Brebach").

revenue. ¶¶8, 64, 118-119. The defendants not only publicly admitted that the Company's financial results were unreliable for FY:00-FY:04, but they also stated that Deloitte & Touche LLP had found "material weaknesses" in AspenTech's internal controls. ¶¶121-122. As a result of these disclosures, AspenTech stock fell precipitously and the Company experienced $11 billion in damages to its market capitalization. ¶123.

During the Relevant Period,[4] but prior to the Company's revelation that it needed to restate the past five years of its financial statements, the defendants issued numerous public statements and filed quarterly reports with the Securities and Exchange Commission ("SEC"), which described and evidenced the Company's purported growth and improving financial results. ¶¶66-67, 71-105. Unbeknownst to the public, however, these public statements and SEC filings were false and misleading because they failed to disclose and misrepresented that: (i) the Company had improperly and prematurely recognized revenue for certain software license and service agreement transactions entered into with certain alliance partners and other customers during FY:00-FY:04; (ii) the Company lacked adequate internal controls and was therefore unable to ascertain its true financial condition; and (iii) as a result of the foregoing, the values of the Company's revenues, earnings, assets and/or liabilities for FY:00-FY:04 were materially overstated and/or understated and the corresponding financial statements had to be restated. ¶¶6, 106. These false and misleading statements caused AspenTech's stock price to artificially rise, allowing the Individual Defendants to: (i) use AspenTech's overvalued shares as partial consideration to acquire ICARUS for $24.5 million in a combination of cash and stock; (ii) complete a private placement of its common stock for gross proceeds of approximately $30 million; (iii) complete a private placement of its common stock for

---

[3] All paragraph (¶__ or ¶¶__) references are to plaintiff's Verified Amended Shareholder Derivative Complaint ("Complaint") filed on March 30, 2005.

[4] "Relevant Period" is July 1, 1999 through present. ¶1.

gross proceeds of approximately $50 million and used those proceeds to acquire Hyprotech[5]; (iv) record license revenue that enabled the Company to sign a definitive agreement for $100 million in private equity financing on favorable terms; and (v) improperly sell nearly $13 million of their own AspenTech stock while in possession of material, adverse non-public knowledge during the Relevant Period. ¶64.

On October 27, 2004, the defendants caused the Company to issue a press release announcing the commencement of an investigation by the Board's Audit Committee into the Company's accounting for software license and service agreement transactions entered into during FY:00-FY:02. ¶¶7, 58, 107. The Audit Committee's investigation was subsequently expanded to include certain transactions occurring in FY:99 and FY:03-FY:04. ¶¶7, 62, 118. The investigation revealed, in part, improper accounting of software license revenue to resellers which should have been recorded on a consignment basis, resulting in a deferral of license revenues, instead of up front prior to resale to end users, as well as improper timing of reductions in software license revenues. ¶¶7, 62, 117, 119. The very next day, AspenTech stock fell to an intraday low of $5.50 per share, or approximately 20%, before closing at $6.68 per share, on unusually heavy trading volume. ¶¶59, 108.

On October 29, 2004, the defendants stunned the public with an announcement that federal prosecutors launched a probe into the Company's accounting practices during FY:00-FY:02, and also that the Company received a subpoena from the U.S. Attorney's Office for the Southern District of New York requesting documents relating to transactions that it entered into during FY:00-FY:02, as

---

[5] In August 2003, the Federal Trade Commission ("FTC") announced it had filed charges against AspenTech for anticompetitive activities in connection with its acquisition of Hyprotech in May 2002. ¶66 n.1. A Final Decision and Order was issued by the FTC on December 20, 2004, ordering AspenTech to divest itself of all software assets acquired from Hyprotech. *Id.* On December 23, 2004, the Individual Defendants caused the Company to issue a press release announcing a settlement and agreement with Honeywell, the acquirer of AspenTech's intellectual property of Hyprotech. *Id.* AspenTech's legal battles with FTC resulted in a cumulative loss of $64.6 million in restructuring and legal costs for FY:04 and FY:03. *Id.*

well as certain documents dating from January 1, 1999. ¶¶60, 109. Once again, upon public disclosure of these additional investigations, AspenTech stock fell an additional $0.67, or approximately 10%, to close at $6.01 on October 29, 2004 on unusually heavy trading volume. ¶¶61, 110.

In November 2004, the defendants disclosed further damaging news. For example, on November 18, 2004, the defendants caused AspenTech to reveal that it had received notice from the NASDAQ of its delisting of AspenTech stock as a result of the Company's failure to file its 1Q:04 Form 10-Q. ¶¶111-112. Further, on November 24, 2004, the defendants caused AspenTech to announce that it would need to "restate results for the fiscal years ended June 2000 through June 2004 after its audit committee discovered the company improperly accounted for certain software licenses." ¶113. The defendants stated that the Audit Committee "identified five relevant transactions it said took place in 2000 and 2001, and range in revenue from $800,000 to $4.3 million. As a result of the accounting treatment used, revenue was overstated for fiscal 2000 and 2001, and understated for fiscal 2002, 2003 and 2004." *Id.*

On January 31, 2005, the Individual Defendants caused AspenTech to issue a press release announcing the substantial completion of the Audit Committee's investigation. ¶¶63, 131. The Company also revealed that there were sixteen separate transactions that were accounted for improperly, totaling approximately $18.5 million in improper revenue recognition. ¶¶63, 117. Then, on March 15, 2005, the defendants announced the completion of the investigation and the Company's filing of a restated Annual Report on Form 10-K/A for FY:04 and restated financial statements for FY:00-FY:04 and Form 10-Qs for 1Q:05 and 2Q:05, which reiterated the investigation's findings and corresponding restatements. ¶¶8, 64, 118-119.

