UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

GARY CAVINESS, Derivatively on Behalf of
ASPEN TECHNOLOGY INC.,

                Plaintiff,

          v.

LAWRENCE B. EVANS, LISA W. ZAPPALA, DAVID
L. MCQUILLIN, CHARLES F. KANE, STEPHEN M.
JENNINGS, JOAN C. MCARDLE, MICHAEL PEHL,
DOUGLAS A. KINGSLEY, GARY E. HAROIAN,
MARK FUSCO, DONALD P. CASEY, STEPHEN L.
BROWN, JOSEPH F. BOSTON, DOUGLAS R. BROWN
and GRESHAM T. BREBACH,

                Defendants,

and

ASPEN TECHNOLOGY INC., a Delaware corporation,

                Nominal Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Civil Action
No. 04-12524-JLT

## ASPEN TECHNOLOGY, INC.'S, CURRENT OUTSIDE-DIRECTORS' AND FORMER OUTSIDE-DIRECTORS' MOTION FOR LEAVE TO SUBMIT A REPLY MEMORANDUM IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS

        Aspen Technology, Inc. ("AspenTech"), Stephen M. Jennings, Joan C. McArdle,

Michael Pehl, Douglas A. Kingsley, Gary E. Haroian, Mark Fusco, Donald P. Casey ("Current Outside-

Directors"), Douglas R. Brown and Gresham T. Brebach ("Former Outside-Directors") (collectively,

"Defendants") hereby move pursuant to Local Rule 7.1(B)(3) for leave to submit a reply memorandum

in further support of their motion to dismiss.  As grounds for this motion, Defendants state as follows:

        1.       On April 19, 2005, Defendants filed their motion to dismiss and supporting

memorandum.

2. On May 6, 2005, Plaintiff filed his opposition memorandum.

3. Defendants' reply memorandum, submitted herewith, concisely addresses

Plaintiff's arguments and cases. Defendants submit that it contains analysis and authority that will

assist the Court in its consideration of Defendants' Motion To Dismiss.

## Certificate Under Local Rule 7.1(A)(2)

The undersigned counsel hereby certifies that counsel for Defendants made a good faith

effort to contact counsel for Plaintiff by phone in an attempt to resolve or narrow the issues involved in

this motion, but counsel for Plaintiff as of this time has not returned the call.

Dated: May 17, 2005
        Boston, Massachusetts

Respectfully submitted,

Thomas J. Dougherty (BBO #132300)
Justin J. Daniels (BBO #656118)
Kerry Dakin (BBO #640826)
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
One Beacon Street
Boston, Massachusetts 02108
(617) 573-4800

Counsel for Aspen Technology, Inc.,
Current Outside-Directors and
Former Outside-Directors

## Certificate Of Service

I, Kerry Dakin, hereby certify that on May 17, 2005, I caused a true copy of the
foregoing Aspen Technology, Inc.'s, The Current Outside-Directors' And The Former Outside-
Directors' Motion For Leave To Submit A Reply Memorandum In Further Support Of Their Motion
Dismiss to be served upon counsel of record for each party as indicated on the service list attached
hereto.

Dated: May 17, 2005

Kerry Dakin

## SERVICE LIST

**BY HAND**
Mary T. Sullivan, Esq.
Segal Roitman & Coleman
11 Beacon Street, Suite 500
Boston, MA 02108

**Counsel for Plaintiff**

**BY HAND**
John J. Falvey, Jr., Esq.
Christopher C. Nee, Esq.
Goodwin Procter LLP
Exchange Place
53 State Street
Boston, MA 02109

**Counsel for Lisa Zappala**

**BY FEDEX**
Brian J. Robbins, Esq,
Jeffrey P. Fink, Esq.
Robbins Umeda & Fink LLP
1010 Second Avenue, Suite 2360
San Diego, CA 92101

**Counsel for Plaintiff**

**BY HAND**
John A.D. Gilmore, Esq.
Piper Rudnick LLP
One International Place, 21st Fl.
Boston, MA 02110

**Counsel for David McQuillin**

**BY HAND**
Nicholas Theodorou, Esq.
Brandon White, Esq.
Kevin Currid, Esq.
Foley Hoag LLP
Seaport World Trade Center West
155 Seaport Boulevard
Boston, MA 02210-2600

**Counsel for Lawrence Evans**

**BY HAND**
Steven J. Doyle, Esq.
Aspen Technology, Inc.
10 Canal Park
Cambridge, MA 02141-2200

**Counsel for Charles Kane & Joseph Boston**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

GARY CAVINESS, Derivatively on Behalf of
ASPEN TECHNOLOGY INC.,

    Plaintiff,

    v.

LAWRENCE B. EVANS, LISA W. ZAPPALA, DAVID
L. MCQUILLIN, CHARLES F. KANE, STEPHEN M.
JENNINGS, JOAN C. MCARDLE, MICHAEL PEHL,
DOUGLAS A. KINGSLEY, GARY E. HAROIAN,
MARK FUSCO, DONALD P. CASEY, STEPHEN L.
BROWN, JOSEPH F. BOSTON, DOUGLAS R. BROWN
and GRESHAM T. BREBACH,

    Defendants,

and

ASPEN TECHNOLOGY INC., a Delaware corporation,

    Nominal Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

  Civil Action
  No. 04-12524-JLT

## ASPEN TECHNOLOGY, INC.'S, CURRENT OUTSIDE-
## DIRECTORS' AND FORMER OUTSIDE-DIRECTORS' REPLY
## MEMORANDUM IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS

Thomas J. Dougherty
Justin J. Daniels
Kerry Dakin
SKADDEN, ARPS, SLATE,
 MEAGHER & FLOM LLP
One Beacon Street
Boston, Massachusetts 02108
(617) 573-4800

Dated: May 17, 2005

Counsel for Aspen Technology, Inc.,
Current Outside-Directors and
Former Outside-Directors

# **TABLE OF CONTENTS**

Page

Table of Authorities ......................................................................................................... ii