## III.    LEGAL STANDARDS

### A.    Legal Standards Applicable to a Motion to Dismiss Analysis

A motion to dismiss for failure to state a claim upon which relief can be granted pursuant to

4

Fed. R. Civ. P. 12(b)(6) will only be granted if, based solely on the pleadings, "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *accord Medina-Claudio v. Rodriguez-Mateo*, 292 F.3d 31, 34 (1st Cir. 2002). Dismissal under Rule 12(b)(6) is only appropriate if the complaint, so viewed, presents no set of facts justifying recovery. *Cooperman v. Individual, Inc.,* 171 F.3d 43, 46 (1st Cir. 1999). In ruling on a motion to dismiss for failure to state a claim upon which relief can be granted, a complaint is construed in a light most favorable to plaintiffs and their allegations are taken as true. *Jenkins v. McKeithen*, 395 U.S. 411, 421-22 (1969) (factual allegations, once pled, must be accepted as true); *Cooperman*, 171 F.3d at 46 (a court must accept the plaintiff's sufficiently plead facts as true and grant all reasonable inferences in the plaintiff's favor); *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993) (a court must take well-pled factual allegations in the complaint as true and must make all reasonable inferences in favor of the plaintiff).[6] In this matter, the Complaint clearly satisfies these standards and sets forth many claims upon which relief can be granted.

Moreover, the liberal pleading requirements of Rule 8(a) demand only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Charles v. City of Boston*, No. 04-10986-NG, 2005 WL 705227, *4 (D. Mass. March 29, 2005). *See also Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 513 (2002) ("Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions."). Contrary to the defendants' broad-brush attacks, when all factual allegations are taken as true, with all reasonable inferences drawn in plaintiff's favor, it is clear that the Complaint states legally sufficient claims against the defendants.

### B.     Legal Standards Applicable for Evaluating Demand Futility

---

[6] Moreover, for purposes of a motion to dismiss, the court may only consider documents outside the complaint without converting the motion to dismiss into a motion for summary judgment only if they are referred to in the plaintiffs' complaint. *Rodi v. S. New England Sch.of Law*, 389 F.3d 5, 12 (Mass. 2004) (providing that when "'matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56.'")

Aspen is headquartered in Massachusetts but is incorporated in Delaware. Therefore, the parties agree that Delaware law governs the Court's demand futility analysis. Memorandum of Law in Support of Their Motion to Dismiss the Amended Complaint Pursuant to Fed. R. Civ. P. 23.1 and 12(b)(6) ("Defs.' Mem.") at 2 n.1. *See*, *e.g.*, *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90 (1991); *Bartlett v. N.Y., N. H. & H. R .R. Co.*, 109 N.E. 452, 456 (Mass. 1915) ("It is not a technical rule of pleading, but one of substantive right."); *In re Polymedica Corp.*, No. 01-3446, 2002 WL 1809095 (Mass. July 16, 2002).[7]

Plaintiff may establish demand futility in one of two ways. The landmark case of *Aronson v. Lewis*, established the standard for assessing demand futility when a board **decision** is at issue in a shareholder derivative action. 473 A.2d 805 (Del.1984), *overruled in part on other grounds sub nom., Brehm v. Eisner*, 746 A.2d 244 (Del. 2000). Under *Aronson*, pre-suit demand is excused where, under the facts alleged, a reasonable doubt is created that: (1) "the directors are disinterested and independent" or (2) "the challenged transaction was otherwise the product of a valid exercise of business judgment." 473 A.2d at 814; *Seminaris v. Landa*, 662 A.2d 1350, 1353-54 (Del. Ch. 1995) ("The familiar two step *Aronson* test applies to derivative claims that attack a business judgment of the board."). "If a derivative plaintiff can demonstrate a reasonable doubt as to the first or second prong of the Aronson test, then he has demonstrated that demand would have been futile."

---

[7] "[R]ecent Delaware decisions suggest a trend toward stricter judicial scrutiny of director decision-making." Renee M. Jones, *Rethinking Corporate Federalism in the Era of Corporate Reform*, 29 J. Corp. L. 625, 645 (Spring 2004). "Delaware's most recent corporate decisions depart dramatically from the tradition of management deference that preceded Enron." *Id.* at 654. "Since Enron, Delaware law has taken a decidedly tougher stance with respect to director protections." A. Gilchrest Sparks, III, et. al., *Trends in the Delaware Law: Director Liability and Indemnification*, 1405 PLI/Corp. 331, 333 (Jan. 14, 2004). "Recent case law has tightened the definition of 'independent' and expanded the concept of 'good faith.'" *Id.* "Recent judicial decisions ... indicate that the traditional safeguards of the business judgment rule, and charter provisions that eliminate personal liability for duty of care violations, will not protect directors that intentionally disregard their duties." Louis F. Herzeca & Ruke Ku, *Directors Take a Active Role, Courts and Regulators Heightening Scrutiny of Board Independence, Oversight,* 230 N.Y.L.J. 9 (Sept. 29, 2003).

*Seminaris*, 662 A.2d at 1354. Importantly, the test is disjunctive. *Grobow v. Perot*, 539 A.2d 180, 188-89 (Del. 1988), *overruled in part on other grounds sub nom., Brehm*, 746 A.2d 244 (demand excused where allegations raise reasonable doubt as to either Aronson prong).