Introduction........................................................................................................................1

Argument ...........................................................................................................................4

I.    PLAINTIFF CONCEDES THAT TWO OF THE
      DIRECTORS ARE NOT AT ISSUE.......................................................................6

II.   PLAINTIFF FAILS TO CREATE A REASONABLE DOUBT
      THAT DIRECTORS HAROIAN, FUSCO AND MCARDLE
      WERE "INTERESTED" ..........................................................................................6

      A.    Plaintiff Fails to Allege Particularized Facts Suggesting
            A "Substantial Likelihood" Of Personal Liability For
            The Audit Committee Members ...................................................................7

      B.    Plaintiff Misses The Fact That Directors Haroian And
            Fusco Joined The Board *After* The Transactions At Issue.........................10

      C.    Plaintiff's Purported "Authority" Actually
            Highlights What Is Wrong With His Pleading ...........................................10

III.  PLAINTIFF FAILS TO CREATE A REASONABLE DOUBT
      THAT DIRECTORS PEHL AND KINGSLEY LACKED
      INDEPENDENCE .................................................................................................13

IV.   PLAINTIFF FAILS TO CREATE A REASONABLE DOUBT
      THAT DIRECTOR EVANS LACKED INDEPENDENCE...............................15

Conclusion ......................................................................................................................16

# TABLE OF AUTHORITIES

CASES                                                                    PAGE(S)

Aronson v. Lewis,
  473 A.2d 805 (Del. 1984) .................................................................................7, 13

Beam v. Stewart,
  845 A.2d 1040 (Del. 2004) .............................................................................. passim

Brehm v. Eisner,
  746 A.2d 244 (Del. 2000) .......................................................................5, 14, 15, 16

Fink v. Komanski,
  No. 03-388, 2004 WL 2813166 (S.D.N.Y. Dec. 8, 2004) ...................................8, 12

Gonzalez Turul v. Rogatol Distributors, Inc.,
  951 F.2d 1 (1st Cir. 1991)...........................................................................................5

Green v. Phillips,
  No. 14436, 1996 WL 342093 (Del. Ch. June 19, 1996)...........................................15

Grossman v. Johnson,
  89 F.R.D. 656 (D. Mass. 1981)...................................................................................4

Guerra v. Teradyne Inc.,
  No. 01-11789, 2004 WL 1467065 (D. Mass. Jan. 16, 2004)...................................10

Guttman v. Huang,
  823 A.2d 492 (Del. Ch. 2003)..................................................................9, 10, 13, 14

In re Abbott Labs. Derivative S'holders Litig.,
  325 F.3d 795 (7th Cir. 2003) ............................................................................11, 12

In re Baxter Int'l, Inc. S'holders Litig.,
  654 A.2d 1268 (Del. Ch. 1995).............................................................................9, 10

In re Caremark Int'l Derivative Litig.,
  698 A.2d 959 (Del. Ch. 1996)...................................................................................13

In re Citigroup S'holders Derivative Litig.,
  No. 19827, 2003 WL 21384599 (Del. Ch. June 5, 2003).........................................17

In re Cooper Cos., Inc. S'holders Derivative Litig.,
  No. 12584, 2000 WL 1664167 (Del. Ch. Oct. 31, 2000)..........................................15

ii

CASES                                                                  PAGE(S)

In re eBay, Inc. S'holders Litig.,
    No 19988, 2004 WL 253521 (Del. Ch. Jan. 23, 2004) ............................................14

In re Lernout & Houspie Sec. Litig.,
    286 B.R. 33 (D. Mass. 2002) .............................................................................10, 11

In re Oxford Health Plans, Inc. Sec. Litig.,
    192 F.R.D. 111 (S.D.N.Y. 2000) ...................................................................10, 11, 12

In re Sagent Tech. Inc. Derivative Litig.,
    278 F. Supp. 2d 1079 (N.D. Cal. 2003) ...........................................................9, 15, 16

In re Sonus Networks, Inc., Derivative Litig.,
    No. 04-0753-BLS, 18 Mass. L. Rptr. 295,
    2004 WL 2341395 (Mass. Super. Ct. Sept. 27, 2004) ...........................................5, 8

Kamen v. Kemper Fin. Servs., Inc.,
    500 U.S. 90 (1991) ..............................................................................................1, 4

Landy v. D'Alessandro,
    316 F. Supp. 2d 49 (D. Mass. 2004) ........................................................................5

Mitzner v. Hastings,
    No. 04-3310, 2005 WL 88966 (N.D. Cal. Jan. 14, 2005) ...............................8, 11, 12

Mizel v. Connelly,
    No. 16638, 1999 WL 550369 (Del. Ch. July 22, 1999) ...........................................15

Mozes v. Welch,
    683 F. Supp. 215 (D. Conn. 1986) ............................................................................8

Rales v. Blasband,
    634 A.2d 927 (Del. 1993) ........................................................................3, 6, 13, 15

Rattner v. Bidzos,
    No. 19700, 2003 WL 22284323 (Del. Ch. Oct. 7, 2003) ...........................................8

Seminaris v. Landa,
    662 A.2d 1350 (Del. Ch. 1995) .................................................................................8

Spector v. Sidhu,
    No. 03-0841, 2004 WL 350682 (N.D. Tex. Jan. 26, 2004) .....................................14

CASES                                                                          PAGE(S)

White v. Panic,
    783 A.2d 543 (Del. 2001) ...............................................................................1, 5, 17

In re Xcel Energy, Inc.,
    222 F.R.D. 603 (D. Minn. 2004)................................................................................8


RULES                                                                          PAGE(S)

Fed. R. Civ. P. 8(a) ...........................................................................................................4

Fed. R. Civ. P. 12(b)(6).....................................................................................................4

Fed. R. Civ. P. 15(a) ........................................................................................................17

Fed. R. Civ. P. 23.1 .......................................................................................................4, 5


OTHER AUTHORITIES                                                               PAGE(S)

3 Fletcher Cyclopedia of Private Corporations § 1024 (updated 2004) ..........................9

18B Am. Jur. 2d Corporations § 1468 (updated Oct. 2004)...........................................9

For the reasons set forth herein and in Defendants'[1] opening memorandum,

Plaintiff's Amended Complaint should be dismissed for failure to allege with particularity why demand on AspenTech's board of directors should be excused.