The second way to establish demand futility involves only the first prong of the *Aronson* test and is known as the *Rales* test. *Seminaris*, 662 A.2d at 1354. The *Rales* test is applicable to this Court's analysis as it applies when a plaintiff does not challenge a board decision, but rather challenges more general board action or lack of action.[8] *Rales v. Blasband*, 634 A.2d 927, 930 (Del. 1993) (where the complaint did not challenge a decision of the board of directors, demand was excused because the plaintiff could show that a majority of the directors were neither disinterested nor independent). Under *Rales*,

> a court must determine whether or not the particularized factual allegations of a derivative stockholder complaint create a ***reasonable doubt*** that, as of the time the complaint is filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand. If the derivative plaintiff satisfies this burden, then demand will be excused as futile.

*Rales*, 634 A.2d at 934.[9] *Harris v. Carter*, 582 A.2d 222 (Del. Ch. 1990); *In re Cendant Corp. Derivative Action Litig.*, 189 F.R.D. 117 (D.N.J. 1999).

### 1.    The Reasonable Doubt Standard[10]

---

[8] Plaintiff alleges that the members of the Audit Committee during the Relevant Period, and even the non-Audit Committee Director Defendants, knew or should have known that AspenTech had inadequate internal controls, but nonetheless pursued a common course of conduct that caused AspenTech to overstate revenue and issue false and misleading public statements as to its financial results. Where directors are aware of known violations, because, for instance, they are members of the Audit Committee, and "chose" not to address the violations, defendants cannot claim "unconsidered" inaction. *In re Abbott Labs. Derivative S'holders Litig.*, 325 F.3d 795, 806 (7th Cir. 2003).

[9] Here, as throughout, all citations are deemed omitted and all emphasis is deemed added unless otherwise stated.

[10] Although a plaintiff is held to a particularized standard of pleading, plaintiff need not plead evidence. *Levine v. Smith,* 591 A.2d 194, 207 (Del. 1991). Instead, the factual allegations of the complaint must be accepted as true and need only raise a "reasonable doubt" as to the directors'

A "reasonable doubt" standard applies to both the two-pronged *Aronson* test and the one-pronged *Rales* analysis. *Seminaris*, 662 A.2d at 1354; *Rales*, 634 A.2d at 934. The term "reasonable doubt" can be said to mean "reason to doubt" that the board is capable of making an independent decision. *Grimes v. Donald*, 673 A.2d 1207, 1217 (Del. 1996), *overruled in part on other grounds sub nom., Brehm*, 746 A.2d 244. In fact, in *Rales*, the Delaware Supreme Court expressly rejected a request for a more stringent standard, holding:

> [W]e reject the defendants' proposal that, for purposes of this derivative suit and future similar suits, we adopt either a universal demand requirement or a requirement that a plaintiff must demonstrate a reasonable probability of success on the merits.

634 A.2d at 934. *See also Grobow*, 539 A.2d at 186-87 (rejecting the more stringent "judicial finding" standard for pleading director interest). The "reasonable doubt" standard "is sufficiently flexible and workable to provide the stockholder with 'the keys to the courthouse' in an appropriate case where [as here] the claim is not based on mere suspicions or stated solely in conclusory terms." *Grimes*, 673 A.2d at 1217. "[T]he concept of reasonable doubt is akin to the concept that the stockholder has a 'reasonable belief' that the board lacks independence or that the transaction was not protected by the business judgment rule." *Id.* at 1217 n.17. [11] This reasonable doubt standard promotes a strong public policy, since "the derivative suit ... [is a] potent tool[] to redress the conduct of a torpid and unfaithful management." *Rales*, 634 A.2d at 933. It is further particularly appropriate in derivative suits, because plaintiff typically has not had the benefit of discovery. *Id.* at 934 (requiring a reasonable probability of success on the merits would be "an extremely onerous burden to meet at the pleading stage without the benefit of discovery").

---

disinterestedness, independence or business judgment. *Aronson*, 473 A.2d at 814.

[11] Even if a board of directors is evenly divided between interested/non-independent directors and disinterested/independent directors, demand is excused as futile because "the impartial directors do not have the power unilaterally to cause the corporation to act on the demand." *Beneville v. York*, 769 A.2d 80, 86 (Del. Ch. 2000).

Thus, plaintiff's burden here is not to prove wrongdoing or demonstrate that they are likely to win on the merits; rather, plaintiff's burden at the pleading stage is only to allege particularized facts which, if true, would give a reasonable shareholder reason to doubt the ability of *four* of the eight members of the Board to consider a demand. Plaintiff easily meets this burden.

## IV.     ARGUMENT

### A.     Plaintiff Has Alleged Facts Sufficient to Demonstrate Demand Futility[12]

At the time plaintiff filed his original complaint on November 30, 2004, AspenTech's Board was comprised of the following eight directors:  Evans, Casey, Fusco, Haroian, Jennings, Kingsley, McArdle and Pehl.  ¶129.  As the issue of demand futility is to be determined based upon the composition of a board of directors at the time a compliant is originally filed, *see Harris*, 582 A.2d at 228, for demand to be excused, plaintiff need only raise a reason to doubt the disinterestedness or lack of independence of one-half of the Board; *i.e.*, *four* of the eight Board members named above. *McCall v. Scott*, 239 F.3d 808, 815 (6th Cir. 2001).  *See also Beam ex rel. Martha Stewart Omnimedia, Inc. v. Stewart*, 845 A.2d 1040, 1046 n.8 (Del. 2004); *Beneville*, 769 A.2d at 85-86 (holding that demand is excused where a board is evenly divided between interested and disinterested directors).  Plaintiff has done so.