## Introduction

Demand on a board of directors of a public company may only be excused by "extraordinary conditions." Kamen v. Kemper Fin. Servs., 500 U.S. 90, 95-96 (1991). The "key principle" governing a court's consideration of demand is that "directors are entitled to a presumption that they were faithful to their fiduciary duties." Beam v. Stewart, 845 A.2d 1040, 1048 (Del. 2004) (emphasis in original). "In the context of presuit demand, the burden is upon the plaintiff in a derivative action to overcome that presumption." Id. at 1048-49. For this reason, conclusory assertions about interestedness or a lack of independence may not be substituted for particularized facts demonstrating that -- despite "powerful presumptions" to the contrary -- a board is "incapable of exercising its power and authority to pursue the derivative claims directly." White v. Panic, 783 A.2d 543, 551 (Del. 2001) (emphasis in original).

As of December 1, 2004, when Gary Caviness filed his original complaint,

AspenTech's Board of Directors consisted of the following eight individuals, seven of whom were outside directors and none of whom had a pecuniary interest in the transactions at issue:

> Stephen M. Jennings, a Director of the Monitor Group, a
> management consulting firm based in Cambridge, Massachusetts;

---

[1]    Nominal defendant Aspen Technology, Inc. ("AspenTech" or the "Company"); individual defendants Stephen M. Jennings, Joan C. McArdle, Michael Pehl, Douglas A. Kingsley, Gary E. Haroian, Mark Fusco and Donald P. Casey ("Current Outside-Directors"); and individual defendants Douglas R. Brown and Gresham T. Brebach ("Former Outside-Directors") (collectively, "Defendants").

1

> Donald P. Casey, the former Vice President of Communication
> Hardware and Software at IBM, Vice President of Networking and
> Multimedia at Apple Computer, Vice President of the Spreadsheet
> division for Lotus Development Corporation, and President and
> Chief Technology Officer for Wang Global;
>
> Gary E. Haroian, the former CFO, President and CEO of Stratus
> Computer, CFO of Concord Communications, and audit manager
> for Arthur Andersen and Company;
>
> Mark Fusco, the former President and COO of Ajilon Consulting
> USA, a $513 million information technology consulting firm;
>
> Joan C. McArdle, a Senior Vice President with Massachusetts
> Capital Resource Company;
>
> Douglas A. Kingsley, the co-head of the North American deal
> group at Advent International, a global private equity firm;
>
> Michael Pehl, a partner at Advent International; and
>
> Lawrence B. Evans, Chairman of AspenTech, a Professor Emeritus
> of MIT in chemical engineering, and principal founder of
> AspenTech in 1981.

In opposition to Defendants' motion to dismiss, Plaintiff claims that this board

was incapable of "objectively and impartially" determining whether to bring a lawsuit on behalf

of the Company concerning the allegedly "false and misleading" public statements and reports

issued by the Company between 1999 and 2004 concerning its financials, and that demand on the

board would have therefore be futile. Pl's Opp. at 1. The reason given: "Because the Board

members lack[ed] disinterest and/or independence and face[d] a substantial likelihood of

liability, especially in light of the fact that: (1) the Company restated its financial results for

FY:00-FY:04; and (2), publicly acknowledged that AspenTech had material weaknesses in its

internal controls." Id.

Because Plaintiff is challenging "more general board action or lack of action"

rather than a specific "board decision" (see Pl's Opp. at 7), the relevant inquiry of demand

2

futility under Delaware law is the "Rales" test -- whether Plaintiff has provided particularized

facts creating a reasonable doubt that as of the time of the complaint a majority of AspenTech's

board could have exercised its independent and disinterested business judgment in responding to

a demand for litigation. See Rales v. Blasband, 634 A.2d 927, 934 (Del. 1993). Therefore, to

pass the Rales test, Plaintiff must create a reasonable doubt that at least four of the eight

AspenTech directors could not have exercised their independent and disinterested business

judgment in responding to a demand. See Pl's Opp. at 7, 9 (citing Rales, 634 A.2d at 934 and

Beam, 845 A.2d at 1046 n.8).

> Plaintiff fails to establish a reasonable doubt as to any of them:
>
> Directors Jennings and Casey: Plaintiff does not even mention
> Messrs. Jennings or Casey in opposition, appearing to concede their
> independence and disinterestedness. (See Section I, infra.)
>
> Directors Haroian, Fusco and McArdle: Plaintiff's only theory of
> interestedness with respect to Haroian, Fusco and McArdle is that
> they were on AspenTech's Audit Committee. See Pl's Opp. at 10-
> 11. According to Plaintiff, this fact makes them personally liable.
> Id. at 11. In response to Defendants' challenge to Plaintiff's lack of
> particularization, Plaintiff argues that "Fusco, Haroian, and
> McArdle's knowledge can be inferred from plaintiff's particularized
> pleading of their Audit Committee duties." Id. at 12 (emphasis
> added).
>
> This kind of argument has been squarely rejected by courts
> interpreting Delaware law. (See Section II.A., infra.) In addition,
> Plaintiff overlooks in his brief that Messrs. Haroian and Fusco did
> not even join the Audit Committee until eighteen months after the
> last of the transactions at issue. (See Section II.B., infra.)
>
> Directors Kingsley and Pehl: Plaintiff's only argument with respect
> to Pehl and Kingsley in opposition is that they lacked independence
> because of alleged outside business relationships and control by Mr.
> Evans (AspenTech's Chairman at the time). See Pl's Opp. at 16-19.
>
> However, under Delaware law, the mere allegation of
> outside business relationships does not excuse demand, nor does a
> charge of control by another without particularized facts showing
> the controlling person's own interestedness. (See Section III, infra.)