---

[12] Plaintiff presents various allegations showing demand is futile upon the Board at the time plaintiff filed his original complaint.  Defendants simply cherry-pick certain of these allegations and find that plaintiff has failed to plead demand futility.  Defs.' Mem. at 12 n.5, 14-17.  Although Delaware law does provide that certain allegations, such as the fact that the Board would not be covered by the Company's directors' and officers' liability insurance policy if the Company were to institute an action against the Board, may be insufficient standing alone to excuse demand, taken and viewed in totality, plaintiff's allegations clearly evidence demand futility.

1.     **Plaintiff's Particular Allegations Have Raised a Reason to Doubt the Disinterest of One-Half of the Board[13]**

Under Delaware law, a particular director is disqualified from considering a demand where a plaintiff raises a reasonable doubt that the director is "disinterested." *Aronson*, 473 A.2d 805; *Cede v. Technicolor, Inc.*, 634 A.2d 345 (Del. 1993); *Rales*, 634 A.2d at 935-37. *Rales* provides a plaintiff with the following two ways to raise a reason to doubt a director's disinterestedness: (i) by alleging that the director received "a personal financial benefit from a transaction that is not equally shared by the stockholders"; or (ii) by alleging facts demonstrating a "substantial likelihood" that the director will be held personally liable for the alleged misconduct. *Rales*, 634 A.2d at 934-36. *See also Orman v. Cullman*, 794 A.2d 5, 23 (Del. Ch. 2002); *Beam*, 845 A.2d at 1049. Under either of these tests, plaintiff has particularly pled the interestedness of defendants Fusco, Haroian, McArdle and Evans, one-half of the Board. Thus, plaintiff has clearly shown that demand would have been futile.

(a)     **There Is a Reasonable Doubt that Audit Committee Defendants Fusco, Haroian and McArdle Lack Disinterest Because They Face a Substantial Likelihood of Liability[14]**

---

[13] Defendants cite *Decker v. Clausen*, No. 10,684, 1989 WL 133617 (Del. Ch. Nov 6, 1989) for the premise that demand is not excused where the complaint alleges that the "directors participated in and/or approved the alleged wrongs," that "the directors...would be forced to sue themselves," or because the directors' and officers' liability insurance policy would not protect the directors in a suit brought against them by the Company. Defs.' Mem. at 8, 12, 15. Here, plaintiff alleges far more than those mere allegations. Moreover, the *Decker* court opined that allegations that "serious problems existed with the student loan program and that the Bank either ignored those problems or was unaware of them for as much as a year....could possibly be enough to create a reasonable doubt that the directors of the Bank exercised due care in overseeing the student loan program." *Decker*, 1989 WL 133617, at *3. Likewise, plaintiff's allegations of five years of improper financial reporting is enough to create a reasonable doubt that the directors breached their fiduciary duties and thus face a substantial likelihood of liability.

[14] Defendants argue that plaintiff "alleges generically that demand is excused because the Directors 'participated in the wrongs complained of herein.'" Defs.' Mem. at 7. Although plaintiff does allege that senior management and the Board participated in the alleged wrongdoing, ¶129(f), plaintiff also particularly alleges the Audit Committee's participation in the wrongdoing, which resulted in five years worth of restatements, as well as detailed information concerning the Audit Committee, such as the frequency of its meetings during the Relevant Period and the duties and responsibilities entrusted to the Audit Committee, all of which are far from generic allegations. ¶¶29, 129(e).

During the Relevant Period, defendants Fusco, Haroian and McArdle all served as members of AspenTech's Audit Committee. ¶¶29, 129(e). The Audit Committee has "a duty to oversee the auditors, that is, to guard the guardians," and a failure to do so results in liability. *In re Lernout & Hauspie Sec. Litig.,* 286 B.R. 33, 37-40 (D. Mass. 2002) (denying motion to dismiss securities claims against audit committee members despite heightened pleading standards under federal securities laws). Defendants Fusco, Haroian and McArdle bear direct responsibility for the Company's wrongdoing, as they are and were specifically charged with the responsibility for insuring the accuracy and adequacy of AspenTech's financials and financial reporting under AspenTech's Audit Committee Charter. ¶¶31, 129(e). As the Complaint makes clear, these defendants utterly failed to fulfill their obligations and duties to oversee and monitor AspenTech's financial reports and internal controls to ensure accurate dissemination of information. *Id.* Consequently, AspenTech lacked sufficient internal controls and failed to properly recognize revenue for its software license sales, which resulted in AspenTech's financial restatement of its FY:00-FY:04 financial results, as well as adjustments and/or reclassifications to the following areas: (1) revenue resulting from consulting services and maintenance services; (2) cost of services; (3) general and administrative costs; (4) gains and losses on sales and disposals of assets; and (5) equity in earnings from joint ventures.[15] ¶120.