3

> Director Evans: Plaintiff argues that Mr. Evans lacked
> independence because he was an employee of the Company at the
> time of the complaint. Pl's Opp. at 16. Delaware law
> unambiguously holds that this does not excuse demand. (See
> Section IV, infra.)

\* \* \*

Mr. Caviness has now had three opportunities, in two complaints and an

opposition brief, to explain to this Court why he should be permitted to override "the basic

principle of corporate governance that the decisions of a corporation -- including the decision to

initiate litigation -- should be made by the board of directors or the majority of shareholders."

Kamen, 500 U.S. at 101 (citations and internal quotations omitted). He has not come close.

## Argument

Notably absent from Plaintiff's discussion of the "Legal Standards Applicable" to

this motion is any mention of Federal Rule of Civil Procedure 23.1, under which this motion is

brought. See Pl's Opp. at 4-5. Pursuant to Rule 23.1, a federal complaint in a shareholder

derivative action must:

> allege with particularity the efforts, if any, made by the plaintiff to
> obtain the action the plaintiff desires from the directors or
> comparable authority . . . and the reasons for his failure to obtain
> the action or for not making the effort.

Fed. R. Civ. P. 23.1. Though Plaintiff discusses at length the generous "notice" pleading

standards of Rule 8(a) and motions to dismiss under 12(b)(6), he is silent on Rule 23.1. As this

Court has previously recognized, however, Rule 23.1 "represents a deliberate departure from the

relaxed policy of 'notice' pleading promoted elsewhere in the Federal Rules. Simply stated, it

places the burden on the shareholder to demonstrate why the directors are incapable of doing

their duty." Grossman v. Johnson, 89 F.R.D. 656, 659 (D. Mass. 1981) (Tauro, J.), aff'd, 674

4

F.2d 115 (1st Cir. 1982) (citations and internal quotations omitted); see also Beam v. Stewart,

845 A.2d 1040, 1048 (Del. 2004) ("[C]onclusory allegations are not considered as expressly

pleaded facts or factual inferences.") (quoting White v. Panic, 783 A.2d 543, 549 (Del. 2001));

Brehm v. Eisner, 746 A.2d 244, 254 (Del. 2000) ("Rule 23.1 is not satisfied by conclusory

statements or mere notice pleading . . . . What the pleader must set forth are particularized factual

statements that are essential to the claim.").

In addition, even though "[c]ourts have tended to vary in the rigor with which

they enforce Rule 23.1, in this circuit the Rule has been vigorously enforced." Landy v.

D'Alessandro, 316 F. Supp. 2d 49, 58 (D. Mass. 2004). As per the First Circuit:

> In a federal shareholder derivative action, a shareholder must plead
> with particularity either that demand was made on the corporation
> or that demand was futile. This circuit vigorously enforces this
> requirement and will dismiss derivative actions when plaintiffs do
> not comply. In doing so, we have recognized the important policy
> behind the demand requirement. A shareholder derivative action is
> an action of last resort. When shareholders undertake such an
> action it implies that the corporation is unwilling or unable to
> conduct a suit on its own behalf. Clearly, it should first be
> ascertained whether the corporation is unwilling to undertake the
> action. '[T]o be allowed, sua sponte, to place himself in charge
> without first affording the directors the opportunity to occupy their
> normal status, a stockholder must show that his case is
> exceptional.'

Gonzalez Turul v. Rogatol Distributors, Inc., 951 F.2d 1, 2 (1st Cir. 1991) (citations omitted)

(emphasis added). Thus, "[w]hatever the underlying allegations, if a derivative plaintiff fails to

carry the burden of demonstrating that demand should be excused, the complaint must be

dismissed." In re Sonus Networks, Inc. Derivative Litig., No. 04-0753 BLS, 18 Mass. L. Rptr.

295, 2004 WL 2341395, *2 (Mass. Super. Ct. Sept. 27, 2004) (slip opinion provided at Tab A to

Defendants' opening memorandum).

5

Since Plaintiff's submissions offer nothing more than conclusions and baseless

assumptions, his Amended Complaint should be dismissed.

## I.    PLAINTIFF CONCEDES THAT TWO OF THE DIRECTORS ARE NOT AT ISSUE

Plaintiff has apparently conceded his arguments concerning directors Casey and

Jennings. Neither are mentioned in Plaintiff's Opposition, notwithstanding Defendants'

challenge to Plaintiff's allegations of their supposed interestedness and lack of independence.

See Defs' Mem. at 16-18.

## II.    PLAINTIFF FAILS TO CREATE A REASONABLE DOUBT THAT DIRECTORS HAROIAN, FUSCO AND MCARDLE WERE "INTERESTED"

In the absence of a pecuniary financial interest in a challenged transaction, a

director's disinterestedness is tested by evaluating whether he or she can be "expected to exercise

his or her independent business judgment without being influenced by the adverse personal

consequences resulting from the decision" to proceed with the litigation being demanded. Rales

v. Blasband, 634 A.2d 927, 936 (Del. 1993).

For purposes of evaluating interestedness, Plaintiff contends that "the Court's

primary attention here should be focused upon the Audit Committee." Pl's Opp. at 13 n.17. He

claims that as of December 1, 2004, the Audit Committee (consisting of directors Haroian,

McArdle and Fusco) were not disinterested because "they face[d] a substantial likelihood of

liability" for the supposedly "improper audited consolidated financial statements" issued in

AspenTech's public filings between 1999 and 2004. Id. at 11, 13. As will be demonstrated

below, Plaintiff's theory is based on conclusions, inferences and facts contradicted by the

Amended Complaint itself.