As discussed above, under Delaware law, interestedness may be shown where defendants

---

[15] Defendants cite *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970 (9th Cir. 1999) and *Seminaris v. Landa*, 662 A.2d 1350 (Del. Ch. 1995) to support their premise that allegations of participation in the wrongdoing based solely on defendants positions on the Board is insufficient to excuse demand. Defs.' Mem. at 11-12. Unlike here, *Silicon Graphics* was not a derivative action based upon improper revenue recognition and resulting restatements. *Silicon Graphics* concerned insider trading and plaintiffs' mere allegations of director participation in the fraudulent scheme. 183 F.3d at 990. Clearly these two cases are factually distinguishable. Similarly, the plaintiff in *Seminaris* alleged no facts other than that the company formed a special committee to demonstrate that the board was incapable of considering demand. *Seminaris*, 662 A.2d at 1352. Here, plaintiff goes into particular detail about the Audit Committee's actions and lack thereof over a five year period.

face a "substantial likelihood" of liability. *Rales*, 634 A.2d at 936. The assessment of defendants'
potential liability is based solely on the presumed truthfulness of plaintiff's allegations. *Id.* Thus,
well-pled allegations of malfeasance by corporate directors will be enough to raise a substantial
likelihood of liability for that conduct such that demand for a subsequent legal action would be
excused as futile. Plaintiff's particularized allegations demonstrate that defendants Fusco, Haroian
and McArdle are interested. The Complaint evidences the precise duties and purpose imposed upon
the Audit Committee defendants by AspenTech, which include: (1) assist the Board in fulfilling its
fiduciary and oversight responsibilities relating to the Company's financial reporting standards and
practices and the integrity of the Company's financial statements; (2) oversee the accounting and
financial reporting processes of the Company and the audits of the financial statements of the
Company; (3) monitor the adequacy and integrity of the Company's financial statements and
reporting processes and systems of internal controls regarding finance, accounting, and legal
compliance; (4) monitor the independence and performance of the Company's independent auditor
and the independent auditor's qualifications and independence; (5) report regularly to the Board; and
(6) prepare the report required by the rules of the SEC to be included in the Company's annual proxy
statement. ¶¶31, 129(e). These duties demonstrate that the Audit Committee Defendants had an
obligation to ensure that AspenTech's accounting practices adhered to GAAP and securities rules.[16]
Although defendants argue that plaintiff "does not provide any particularized allegations regarding
the knowledge of any member of the Audit Committee regarding any of the transactions that
occurred during fiscal years 1999-2002," Defs.' Mem. at 11, plaintiff alleges that defendants Fusco,
Haroian and McArdle's knowledge can be inferred from plaintiff's particularized pleading of their
Audit Committee duties. *Cooperman*, 171 F.3d at 46 (a court must accept the plaintiff's sufficiently

---

[16] Clearly, the Audit Committee was specifically directed to ensure proper financial disclosures,
not merely to ensure a restatement is issued each time improper accounting happens.

plead facts as true and grant all reasonable inferences in the plaintiff's favor); *Watterson*, 987 F.2d at 3. [17]

In dereliction of these duties, these defendants recommended that the Board include improper audited consolidated financial statements in AspenTech's Annual Report on Form 10-K for the years ended FY:00-FY:04, filings which defendants now admit were erroneous and should not be relied upon.  ¶¶32-33.  According to defendants, the erroneous financials were caused by improper recognition of software license revenue, arising out of unauthorized side arrangements, up front revenue recognition instead of on consignment,  improper timing and receivable write-offs, and recording of foreign withholding taxes, all of which were included in the Company's FY:00-FY:04 results and which were subsequently restated.  ¶119.  In AspenTech's Form 10K/A filed on March 15, 2005, defendants confirmed that the financial statements for FY:00-FY:04 were not a fair presentation of AspenTech's results and should not be relied upon.  *Id*.  Moreover, Deloitte & Touche, LLP AspenTech's independent auditors, stated that AspenTech suffered from an "inherent weakness in internal controls" over accounting procedures.  ¶121.

---

[17] In support of their argument that plaintiff has only made general allegations as to the director's knowledge, defendants cite *In re SonusNetworks, Inc., Derivative Litig.*, N. 04-0753 BLS (Mass. Super. Ct. Sept. 27, 2004); *In re Xcel Energy, Inc.*, 222 F.R.D. 603 (D. Minn. 2004), *Fink v. Komansky*, No. 03CV0388, 2004 WL 2813166 (S.D.N.Y. Dec. 8, 2004) and *Rattner v. Bidzos*, No. 19700, 2003 WL 22284323 (Del. Ch. Oct. 7, 2003).  Defs.' Mem. at 8-11.  These cases are distinguishable.  *Sonus* is a lower Massachusetts court shareholder derivative action that did not involve a restatement spanning five years.  Moreover, this decision is currently on appeal, in part, for the *Sonus* court's use of the improper test for demand futility.  Like *Sonus*, *Xcel*, *Fink* and *Rattner* did not involve the pervasive restatements as seen in this matter, and thus, are factually distinguishable.  Further, the *Xcel* court found that the plaintiff made "broad, generalized and conditional statements" and failed to plead "particularized facts that link a majority of the directors to any concerted board action."  222 F.R.D. at 607.  Likewise, the *Fink* court found that the plaintiff merely provided conclusory allegations.  2004 WL 2813166, at *5-*6.  Unlike *Xcel* and *Fink*, plaintiff here has pled particularized facts linking sustained and pervasive improper revenue recognition to defendants.  As to *Rattner*, this was a lower court decision, primarily focused upon insider trading, without a restatement wherein the relevant period was one year.  Here, there were five restatements and perpetual accounting improprieties since 1999.  Moreover, the Court's primary attention here should be focused upon the Audit Committee.  For these reasons, defendants' reliance on *Sonus*, *Xcel*, *Fink* and *Rattner* is misplaced.