6

## A.    Plaintiff Fails To Allege Particularized Facts Suggesting A "Substantial Likelihood" Of Personal Liability For The Audit Committee Members

Plaintiff's theory of Audit Committee liability is simple: Because the Committee

is allegedly "charged with the responsibility for insuring the accuracy and adequacy of

AspenTech's financials and financial reporting under AspenTech's Audit Committee Charter"

(among other so-called "duties"), and because those financials were allegedly not accurate or

adequate at the time, each committee member faces a substantial likelihood of personal liability

for the allegedly false and misleading public statements and reports that they "authorized." See

Pl's Opp. at 11-14; Am. Compl. ¶¶ 31, 120, 129(e), 129(o)).  Plaintiff asserts that the Audit

Committee's "knowledge" of these alleged inaccuracies "can be inferred from . . . [the] Audit

Committee['s] duties" set forth in the Committee's Charter.  Pl's Opp. at 12.  Further, with

respect to internal controls, he argues that the Committee's conduct "was at a minimum

'reckless' in light of the fact that the Audit Committee Defendants met a total of thirty-nine times

between FY:00-FY:04, ¶ 30, but nonetheless, permitted the inadequate internal controls to stay

uncured for five years."  Id. at 14.

Plaintiff's attempt to ascribe personal liability to the Audit Committee members

by inferring "knowledge" and "duties" from the Committee's Charter and the number of

meetings held is legally insupportable and nowhere near the "substantial likelihood" standard

that Plaintiff must meet to survive this motion to dismiss.

First, the fact that the directors may or may not have authorized the financial

statements has been consistently held to be insufficient to establish a substantial likelihood of

personal liability.  "[M]ere directorial approval of a transaction, absent particularized facts

supporting a breach of fiduciary duty claim . . . is insufficient to excuse demand."  Aronson v.

Lewis, 473 A.2d 805, 817 (Del. 1984); Seminaris v. Landa, 662 A.2d 1350, 1354 (Del. Ch.

1995) (allegation that directors signed an allegedly misleading 10-K and a misleading

registration statement does not create substantial likelihood of liability); Mozes v. Welch, 638

F. Supp. 215, 220 (D. Conn. 1986) ("mere approval of an allegedly injurious corporate

transaction, absent self-interest or bias by a majority of the board, is insufficient to excuse

demand"). See also Defs' Mem. at 7-11 (discussing In re Sonus, 2004 WL 2341395; In re Xcel

Energy, Inc., 222 F.R.D. 603 (D. Minn. 2004); Fink v. Komansky, No. 03-0388, 2004 WL

2813166 (S.D.N.Y. Dec. 8, 2004); Rattner v. Bidzos, No. 19700, 2003 WL 22284323 (Del. Ch.

Oct. 7, 2003)).

               Second, Plaintiff has provided no facts and only a speculative hypothesis based on

the Committee Charter in an attempt to demonstrate that the Committee actually knew about, and

deliberately or recklessly disregarded, the accounting questions at issue. This is wholly

insufficient under the law. See Fink v. Komansky, 2004 WL 2813166, at *4 ("Plaintiff's entire

lawsuit is based upon the allegation that someone on Merrill Lynch's board of directors or on the

senior executive staff must have known or should have known of the unlawfulness of the

transactions the Company entered into with Enron.") (dismissing complaint for plaintiff's failure

to "lay out any specific facts demonstrating that the defendants were aware of the [alleged

misconduct]"); In re Xcel Energy, Inc., 222 F.R.D. 603, 607 (D. Minn. 2004) (rejecting claim

based on allegations that "certain defendants as members of the finance committee and others as

members of the audit committee . . . had a heightened duty to monitor the corporation's

activities" and "knew or should have known" about the alleged wrongdoing); Mitzner v.

Hastings, No. 04-3310, 2005 WL 88966, *5 (N.D. Cal. Jan. 14, 2005) ("The complaint does not

contain particular facts showing that the outside directors knew.") (applying Delaware law and

citing Guttman v. Huang, 823 A.2d 492, 504 (Del. Ch. 2003) and In re Sagent Tech. Inc.
Derivative Litig., 278 F. Supp. 2d 1079, 1092 (N.D. Cal. 2003)).[2]

Indeed, if anything, the Amended Complaint suggests that the Audit Committee
thoroughly and energetically investigated the accounting questions at issue. See, e.g., Am.
Compl. ¶ 7 ("On October 27, 2004, defendants caused the Company to issue a press release
announcing the commencement of an investigation by AspenTech's Board of Directors."); ¶ 62
(Audit Committee "expanded its investigation to include improper accounting for transactions in
FY:99 through FY:04"); ¶ 121 (Audit Committee reported controls issues to Company's Board).

Third, because Plaintiff's allegations sound in a claim for breach of the duty of
care, any possible liability is substantially negated by the Company's indemnification provisions
in its Certificate of Incorporation. Delaware law recognizes that if a company's charter by its
terms "insulates the directors from liability for breaches of the duty of care, then a serious threat
of liability may only be found to exist if the plaintiff pleads a non-exculpated claim against the
directors based on particularized facts." Guttman, 823 A.2d at 501 (citing In re Baxter Int'l, Inc.
S'holders Litig., 654 A.2d 1268, 1270 (Del. Ch. 1995)) (emphasis in original). In this case,
AspenTech's Corporate Charter expressly indemnifies its directors against all claims for alleged
breach of fiduciary duty "except to the extent that the elimination or limitation of such liability is
not permitted by the General Corporation Law of the State of Delaware, as the same exists or

---

[2]    Also, contrary to Plaintiff's suggestion, the Audit Committee Charter is not material to any
       alleged breach of fiduciary duty. See 18B Am. Jur. 2d Corporations § 1468 (updated Oct. 2004)
       ("No matter whether the act is prohibited by the charter or bylaws, the liability is on the ground of
       violation of authority or neglect of duty."); 3 Fletcher Cyclopedia of Private Corporations § 1024
       (updated 2004) ("If acts are expressly prohibited by the charter . . ., but liability for violation is
       not imposed on corporate officers by the charter . . ., the doing of such an act does not make the
       officers personally liable merely because the act is a violation of the charter.").