The above wrongful conduct was at a minimum "reckless" in light of the fact that the Audit Committee Defendants met a total of *thirty-nine* times between FY:00-FY:04, ¶30, but nonetheless, permitted the inadequate internal controls to stay uncured for *five years* . Thus, neglect and malfeasance of the Audit Committee Defendants is manifest on the face of the Complaint. Defendants have publicly admitted an "inherent weakness" in the Company's accounting mechanisms, and the Audit Committee Defendants are directly to blame. The Audit Committee failed in its specific and detailed duties. Their failure was not a one time occurrence, but rather an on-going pattern which spanned *five* years. Importantly, plaintiff's factual allegations demonstrate that the Audit Committee authorized the Company to disseminate false and misleading financial statements. *See, e.g., In re Oxford Health Plans, Inc., Sec. Litig.,* 192 F.R.D. 111, 117 (S.D.N.Y. 2000). The duties and obligations of these particular directors cannot be reconciled with the wrongful conduct to which they have admitted.[18]

Similarly, in *Oxford Health*, defendants were alleged to have permitted Oxford to issue false statements regarding the company's financial results. 192 F.R.D. at 114. Specifically, the court found that:

---

[18] Defendants purport that there "are no particularized allegations in the Amended Complaint as to what was discussed at any board meeting or audit meeting or what was the content of the alleged 'briefings, reports, and internal communications.'" Defs.' Mem. at 11. Further, defendants provide that there is "no allegation that any of the Directors attended any meeting or read any report that discussed any of the transactions that occurred during fiscal years 1999-2002." *Id.* Under proper corporate governance procedures, however, all adverse non-public information, such as AspenTech's improper software license revenue recognition, or any other information impacting AspenTech's financial statements, known by the Audit Committee would have been shared with the other director defendants at some point during the thirty-nine Board meetings held between FY:00-FY:04. *Abbott Labs.,* 325 F.3d at 802, 806. Therefore, it is reasonable to infer, especially at this motion to dismiss stage, that the entire Board was aware of the inadequate controls and prior restatements, and nevertheless failed to take action. This conduct raises serious doubt that the Board's inactions and decisions to not institute proper internal controls and dissemination of false financial statements can be attributed to any rational business purpose or that the directors were acting in the best interests of the Company. Thus, this case also satisfies the requirements of the Seventh Circuit's decision in *Abbott Labs*. holding that a conscious failure to act by a board over a prolonged period of time is sufficient to excuse a pre-suit demand under Delaware law. 325 F.3d at 809.

> "[D]espite their knowledge of these facts [defendants] intentionally caused Oxford to continue its rapid and aggressive campaign of growth without reasonably insuring themselves that fundamental measures were undertaken and controls put in place to ensure the company was accurately keeping account of and reporting its financial results, and otherwise complying with its legal and regulatory obligations."

*Id.* at 115. As the *Oxford Health* court reasoned:

> This Complaint alleges with particularity the reckless failure of these defendants upon whom demand to sue would have to be made, in supervising or monitoring the affairs of the company.... To the extent that a Defendant violated his or her fiduciary duty by allowing others to make materially false or misleading statements about Oxford's financial matters, the rule of Rales applies, and, as previously discussed, demand is excused.

*Id.* at 117.

Similar to *Oxford Health*, the defendants here caused AspenTech to pursue a course of growth while failing to ensure proper internal controls and financial reporting.[19] Thus, as the court found in *Oxford Health*, this Court should similarly find that demand is excused and plaintiff has standing. For these reasons, plaintiff has clearly met his burden of establishing the futility of making a pre-suit demand, as the Audit Committee comprises three Board members who face a substantial likelihood of liability and are therefore incapable of fairly evaluating the claims asserted. *Mitzner v. Hastings*, No. C 04-3310 FMS, 2005 WL 88966, at *6 (N.D. Cal. Jan. 14, 2005). Consequently, the pattern and practice of the Audit Committee Defendants' mismanagement corroborate that Board

---

[19] Moreover, the defendants' misconduct lasted since at least July 1999, causing the restatements of five fiscal years. This "sustained or systematic failure of the board to exercise oversight" demonstrates liability for lack of oversight as well. *In re Caremark Int'l Derivative Litig.*, 698 A.2d 959, 971 (Del. Ch. 1996). In *Caremark*, the court recognized that "a sustained or systematic failure of the board to exercise oversight ... will establish the lack of good faith that is a necessary condition to liability." *Id. See also Canal Capital Corp. by Klein v. French*, No. 11,764, 1992 WL 159008, at *3 (Del. Ch. July, 2, 1992) ("a director breaches his fiduciary duty of due care if he abdicates his managerial duties"); *Mills Acquisition Co. v. MacMillan, Inc.* 559 A.2d 1261, 1282 n.32 (Del. 1989) (board's virtual abandonment of oversight functions was breach of fundamental duties of loyalty and care); *Guttman v. Huang*, 823 A.2d 492, 506 (Del. Ch. 2003) ("sustained or systematic failure of the board to exercise oversight – such as an utter failure to attempt to assure a reasonable information and reporting system exists" will sustain liability for good faith claim). Where a director consciously ignores his or her duties to the corporation thereby causing economic injury to its stockholders, the director's actions are either "not in good faith" or "involve intentional misconduct." *In re Walt Disney Co. Derivative Litig.*, 825 A.2d 275, 289 (Del. Ch. 2003).

Defendants would have declined to act on a shareholder demand.