9

may hereafter be amended."[3] Virtually identical language has been held to immunize directors

from liability for duty of care violations. See Baxter, 654 A.2d at 1270 (certificate of

incorporation providing indemnification "[t]o the fullest extent permitted by the General

Corporation Law of Delaware as the same exists or may hereafter be amended."). Thus, because

Plaintiff does not allege any non-exculpated claim under these facts, under Baxter and Guttman,

there can be no "substantial likelihood" of potential liability.

## B.    Plaintiff Misses The Fact That Directors Haroian And Fusco Joined The Board *After* The Transactions At Issue

As alleged in the Amended Complaint, the transactions which resulted in the

restatements at issue occurred during AspenTech's fiscal years 1999 through 2002. Am. Compl.

¶ 118. Although the Opposition tries to suggest otherwise (see Pl's Opp. at 11, 13), the

Amended Complaint concedes that Messrs. Haroian and Fusco did not join the Board until

December 2003 -- almost a year and a half after the last of the transactions at issue occurred.

Am. Compl. ¶¶ 19, 20.[4] Because Plaintiff fails to explain how Messrs. Haroian and Fusco could

possibly face personal liability for transactions that did not even occur under their watch, they

have failed to overcome the presumption of these directors' disinterestedness.

## C.    Plaintiff's Purported "Authority" Actually Highlights What Is Wrong With His Pleading

As principal support of his contention of the Audit Committee's interestedness,

Plaintiff cites four decisions from various courts. See Pl's Opp. at 11, 14-15 (citing In re Lernout

& Houspie Sec. Litig., 286 B.R. 33 (D. Mass. 2002); In re Oxford Health Plans, Inc., Derivative

---

[3]    See AspenTech 8-K, Ex. 4 at 3 (filed with SEC on Aug. 22, 2003) (located on the Internet at http://www.sec.gov/Archives/edgar/data/929940/000110465903019446/a03-2795_1ex4.htm). Public records filed with the SEC may be considered by a court in ruling on a motion to dismiss. Guerra v. Teradyne Inc., No. 01-11789, 2004 WL 1467065, *28 (D. Mass. Jan. 16, 2004).

[4]    AspenTech's fiscal year ends in June.

Litig., 192 F.R.D. 111 (S.D.N.Y. 2000); In re Abbott Labs. Derivative S'holders Litig., 325 F.3d
795 (7th Cir. 2003); and Mitzner v. Hastings, No. 04-3310, 2005 WL 88966 (N.D. Cal. Jan. 14,
2005)). Those decisions in fact undercut Plaintiff's position.

        In re Lernout is inapplicable in the first instance because it addresses whether a
plaintiff can state a cause of action against members of an audit committee for violation of
federal securities laws, not whether demand is excused. 286 B.R. at 37. Second, the Amended
Complaint in this case does not state claim for securities law violations. Finally, in stark contrast
to the facts in this case, in In re Lernout, plaintiff alleged that the Audit Committee was aware of
various red flags, including a report by the outside auditor that "at least nine transactions . . .
were questionable," a letter from the outside auditor that its review of quarterly financial
statements was incomplete because of "outstanding revenue recognition issues," and another
letter from the outside auditor that it could not sign the audit opinion unless certain accounting
issues were resolved. Id. at 37-38. There are no such "red flags" here.

        In In re Oxford Health Plans, plaintiffs brought a derivative lawsuit alleging that
the director defendants failed to have in place sufficient financial controls, allowed the company
to "engage in wholesale improper billing practices and to violate numerous insurance
regulations," and permitted the dissemination of misleading information to shareholders. 192
F.R.D. at 114. In support of their contention that demand was futile, the Oxford plaintiffs
alleged that the directors were "aware of the problems" and "intentionally caused [the company]
to continue its rapid and aggressive campaign of growth without reasonably insuring themselves
that fundamental measures were undertaken and controls put in place." Id. at 115. In a
subsequent decision from the Southern District of New York, the court cited In re Oxford Health
Plans as an example of a case under Delaware law where "plaintiff pleaded specific facts to show

11

defendants had knowledge of false records and intentionally caused the company harm." Fink v. Komansky, No. 03-388, 2004 WL 2813166, *4 (S.D.N.Y. Dec. 8, 2004) (holding that, in contrast to In re Oxford Health Plans, plaintiff in Fink failed to "lay out any specific facts demonstrating that the defendants were aware of the [alleged misconduct]"). Similar to Fink and in contrast to In re Oxford Health Plans, Plaintiff in this case fails to provide any particularized allegations as to how defendants Haroian, Fusco or McArdle were actually aware of the accounting issues underlying the restatements (other than by inference) or intentionally caused the company any harm. See supra pp. 7-10. In addition, as Plaintiff concedes, the Audit Committee did not ignore the issues with controls, but reported these issues directly to the Board of Directors as part of its investigation. Am. Compl. ¶ 121.

Plaintiff's reliance on In re Abbott Labs. is also misplaced. The plaintiff in Abbott Labs sought to hold directors liable for corporate losses as a result of "continuing FDA violations." 325 F.3d at 801. Plaintiff alleged specific facts showing that the directors had notice of the FDA violations: the chairman of the board received FDA Warning Letters regarding the violations, the FDA met with company representatives (including the chairman of the board) about the violations, the Wall Street Journal published an article about the violations and a third party analyst commented on the violations. Id. at 808. No such regulator "red flag" letters are alleged here.