###     2.    Plaintiff Raises a Reasonable Doubt as to Defendant Evans' Independence

"Independence means that a director's decision is based on the corporate merits of the subject before the board rather than extraneous considerations or influences." *Aronson*, 473 A.2d at 816. *See also Katz v. Chevron Corp.*, 22 Cal. App. 4th 1352, 1367 (1994) (citing *Kaplan v. Wyatt*, 499 A.2d 1184, 1189 (Del. 1985)); *Cede & Co. v. Technicolor, Inc.*, 634 A.2d 345, 362 (Del. 1993) ("We have generally defined a director as being independent only when the director's decision is based entirely on the corporate merits of the transaction and is not influenced by personal or extraneous considerations."). Among other situations, a lack of independence has been found where a director is beholden to another by virtue of his/her employment. *Rales*, 634 A.2d at 936-37. Defendant Evans is an employee of AspenTech at the time of filing, and thus, lacks independence. ¶¶11, 129(d).

Under Delaware law, particularized allegations that an employee-director depends on his employment position for his livelihood are sufficient to raise a reasonable doubt regarding the employee-director's independence from other Board members who have the ability to control his employment and compensation.[20] In order to protect the executive positions he had when Plaintiff filed his Complaint, defendant Evans would not bring suit against the Board.

###     3.    Plaintiff Has Alleged with Particularity that There Is Reason to Doubt the Independence of Defendants Evans, Pehl and Kingsley

---

[20] *See, e.g., Rales*, 634 A.2d at 937 ("there is a reasonable doubt that [an employee-director] can be expected to act independently considering his substantial financial stake in maintaining his current offices"); *In re Cooper Co., Inc.*, No. 12584, 2000 WL 1664167, at *6-7 (Del. Ch. Oct. 31, 2000) (allegation that employee-directors "'owed their positions and their livelihood to maintaining the good will'" of other directors "creates reason to doubt that [employee-directors] could have responded impartially to a demand"). *See also Mizel v. Connelly*, No. 16638, 1999 WL 550369, at *8-9 (Del. Ch. July 22, 1999) ("Since [employee-directors] each derive their principal income from their employment at [the corporation], it is doubtful that they can consider the demand on its merits without also pondering whether an affirmative vote would endanger their continued employment.").

"If a plaintiff pleads facts that create a reasonable doubt that a [majority] of the Board could have acted independently in responding to the demand the presumption of independence is rebutted for pleading purposes and demand will be excused as futile." *Beam*, 845 A.2d at 1049. The Delaware test for directorial independence "focuses on whether the directors, for ***any substantial reason***, cannot act with only the best interests of the corporation in mind." *In re Oracle Corp. Deriv. Litig.*, 824 A.2d 917, 937-38 (Del Ch. 2003) (finding reason to doubt independence of special litigation committee, tenured professors at Stanford University, to investigate conduct of directors with ties to the University). The primary basis upon which a director's independence must be measured is whether the director's decision is based on the corporate merits of the subject before the board rather than on extraneous considerations or influences. *Beam*, 845 A.2d at 1049. "That is, the Supreme Court cases ultimately focus on impartiality and objectivity." *Oracle*, 824 A.2d at 938; *Beam*, 845 A.2d at 1049.

A director may be compromised if he is beholden to or controlled by an interested person. *Oracle*, 824 A.2d at 938; *Telxon Corp. v. Meyerson*, 802 A.2d 257, 264 (Del. 2002). Beholden in this sense does not mean just owing in the personal financial sense; it can also flow out of "personal or other relationships" to the interested party. *Oracle*, 824 A.2d at 938-39. A controlled director is one who is dominated by another party through close personal or familial relationship or through force of will. *Telxon*, 802 A.2d at 264. Independence of the board is a fact-specific determination made in the context of a particular case. *Beam*, 845 A.2d at 1049; *Int'l Equity Capital Growth Fund, L.P. v. Clegg*, No. 14995, 1997 WL 208955, at *2 (Del. Ch. Apr. 22, 1997). There are few bright lines. *Id.* In evaluating the impartiality and objectivity of the board, the court should employ a common sense application of those terms. *Parfi Holding AB v. Mirror Image Internet, Inc.*, 794 A.2d 1211, 1231 (Del. Ch. 2001), *rev'd*, 817 A.2d 149 (Del. 2002).

Here, plaintiff has raised a reasonable doubt as to the lack of independence of defendant Evans, a principal founder of AspenTech and Chairman, as well as an inside director because he also serves as CEO of AspenTech and receives substantial compensation[21] therefrom. ¶¶29, 129(b), 129(d). Plaintiff also alleged that defendant Evans effectively controlled the Board.[22] ¶129(b). Plaintiff also raised a reasonable doubt as to the lack of independence of defendants Pehl and Kingsley.[23] Specifically, plaintiff alleged that defendants Pehl and Kingsley have entangling business relationships. ¶129(g). Defendant Pehl is a director of Advent International Corporation ("Advent"), and has been since 2001. *Id.* Defendant Kingsley is a managing director of Advent, and has been since 1997. *Id.* Due to §their professional relationships and interactions outside of AspenTech, it is reasonable to assume that these directors would not or could not objectively evaluate whether to sue themselves or their friends. *See, e.g.*, *Biondi v. Scrushy*, 820 A.2d 1148,

---

[21] Defendants argue that plaintiff has failed to establish that members of the Board would not bring an action against the Compensation Committee defendants, Casey, Fusco and Jennings. Defs.' Mem. at 16-17. Plaintiff has alleged the specific duties of the Compensation Committee, ¶¶38, 129(c), and thus their ability to control the compensation and policies and practices associated therewith, thereby potentially jeopardizing the director defendants' financial rewards. Moreover, plaintiff raised a reasonable doubt as to defendant Fusco's disinterest due to his membership on the Board's Audit Committee. *See supra* at 11-16.