Mitzner v. Hastings also provides no support for plaintiff's contention. Contrary to Plaintiff's suggestion, the court in Mitzner did not hold that demand is excused on outside directors as a result of their position on the company's audit committee. Rather, in dicta, the court discussed the group pleading presumption applicable to federal securities class actions. 2005 WL 88966, at *6. The court's holding, however, was that the plaintiff "failed to create a

12

reasonable doubt the majority of the directors face a substantial likelihood of liability for

allegedly false or misleading statements."  Id.[5]

## III. PLAINTIFF FAILS TO CREATE A REASONABLE DOUBT THAT DIRECTORS PEHL AND KINGSLEY LACKED INDEPENDENCE

Independence depends on the context of the particular case. "The court must

make that determination by answering the inquiries: independent from whom and independent

for what purpose?" Beam v. Stewart, 845 A.2d 1040, 1049-50 (Del. 2004). "Independence" in

the corporate law context means that a director's decision is based on the "corporate merits of the

subject before the board rather than extraneous considerations or influences." Rales, 634 A.2d at

936 (citing Aronson, 473 A.2d at 816). Again, the Opposition leaves the story unfinished. To

show a lack of independence, the complaint must create reasonable doubt as to whether a

director is "so 'beholden' to an interested director . . . that his or her 'discretion would be

sterilized.'" Beam, 845 A.2d at 1050 (quoting Rales, 634 A.2d at 936).

Plaintiff appears to contend that directors Pehl and Kingsley lack independence

because they are "controlled" by Mr. Evans and also "have entangling business relationships"

with each other. See Pl's Opp. at 18-19. These contentions are meritless for several reasons.

---

[5]    In a footnote, Plaintiff appears to contend that members of the Audit Committee face liability for
a failure to monitor under In re Caremark Int'l Derivative Litig., 698 A.2d 959, 971 (Del. Ch.
1996) (Pl's Opp. at 15 n.19). However, a "Caremark claim" is premised "on a showing that the
directors were conscious of the fact that they were not doing their jobs." Guttman v. Huang, 823
A.2d 492, 506 (Del. Ch. 2003) (dismissing complaint under Rales because plaintiff failed to plead
"yellow," much less the required "red" flags). In Guttman, the court detailed the kinds of
particularized allegations that would state a Caremark claim: that "the company lacked an audit
committee," that the "company had an audit committee that met only sporadically," or that "the
audit committee had clear notice of serious accounting irregularities and simply chose to ignore
them." Id. at 507. In this case, Plaintiff's allegations contradict Caremark: (1) there was an
Audit Committee (Am. Compl. ¶ 28); (2) it met regularly (id. ¶ 30); and (3) it reviewed the
transactions in detail and determined that several of them should be restated (id. ¶¶ 58-65).

13

First, Plaintiff's conclusory allegations are not sufficient to demonstrate that Mr. Evans controls Messrs. Pehl or Kingsley. See Spector v. Sidhu, No. 03-0841, 2004 WL 350682 (N.D. Tex. Jan. 26, 2004) (holding that allegation that insider defendants controlled the board through "entangling alliances and interlocking business relationships" failed to excuse demand). In fact, Plaintiff's own allegations that Mr. Evans is dependent on other board members for his livelihood contradict a conclusion of control. See Pl's Opp. at 16.[6]

Second, under black letter Delaware law, Mr. Evans' alleged control of Messrs. Pehl and Kingsley is irrelevant unless Plaintiff demonstrates that Mr. Evans is himself an interested director. Brehm v. Eisner, 746 A.2d 244, 257-58 (Del. 2000) (complaint failed to demonstrate that a majority of the board lacked independence because plaintiffs failed to demonstrate that CEO, who allegedly controlled the board, was himself interested in the challenged transaction). In the Opposition, Plaintiff merely asserts that Mr. Evans is "a clearly interested director," but fails to make any argument as to why that is the case. Pl's Opp. at 19. And, as pointed out in Defendants' opening memorandum, the allegations in the Amended Complaint regarding Mr. Evans' trading of AspenTech stock four years before the October 2004 announcement of the Audit Committee investigation do not demonstrate that Mr. Evans is an interested director. See Defs' Mem. at 12-14 (citing Guttman, 823 A.2d 492 (Del. Ch. 2003)).

Third, Plaintiff's contention that Messrs. Pehl and Kingsley lack independence from each other because both are associated with Advent International is plainly without merit. Delaware law is clear that allegations of outside professional associations or relationships do not strip a director of his or her independence. Beam, 845 A.2d at 1050 ("[T]o render a director

---

[6]    Plaintiff's reliance on In re eBay, Inc. S'holders Litig., No. 19988, 2004 WL 253521, *3 (Del. Ch. Feb. 11, 2004) (Pl's Opp. At 18 n.22) is misplaced. In that case, the company acknowledged in a public filing that four interested directors controlled the company and the election of the directors. Id. There is simply nothing like that here.

14

unable to consider demand, a relationship must be of a bias-producing nature. Allegations of

mere personal friendship or a mere outside business relationship, standing alone, are insufficient

to raise a reasonable doubt about a director's independence."); Green v. Phillips, No. 14436,

1996 WL 342093 (Del. Ch. June 19, 1996) (rejecting plaintiff's argument that director lacked

independence due to "longstanding personal and business ties" to the beneficiary of the

challenged transaction); Defs' Mem. at 18-19 (citing other cases). Further, Plaintiff's contention

that Messrs. Pehl and Kingsley lack independence from each other is immaterial unless Plaintiff

demonstrates that the two directors are themselves interested. See Brehm v. Eisner, discussed

supra. Since Plaintiff does not even contend that Messrs. Pehl and Kingsley are interested, his

argument goes nowhere. See Pl's Opp. at 18-19; Defs' Mem. at 10-11.[7]

## IV.    PLAINTIFF FAILS TO CREATE A REASONABLE DOUBT
##         THAT DIRECTOR EVANS LACKED INDEPENDENCE

            Plaintiff alleges that Mr. Evans lacks independence because he was an employee

of AspenTech. See Pl's Opp. at 16.[8]  Delaware law is clear, however, that a mere allegation that

a director is employed by the company is not sufficient to demonstrate lack of independence.

For example, in a case involving the same plaintiff's attorneys as present here, In re Sagent Tech.