[22] *See, e.g., In re eBay, Inc. S'holders Litig.*, No. 19988-NC, 2004 WL 253521, at *3 (Del. Ch. Jan. 23, 2004) (finding that Company's acknowledgement that interested directors controlled company was sufficient to demonstrate demand futility). In support of defendants' argument that defendant Evans does not control the Board, defendants cite *Jacobs v. Yang*, No. 206-N, 2004 WL 1728521 (Del. Ch. Aug 2, 2004). Defs' Mem. at 18 n.8. The plaintiff in *Jacobs* alleged that the directors would not bring suit against the two founders of Yahoo! who also served on the board of directors because Yahoo! was substantially dependent on those two directors. 2004 WL 1728521, at *2. Unlike *Jacobs*, plaintiff here alleges that defendant Evans was interested and controlled the Board, not that AspenTech was dependent upon him. Defendants also cite *Spector v. Sidhu*, No. 3:03-CV-0841-H, 2004 WL 350682 (N.D. Tex. Jan. 26, 2004) to support their contention that demand is not excused for an inside director who allegedly controlled the board of directors by a mere allegation of his "interlocking business relationships." Defs.' Mem. at 18 n.8. Here, plaintiff specifically alleges that defendant Evans is a principal founder of AspenTech, as well as Chairman and CEO. Unlike *Spector*, this is more than a mere business connection with AspenTech's Board and demand is futile.

[23] Indeed, independence must be determined on a case by case basis. *Beam*, 845 A.2d at 1049.

1157 (Del. Ch. 2003) ("Contributing to the [court's] disquiet is long-standing personal ties between Stripling and Scrushy, who are both large contributors to college sports programs in Alabama").[24]

In determining whether there is **_reasonable doubt_**[25] that Aspen's Board members are independent, the Court must consider the totality of the allegations concerning a director's lack of independence - - not just each allegation in isolation. *Int'l Equity*, 1997 WL 208955, at *5 (Perhaps each allegation concerning each director's lack of independence "taken in isolation" would not be sufficient to cast reasonable doubt on director's independence, but "in combination" they do). In the present case, the totality of the allegations raise a reasonable doubt as to the independence of at least defendants Pehl and Kingsly from Evans, a clearly interested director who controlled the Board. Thus, demand upon these directors would have been futile.

---

[24] Although mere recitation of the fact of past business or personal relationships will not make the Court automatically question the independence of a challenged director, it may be possible to plead additional facts concerning the length, nature or extent of those previous relationships that would put in issue that director's ability to objectively consider the challenged transaction. See, *e.g.*, *In re Ply Gem Indus., Inc. S'holders Litig.*, No. 15779-NC, 2001 WL 1192206, at *1 (Del. Ch. Oct. 3, 2001) (stating that "past benefits conferred by [the allegedly dominating director], or conferred as the result of [that director's] position with Ply Gem, may establish an obligation or debt (a sense of 'owingness') upon which a reasonable doubt as to a director's loyalty to a corporation may be premised"); In re New Valley Corp. Derivative Litig., No. 17649, 2001 WL 50212 (Del. Ch. Jan. 11, 2001).

[25] Reasonable doubt as to a director's independence may arise either because of "financial ties, familial affinity, a particularly close or intimate personal or business affinity *or* because of evidence that in the past the relationship caused the director to act non-independently *vis a vis* an interested director." *Beam,* 745 A.2d 1052.

## V.     CONCLUSION

As plaintiff has particularly pled demand futility as to at least one-half of the Board, plaintiff respectfully requests that this Court deny defendants' Motion to Dismiss and sustain the Complaint in its entirety.[26]

---

[26] If, however, this Court is inclined to grant Defendants' Motion, Plaintiff requests leave to amend pursuant to Fed. R. Civ. P. 15(a). *See* Fed. R. Civ. P. 15(a) (leave to amend a complaint "shall be freely given when justice so requires."). *See also Espinosa v. Sisters of Providence Health Sys.*, 227 F.R.D. 24, 26 (D. Mass. 2005) (the liberal amendment policy of Rule 15(a) is a mandate to be heeded).

DATED: May 6, 2005                          Respectfully submitted,


                                            SEGAL ROITMAN & COLEMAN
                                            MARY T. SULLIVAN


                                            /s/ Mary T. Sullivan
                                            _____
                                            MARY T. SULLIVAN
                                            BB0 #:  487130
                                            11 Beacon Street
                                            Boston, MA  02178
                                            Telephone: 617/742 0208
                                            Facsimile: 617/742 2187

                                            ROBBINS UMEDA & FINK, LLP
                                            BRIAN J. ROBBINS
                                            JEFFREY P. FINK
                                            610 West Ash Street, Suite 1800
                                            San Diego, CA  92101
                                            Telephone:  619/525-3990
                                            Facsimile: 619/525-3991

                                            Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Plaintiff's Memorandum of Law in Support of His Response and Objection to Defendants' Motion to Dismiss the Amended Complaint, §has been served upon the Defendants' Counsel by first-class mail, postage prepaid, this 6th day of May, 2005.

                                            /s/ Mary T. Sullivan_____

                                            Mary T. Sullivan

G:\Aspen Tech\Motions - Opps\MTD\OpptoMTD.doc