Inc. Derivative Litig., 278 F. Supp. 2d 1079 (N.D. Cal. 2003), the court found that allegations

---

[7]      Because Plaintiff fails to demonstrate that Mr. Evans is dependent on any interested directors, the
case law he cites provides no support for his contention that Mr. Evans lacks independence. See
Pl's Opp. at 16 n.20 (citing Rales v. Blasband, 634 A.2d 927, 936-37 (Del. 1993) (court
concludes that two directors "would be interested in a decision on Blasband's demand" and that
their positions as Chairman of the Board and Chairman of the Executive Committee "put them in
a place to exert considerable influence over" the CEO); In re Cooper Cos., Inc. S'holders
Derivative Litig., No. 12584, 2000 WL 1664167, **6-7 (Del. Ch. Oct. 31, 2000) (court concludes
that there were particularized allegations that certain directors "directly participated in the
wrongdoing" and were therefore interested, and that one of them exercised "considerable
influence" over two other directors); Mizel v. Connelly, No. 16638, 1999 WL 500369, **1-3
(Del. Ch. July 22, 1999) (court concludes that company's CEO and largest stockholder was
"clearly interested" in the challenged transaction and that he controlled two other directors
because he was their "management superior")).

15

that a director's "principal occupation at the time this suit was initiated was his employment with

Sagent" as President and Chief Executive Officer and that he received an annual salary of

$566,982, were insufficient to excuse demand. Id. at 1089. The court reasoned, "[i]f these

allegations were sufficient to show lack of independence, every inside director would be disabled

from considering a pre-suit demand." Id.

Further, under Delaware law, Mr. Evans' alleged dependence on his AspenTech

salary is irrelevant unless Plaintiff demonstrates that Mr. Evans is beholden to interested

directors. See Brehm v. Eisner, 746 A.2d 244, 257 (Del. 2000) (discussed at Defs' Mem. at 16).[9]

Although Plaintiff's Opposition does not identify which directors allegedly "control [Mr. Evans']

employment and compensation," the Amended Complaint appears to allege that it was the

Compensation Committee. Am. Compl. ¶ 129(c). However, the Compensation Committee is

made up of Casey, Fusco and Jennings; and Plaintiff has conceded that neither Jennings nor

Casey are interested. See supra, Section I. Likewise, Plaintiff fails to plead specific facts

demonstrating that Fusco is interested. See supra, Section II; Defs' Mem. at 10-11. As a result,

there is no basis for asserting that Mr. Evans was controlled by any interested director.

## Conclusion

Having conceded that two of the eight AspenTech directors are not at issue,

Plaintiff must now sufficiently allege why at least four of the remaining six were incapable of

considering a pre-suit demand. He has not done so. For the foregoing reasons, and those stated

in Defendants' Memorandum In Support Of Their Motion To Dismiss The Amended Complaint,

Plaintiff's Amended Complaint should be dismissed with prejudice in its entirety.

---

[8]     On January 7, 2005, Mr. Evans, who, at 70 years old, had been at AspenTech since its founding
        in 1981, retired from both the company and its Board of Directors.

[9]     This also contradicts Plaintiff's claim that Evans was the controlling party. See supra p. 13.

Plaintiff also requests, in the alternative, the opportunity to amend his complaint a second time pursuant to Rule 15(a). Pl's Mem. at 20 n.26. This request should be denied given that he has already amended his complaint once -- with the benefit of Defendants' original motion to dismiss -- and has also ignored the Delaware courts' "urging" to use the tools of pre-suit investigation to determine if particularity is even possible. See In re Citigroup S'holders Derivative Litig., No. 19827, 2003 WL 21384599, *1 (Del. Ch. June 5, 2003); White v. Panic, 783 A.2d 543, 557 (Del. 2001) ("plaintiff's failure to undertake this investigation before filing the complaint . . . cannot justify granting the plaintiff a second opportunity to remedy the complaint's obvious deficiencies.").

Dated: May 17, 2005
    Boston, Massachusetts

Respectfully submitted,

Thomas J. Dougherty (BBO #133300)
Justin J. Daniels (BBO #656118)
Kerry Dakin (BBO #640826)
SKADDEN, ARPS, SLATE,
    MEAGHER & FLOM LLP
One Beacon Street
Boston, Massachusetts 02108
(617) 573-4800

Counsel for Aspen Technology, Inc.,
Current Outside-Directors and
Former Outside-Directors

## Certificate Of Service

I, Kerry Dakin, hereby certify that on May 17, 2005, I caused a true copy of the foregoing Aspen Technology, Inc.'s, Current Outside-Directors' And Former Outside-Directors' Reply Memorandum In Further Support Of Their Motion To Dismiss to be served upon counsel of record for each party as indicated on the service list attached hereto.

Dated: May 17, 2005

Kerry Dakin

17

## SERVICE LIST

**BY HAND**
Mary T. Sullivan, Esq.
Segal Roitman & Coleman
11 Beacon Street, Suite 500
Boston, MA  02108

**Counsel for Plaintiff**

**BY HAND**
John J. Falvey, Jr., Esq.
Christopher C. Nee, Esq.
Goodwin Procter LLP
Exchange Place
53 State Street
Boston, MA  02109

**Counsel for Lisa Zappala**

**BY FEDEX**
Brian J. Robbins, Esq,
Jeffrey P. Fink, Esq.
Robbins Umeda & Fink LLP
1010 Second Avenue, Suite 2360
San Diego, CA  92101

**Counsel for Plaintiff**

**BY HAND**
John A.D. Gilmore, Esq.
Piper Rudnick LLP
One International Place, 21st Fl.
Boston, MA  02110

**Counsel for David McQuillin**

**BY HAND**
Nicholas Theodorou, Esq.
Brandon White, Esq.
Kevin Currid, Esq.
Foley Hoag LLP
Seaport World Trade Center West
155 Seaport Boulevard
Boston, MA  02210-2600

**Counsel for Lawrence Evans**

**BY HAND**
Steven J. Doyle, Esq.
Aspen Technology, Inc.
10 Canal Park
Cambridge, MA 02141-2200

**Counsel for Charles Kane & Joseph Boston**